Peter C. Harvey
Thomas P. Kurland (*pro hac vice* pending)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
pcharvey@pbwt.com
tkurland@pbwt.com
*Attorneys for Plaintiff LTL Management LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LTL MANAGEMENT LLC,<br><br>                    Plaintiff,<br><br>          -v-<br><br>DR. JACQUELINE MIRIAM MOLINE,<br><br>                    Defendant. | Civil Action No.<br>3:23-cv-02990-GC-DEA<br><br>Motion Return Date:<br>July 3, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR LIMITED EXPEDITED DISCOVERY</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ................................................................................................................................. 2

ARGUMENT ....................................................................................................................................... 5

CONCLUSION .................................................................................................................................... 8

# **TABLE OF AUTHORITIES**

Pages

**Cases**

*Bell v. Am. Int'l Indus.*,
  No. 1:17-cv-00111-WO-JEP, ECF No. 398 (M.D.N.C. Sept. 13, 2022) ......................... *passim*

*Ingenuity13 LLC v. Doe*,
  No. 2:12-cv-1969 MCE CKD, 2012 WL 3283515 (E.D. Cal. Aug. 10, 2012) ......................... 7

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
  No. 11-465-LPS-CJB, 2011 WL 4478477 (D. Del. Sept. 26, 2011) ......................... 6

*Lucero-Gonzalez v. Kline*,
  No. CV-20-0901-PHX-DJH (DMF), 2020 WL 8258201 (D. Ariz. Aug. 28, 2020), *aff'd sub nom. Romero-Lorenzo v. Kline*, No. CV-20-00901-PHX-DJH (DMF), 2020 WL 8258720 (D. Ariz. Nov. 9, 2020) ......................... 6

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address*
  *47.20.202.138*, No. 16-942 (KM)(MAH), 2016 WL 952340 (D.N.J. Mar. 14, 2016) ......................... 5

*Malibu Media, LLC v. John Does 1 through 32*,
  No. 1:12-cv-00886-AWI-MJS, 2012 WL 3150089 (E.D. Cal. Aug. 1, 2012) ......................... 7

*Merial LLC v. Fidopharm, Inc.*,
  No. 1:13-cv-1207-SCJ, 2013 WL 12072140 (N.D. Ga. May 22, 2013) ......................... 6

*Samuel, Son & Co. v. Beach*,
  No. 13-128, 2013 WL 4855325 (W.D. Pa. Sept. 11, 2013) ......................... 7

*Strike 3 Holdings, LLC v. Doe*,
  No. 22-1919, 2022 WL 1321604 (D.N.J. May 3, 2022) ......................... 5

*Windowizards, Inc. v. Castle, The Window People*,
  No. 00-4680, 2005 WL 8176452 (E.D. Pa. Mar. 3, 2005) ......................... 7

**Other Authorities**

Fed. R. Civ. P. 26 ......................... *passim*

Plaintiff LTL Management, LLC ("LTL") respectfully submits the foregoing brief in support of its motion for limited expedited discovery pursuant to Fed. R. Civ. P. 26.

## PRELIMINARY STATEMENT

LTL brings this motion to obtain what both sides know to be critical information as quickly as possible, in order to facilitate the prompt resolution of this dispute. A federal judge concluded last fall that Defendant Dr. Jaqueline Moline—a serial expert witness for cosmetic talc plaintiffs—misrepresented vital information regarding potential asbestos exposure of an individual included in her article, *Mesothelioma Associated with the Use of Cosmetic Talc*. See Mem. Op. & Order at 17, *Bell v. Am. Int'l Indus.*, No. 1:17-cv-00111-WO-JEP, ECF No. 398 (M.D.N.C. Sept. 13, 2022) (the "Bell Op.") (attached as Ex. 1).[1] Although the article was based on the "express premise" "that all individuals studied had no known alternative asbestos exposures" other than alleged exposure from talcum powder use, a heavily redacted five-page document produced in the *Bell* case has revealed that one of those individuals previously submitted a claim for occupational asbestos exposure wholly unrelated to talc. *Id*.

LTL believes that in addition to the one individual already identified, a number of other individuals included in Dr. Moline's article likewise had alternative asbestos exposures. Accordingly, LTL now seeks a fully unredacted version of that five-page document in order to identify the other 33 individuals in the purported study (all of whom previously brought lawsuits concerning alleged asbestos exposures) and to determine how many had such alternative exposures. This information directly bears on the heart of this dispute: whether Dr. Moline falsely and fraudulently claimed that exposure to Johnson's Baby Powder and Shower to Shower

---

[1] References to attached exhibits corresponds to the exhibits annexed to the Declaration of Peter C. Harvey filed contemporaneously herewith.

alone causes mesothelioma, thereby causing irreparable harm to LTL.[2]  Good cause exists for limited, expedited discovery of the five-page document because production of the 33 individuals' names will lead to the efficient disposition of this case by providing LTL with key evidence of the false claims Dr. Moline has been masquerading as "science" to disparage LTL's products.

For these reasons, as further set forth below, LTL respectfully requests that it be permitted to immediately seek discovery of this one critical document, or the information therein, prior to the conference requirements imposed by Federal Rule of Civil Procedure 26(f).

## BACKGROUND

Dr. Jacqueline Moline is the lead author of an article entitled *Mesothelioma Associated with the Use of Cosmetic Talc* (the "Moline Article").  *See Mesothelioma Associated with the Use of Cosmetic Talc*, Journal of Occupational and Environmental Medicine 62(1):11-17 (2020) (attached as Ex. 2).  The Moline Article is a "case series" of 33 individuals who brought lawsuits alleging that talcum powder caused their mesothelioma.  *Id.* at 11, 14.  The paper is self-described as "the first large case series to identify cosmetic talcum powder contaminated with asbestos as the cause of malignant mesothelioma in cosmetic talc users." *Id.* at 14.  It expressly represents that the study is based on 33 individuals with "no known asbestos exposure other than cosmetic talcum powder" and attributes each plaintiffs' mesothelioma to exposure to asbestos-contaminated talcum powder.  *Id.* at 11; *see also id.* at 14 ("This paper is also the first, to the authors' knowledge, to utilize background controls for which an extensive exposure history was elicited and for which no known asbestos exposure had occurred.").

---

[2] As the *Bell* court recognized, Dr. Moline's misrepresentation of the fundamental premise of her article not only has a "direct bearing on [her] study's credibility," but also has serious implications for litigation, considering "the groundbreaking nature of the article" and "the influence the article has had on cosmetic talc litigation nationwide," including, specifically, against LTL and its predecessors.  *See Bell* Op. at 17.

Although LTL has reason to believe that each of the 33 individuals—i.e., plaintiffs—included in the Moline Article has filed a public lawsuit, Dr. Moline has nevertheless refused to disclose the identities of these individuals (or any relevant backup data). As such, LTL has been unable challenge the veracity of Dr. Moline's claims or her purportedly "scientific" conclusions.

The veracity of those claims has, however, been challenged by a federal judge. In a case in the U.S. District Court for the Middle District of North Carolina, it was revealed that one of the plaintiffs included in the Moline Article—Betty Whitley Bell—previously filed workers' compensation claims with the North Carolina Industrial Commission, asserting that she was exposed to asbestos during prior employment with two textile employers. *Bell* Op. at 2. Upon learning that Ms. Bell had alleged alternative asbestos exposure, the federal district court judge overseeing the *Bell* matter excoriated Dr. Moline for concealment of vital information, noting that the inclusion of an individual with asbestos exposures apart from allegedly contaminated talcum powder had "direct bearing on the study's credibility" because it contradicts the Moline Article's entire foundation that the individuals had no other exposure to asbestos. *Id.* at 17.

As detailed in the Complaint, LTL believes it knows the identities of other individuals included in the Moline Article who had alternative asbestos exposure that was concealed by Dr. Moline. Compl. ¶¶ 125-189. For example, LTL has reason to believe that Stephen Lanzo is one of the subjects in the Moline Article. Discovery in Mr. Lanzo's case revealed alternative sources of asbestos exposure beyond alleged contamination in talc, including an asbestos pipe in Mr. Lanzo's basement and asbestos materials in schools Mr. Lanzo attended, as well as the presence of **commercial asbestos** (not the type of asbestos allegedly found in

LTL's products) in Mr. Lanzo's tissue. *Id.* ¶¶ 131, 143-149. LTL also has reason to believe that Helen Kohr is another subject included in the Moline Article. Dr. Moline served as an expert witness in Ms. Kohr's case and admitted that Ms. Kohr had exposure to asbestos-containing cigarettes.[3] *Id.* ¶¶ 154-155. LTL is also aware that Doris Jackson, who is also likely included in the Moline Article, was exposed to ceiling pipes with degrading asbestos insulation for more than 30 years. *Id.* ¶¶ 161-163. And finally, Valerie Jo Dalis, another individual who LTL suspects is included in the Moline Article, submitted an asbestos trust claim for $450,000 and collected more than $28,000 from the Manville Personal Injury Settlement Trust. *Id.* ¶ 169.

Finally, production of this information would not be unduly burdensome for Dr. Moline. Though, as set forth in the Complaint, Dr. Moline has repeatedly refused to disclose this information in the underlying talc litigation, her employer, Northwell Health, Inc. ("Northwell") previously produced this document in the *Bell* matter, but redacted the entire document except for a single line listing Ms. Bell's information. *See* Compl. ¶¶ 106-116; *Bell* Op. at 5. An unredacted version of this document (or some similar list) is certainly within Dr. Moline's possession, custody, or control, since she would have provided this information to Northwell in the first instance. Production of that document (or the information therein) would allow LTL in this suit to establish the extent to which Dr. Moline's concealment of vital information about alternative asbestos exposures goes beyond Ms. Betty Bell, as LTL suspects, and reaches numerous additional subjects in the Moline Article, thereby streamlining any future discovery and teeing up LTL's claims in this suit for expeditious resolution.

---

[3] Though Dr. Moline later issued an "erratum" stating that a "single case (out of the 33) should not have been included" in her 2019 article "because the individual was exposed to asbestos from . . . contaminated cigarettes," she has not confirmed that individual's identity. *See* Compl. ¶¶157-59 and Exs. J-K thereto. Indeed, Dr. Moline's "erratum" only further evidences her ongoing fraud, and provides additional good cause for the discovery LTL now seeks.

4

**ARGUMENT**

Although "parties are generally barred from seeking discovery before the parties participate in a conference in conformance with Rule 26(f)," "in certain circumstances, a court 'may grant [a party] leave to conduct discovery prior to' the Rule 26(f) conference." *Strike 3 Holdings, LLC v. Doe*, No. 22-1919 (KMW/SAK), 2022 WL 1321604, at *1 (D.N.J. May 3, 2022) (citation omitted); *see also* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."); Fed. R. Civ. P. 26(f)(1) ("Except . . . when the court orders otherwise, the parties must confer as soon as practicable . . . .").

To determine whether expedited discovery is appropriate, courts look to whether "[g]ood cause exists"—i.e., "where 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address* 47.20.202.138, No. 16-942 (KM)(MAH), 2016 WL 952340, at *1 (D.N.J. Mar. 14, 2016) (citation omitted). In addition, courts consider the following factors: "(1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens [the responding party]; and (5) whether [the responding party] can respond to the request in an expedited manner." *Strike 3 Holdings*, 2022 WL 1321604, at *2.

Good cause exists for limited, expedited discovery in this case. LTL clearly has a "need" for the five-page document (or the information therein), because it contains vital evidence that LTL believes will further support the claims made in the Complaint—i.e., that Dr. Moline knew the assertions made in the Moline Article were false "and that individuals she referenced in her Article had admitted to . . . exposure to other sources of asbestos, or" that Dr. Moline

"recklessly disregarded substantial evidence to the contrary" (Compl. ¶ 3)—and such evidence is exclusively within Dr. Moline's possession, custody, or control.[4]

Moreover, if LTL is correct that there are other individuals included in the Moline Article who were potentially exposed to asbestos separate and apart from their claims of alleged exposure through talcum powder, production of the document will allow for more tailored future discovery requests as the key facts underlying LTL claims would be verified. Accordingly, expedited discovery of this single document would "streamline[]" this case and assist the parties and this Court in promptly and efficiently resolving it. *See, e.g.*, *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 WL 4478477, at *7 (D. Del. Sept. 26, 2011) (allowing expedited discovery where "the case is likely to be streamlined and proceed more efficiently if targeted, expedited discovery proceeds at this juncture"); *Merial LLC v. Fidopharm, Inc.*, No. 1:13-cv-1207-SCJ, 2013 WL 12072140, at *2 (N.D. Ga. May 22, 2013) (granting motion for expedited discovery where "the information [p]laintiff seeks to discover at this stage, related to the scope and intent of [d]efendants' advertising campaign, will be helpful in addressing issues"); *Lucero-Gonzalez v. Kline*, No. CV-20-0901-PHX-DJH (DMF), 2020 WL 8258201, at *4 (D. Ariz. Aug. 28, 2020) (agreeing that "[d]efendants have total control over the evidence in this case" and granting motion for expedited discovery where plaintiffs "request[ed] some limited and directed testing of [d]efendants' factual positions and to develop their own claims")

---

[4] As noted above, the document may also be in the possession of Dr. Moline's employer, Northwell, which provided Institutional Board approval prior to Dr. Moline's drafting of the Moline Article, *Bell* Op. at 3, and produced a heavily-redacted version of a single, five-page document that contains information on all 33 plaintiffs included in the Moline Article to the *Bell* court. But, of course, Dr. Moline would certainly "control" the same information for Rule 26 purposes, since she, as the author of her paper, was the one who either created the document or provided Northwell with the information contained therein.

6

(internal quotation marks omitted), *aff'd sub nom. Romero-Lorenzo v. Kline*, No. CV-20-00901-PHX-DJH (DMF), 2020 WL 8258720 (D. Ariz. Nov. 9, 2020).

The requested discovery is particularly appropriate because of its limited nature: LTL is only seeking production of ***a single, five-page document***—or the underlying information that was used to create that document—that is core to its complaint because it identifies the other plaintiffs covered by the Moline Article. As courts have repeatedly recognized, it is not "excessively burdensome for [a responding party] to identify such a limited quantity" of discovery. *Malibu Media, LLC v. John Does 1 through 32*, No. 1:12-cv-00886-AWI-MJS, 2012 WL 3150089, at *2 (E.D. Cal. Aug. 1, 2012); *see also Samuel, Son & Co. v. Beach*, No. 13-128, 2013 WL 4855325, at *5 (W.D. Pa. Sept. 11, 2013) (granting motion for expedited discovery where "there is nothing to suggest that [d]efendants will be prejudiced by a limited period of discovery at this juncture"); *Windowizards, Inc. v. Castle, The Window People*, No. 00-4680, 2005 WL 8176452, at *1 n.1 (E.D. Pa. Mar. 3, 2005) ("Based on the overall reasonableness of [plaintiff's] request, and in particular based on the fact that the request is narrowly tailored to issues relevant to the question as to whether [the defendant] breached this [c]ourt's [c]onsent [o]rder, the request for expedited discovery is granted."); *Ingenuity13 LLC v. Doe*, No. 2:12-cv-1969 MCE CKD, 2012 WL 3283515, at *2 (E.D. Cal. Aug. 10, 2012) (noting that the production of one piece of discovery was not "excessively burdensome" and "[i]t [wa]s unclear what prejudice [the third party] would suffer if ordered to produce the information plaintiff requests").

LTL's request for expedited discovery is narrowly tailored to a single critical document, or the limited information contained therein. The burden on Dr. Moline to make this production is minimal. Moreover, Dr. Moline can easily produce this information on an expedited basis because it has previously been located and produced in the *Bell* matter. *See Bell*

7

Op. at 5. In short, LTL's "need" for the requested discovery far outweighs whatever (if any) prejudice that would result from it.

## CONCLUSION

For the foregoing reasons, the Court should grant LTL's motion for expedited discovery of the identity of the 33 individuals who are the subjects of the Moline Article.

Dated: June 7th, 2023

Respectfully submitted,

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Allison M. Brown
One Manhattan West
New York, New York 10001
T: (212) 735-3222
E: Allison.Brown@skadden.com

**PATTERSON BELKNAP WEBB & TYLER LLP**

*/s/ Peter C. Harvey*
Peter C. Harvey
Thomas P. Kurland (*pro hac vice* pending)
1133 Avenue of the Americas
New York, NY 10036
T: (212) 336-2000
E: pcharvey@pbwt.com
   tkurland@pbwt.com

**KING & SPALDING, LLP**

Kristen Fournier (*pro hac vice* pending)
1185 Avenue of the Americas
34th Floor
New York, NY 10036
T: (212) 556-2100
E: kfournier@kslaw.com

8