Peter C. Harvey
Thomas P. Kurland (*pro hac* pending)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
T:  212-336-2000
E:  pcharvey@pbwt.com
      tkurland@pbwt.com
*Attorneys for Plaintiff LTL Management LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LTL MANAGEMENT LLC,<br><br>                              Plaintiff,<br><br>              -v-<br><br>DR. JACQUELINE MIRIAM MOLINE,<br><br>                              Defendant. | Civil Action No.<br>3:23-cv-02990-GC-DEA<br><br>Motion Return Date:<br>July 3, 2023 |

## REPLY BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR LIMITED EXPEDITED DISCOVERY

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................1

ARGUMENT ............................................................................................4

    I.    The *Notaro* Standard Does Not Apply..........................................4

    II.   There is Good Cause to Grant Expedited Discovery. .........................7

          A.   The timing factor favors discovery...........................................8

          B.   The narrow tailoring factor favors discovery. ...........................9

          C.   The purpose factor favors discovery........................................10

          D.   The burden factor favors discovery. .......................................11

          E.   The ability to respond factor favors discovery. .......................14

    III.  LTL would satisfy *Notaro* if it did apply ...........................................14

CONCLUSION........................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bell v. Am. Int'l Indus.*,
627 F. Supp. 3d 520 (M.D.N.C. 2022) ...................................................................5

*Better Packages, Inc. v. Zheng*,
No. CIV.A. 05-4477 (SRC), 2006 WL 1373055 (D.N.J. May 17,
2006) ....................................................................................................................2

*Good Man Prods., Inc. v. Doe*,
No. CIV.A. 14-7906 ES, 2015 WL 892941 (D.N.J. Mar. 2, 2015) ....................5

*Gucci Am., Inc. v. Daffy's, Inc.*,
No.Civ.A.00–4463, 2000 WL 1720738 (D.N.J. Nov. 14, 2000) ................4, 5, 6

*Hayes v. Colgate-Palmolive Co., et al.*,
No. 16-CI-003503 (Jefferson Cir. Ct., Ky. Apr. 12, 2019) ................................2

*Lanzo v. Cyprus Amax Minerals Co., et. al.*,
No. MID-7385-16 AS (Super. Ct. N.J., Middlesex Cnty., Feb. 21,
2018) ....................................................................................................................2

*Love v. NJ Dept of Corr.*,
No. 2:15-CV-4404-SDW-SCM, 2017 WL 3477864 (D.N.J. Aug.
11, 2017) ............................................................................................................10

*Malibu Media, LLC v. Doe*,
No. 15-8940, 2016 WL 614414 (D.N.J. Feb. 16, 2016)......................................7

*Manny Film LLC v. Doe Subscriber Assigned IP Address
50.166.88.98*
98 F. Supp. 3d 693, 694 (D.N.J. 2015).............................................................4

*Mod. Woman, LLC v. Does I-X*,
No. 2:12-CV-04859 CCC, 2013 WL 707908 (D.N.J. Feb. 26,
2013) ....................................................................................................................5

*Murguly v. Locke*,
No. CV1914471MASZNQ, 2020 WL 2401354 (D.N.J. May 11, 2020) .................................................................................................5

*Olson et al. v. Brenntag North America, Inc., et al.*,
No. 190328/2017 (Supr. Ct. N.Y., N.Y. Cnty. Mar. 5, 2019) ............................2

*Pacira BioSciences, Inc. v. Am. Soc. of Anesthesiologists, Inc.*,
63 F. 4th 240 (3d. Cir. 2023) ................................................................8

*Pipes v. Johnson & Johnson, et al.*,
No. CJ-2017-3487 (Dist. Ct., Okla. Cnty., Okla. Feb. 25, 2019) ........................2

*Sonnino v. Univ. of Kansas Hosp. Auth.*,
No. CIV.A.02-2576-KHV-DJ, 2004 WL 769325 (D. Kan. Apr. 8, 2004) ...............................................................................................10

*Strike 3 Holdings, LLC v. Doe*,
No. CV 23-1402 (CPO/EAP), 2023 WL 2868584 (D.N.J. Apr. 10, 2023) ..............................................................................................7

*Strike 3 Holdings, LLC v. Doe*,
No. 22-1917, 2022 WL 1321595 (D.N.J. May 3, 2022) ....................................4

*Strike 3 Holdings, LLC v. Doe*,
No. 22-336, 2022 WL 279839 (D.N.J. Jan. 31, 2022) ....................................4

*Strike 3 Holdings, LLC v. Doe*,
No. 21-12769, 2021 WL 5173411 (D.N.J. Oct. 29, 2021) .................................4

*Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*,
No. CIV. 13-4255 NLH/JS, 2013 WL 4080648 (D.N.J. Aug. 13, 2013) ................................................................................................5

*Times Three Clothier, LLC v. Rack's OffPrice*,
No. CV223013KMMAH, 2022 WL 3053946 (D.N.J. Aug. 3, 2022) ..............................................................................................4

*Weirick v. Brenntag N. Am., Inc.*,
No. BC656425 (Super. Ct. Ca., L.A. Cnty., July 23, 2018) ...............................2

iii

**Other Authorities**

45 C.F.R. § 160.103 ..................................................................................................12

45 C.F.R. 46(A) § 46.101(a) .........................................................................................2

Fed. R. Civ. P. 26 ........................................................................................................6

Fed. R. Civ. P. 34 ........................................................................................................9

Plaintiff LTL Management, LLC ("LTL") respectfully submits this reply brief in support of its motion for limited expedited discovery.

## PRELIMINARY STATEMENT

Dr. Moline does not dispute that the expedited discovery LTL seeks is precisely targeted to quickly answer the core question in this case—i.e., whether Dr. Moline's statement that the subjects of her article had "no other exposures to asbestos" is false. If that statement is true, Dr. Moline has nothing to hide. Unfortunately, however, truth does not appear to be Dr. Moline's objective. Her opposition only deepens and broadens her efforts to obfuscate and perpetuate falsehoods.

For example, Dr. Moline states that the "identities of the participants in [her] study were provided to her on the expectation of confidentiality." Opp. 23-24. ***Not true***. Dr. Moline received their information as a hired expert in lawsuits they filed, where they would have had no such expectation. Dr. Moline has testified these individuals were "all plaintiffs in litigation" where she had "been hired or retained to provide an opinion in association with their litigation," and that she "had already reviewed those cases in the context of litigation" before publishing her Article. Ex. 1, *Zimmerman* Dep. 43:18-44:2, 46:17-19. In fact, Northwell specifically permitted Dr. Moline to publish her Article *without* first obtaining consent from the Article's

1

subjects (Ex. 2, IRB Approval at 2-3), and Dr. Moline testified she in fact "did not solicit consent" from them (Ex. 9, *Wiman* Dep. 50:20).

As another example, Dr. Moline contends that LTL will "be unable to show that Dr. Moline has 'control' over the document." Opp. 19. ***Also not true***. Dr. Moline has testified: "I ***personally*** -- yes. I have a way of identifying who is patient 1 or who is patient 33." Ex. 1, *Zimmerman* Dep. 44:8-10 (emphasis added). There is no question that Dr. Moline can provide the information LTL seeks.

Dr. Moline's attempt to don the mantle of the champion of researcher protections is disingenuous. This is the necessary context: Dr. Moline had long attempted to testify at cosmetic talc trials regarding the approximately 33 cases in which she was retained as an expert witness where the plaintiff supposedly had no exposures to asbestos other than cosmetic talc. Ex. 3, *Herford* Tr. 1542:12-27. But courts across the country repeatedly barred Dr. Moline from offering testimony on her litigation case review of these various plaintiffs.[1] To circumvent these adverse rulings, Dr. Moline published the Article about these 33 cases to add a veneer of

---

[1] Exs. 4 - 8, *Hayes v. Colgate-Palmolive Co., et al.*, No. 16-CI-003503 (Jefferson Cir. Ct., Ky. Apr. 12, 2019); *Olson et al. v. Brenntag North America, Inc., et al.*, No. 190328/2017 at pg. 2178-2179 (Supr. Ct. N.Y., N.Y. Cnty., Mar. 5, 2019); *Pipes v. Johnson & Johnson, et al.,* No. CJ-2017-3487 (Dist. Ct., Okla. Cnty., Okla., Feb. 25, 2019); *Lanzo v. Cyprus Amax Minerals Co.*, et al., No. MID-7385-16 AS (Super. Ct. N.J., Middlesex Cnty., Feb. 21, 2018); *Weirick v. Brenntag N. Am., Inc.*, No. BC656425 (Super. Ct. Ca., L.A. Cnty., Jul. 23, 2018).

credibility to her claims.  Her Article does not represent legitimate science but rather a ploy by a hired plaintiffs' expert.

Under either the proper "good cause" standard or the inapplicable so-called *Notaro* standard, the document identifying the individuals in the Article should be produced.  This case presents a unique situation where a single previously identified five-page document is decisive for resolving the claims in the complaint.  If LTL is right regarding which subjects match which individuals, then Dr. Moline's Article is plainly false—the key element of LTL's claims.  If LTL is wrong, then Dr. Moline may very well be able to obtain summary judgment in short order.

There is no reason to delay when so much can be resolved through one short document.  That is particularly true considering that the arguments Dr. Moline presents for dismissal are weak.  She attempts to mischaracterize LTL's claims as concerning scientific opinions.  But the false statements at issue are not Dr. Moline's *conclusions*.  Rather, the false statements are the *factual* contentions in her Article that all individuals surveyed had no other exposures to asbestos, when in truth some did.  One cannot immunize themselves from libel by publishing false statements in a journal article rather than submitting them to a newspaper.

For all these reasons, set forth in further detail below, this Court should authorize expedited discovery regarding the single, critical document LTL seeks.

3

## ARGUMENT

### I.    The *Notaro* Standard Does Not Apply.

The "good cause" standard applies, not the so-called "*Notaro* standard."  Dr. Moline cites a single case from this district applying the *Notaro* standard.[2]  It was issued over 20 years ago at a time when "[p]ublished opinions articulating a principled rule regarding when expedited discovery is appropriate [we]re scarce." *Gucci Am., Inc. v. Daffy's, Inc.*, No. CIV.A. 00-4463, 2000 WL 1720738, at *5 (D.N.J. Nov. 14, 2000).

In the intervening decades, courts in this district have *routinely* applied the good cause standard to evaluate whether to permit expedited discovery.  In fact, it is the approach of the "majority of courts in this District."  *Times Three Clothier, LLC v. Rack's OffPrice*, No. CV-22-3013 (KM) (MAH), 2022 WL 3053946, at *2 (D.N.J. Aug. 3, 2022); *see also, e.g.*, *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 21-12769, 2021 WL 5173411, at *1 (D.N.J. Oct. 29, 2021) ("To determine if expedited discovery is appropriate, a court should apply the 'good cause' test."); *Strike 3 Holdings, LLC v. Doe*, No. 22-1917, 2022 WL 1321595, at *2 (D.N.J. May 3, 2022) (same); *Strike 3 Holdings, LLC v. Doe*, No. 22-336, 2022 WL 279839, at *1 (D.N.J.

---

[2] In the only other District of New Jersey case Dr. Moline relies on, the Court *refused* to apply the *Notaro* standard.  *See Sawhorse Enterprises, Inc. v. Church & Dwight Co.*, 2013 WL 1343608, at *5 (D.N.J. Apr. 3, 2013) ("The Court finds that the reasonableness standard applies to Sawhorse's motion for expedited discovery.").

4

Jan. 31, 2022) (same); *Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98*, 98 F. Supp. 3d 693, 694 (D.N.J. 2015) ("A good cause standard governs whether to permit discovery prior to a Rule 26(f) conference."); *Good Man Prods., Inc. v. Doe*, No. CIV.A. 14-7906 ES, 2015 WL 892941, at *2 (D.N.J. Mar. 2, 2015) ("Courts in this District have frequently applied the 'good cause' standard to permit early but limited discovery."); *Mod. Woman, LLC v. Does I-X*, No. 2:12-CV-04859 CCC, 2013 WL 707908, at *2 (D.N.J. Feb. 26, 2013) ("Courts faced with motions for leave to serve expedited discovery requests . . . often apply the 'good cause' test.").

The *Gucci* court attempted to decide the legal-standard question without the benefit of any prior District of New Jersey cases (it at least cited none).  Since then, courts in this district have explained why the good cause standard makes more sense: It provides a court with the "flexibility it needs to exercise its wide discretion to manage discovery." *Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*, No. CIV. 13-4255 NLH/JS, 2013 WL 4080648, at *2 (D.N.J. Aug. 13, 2013). *Notaro*, by contrast, "unduly circumscribes the wide discretion normally accorded the trial court in managing discovery."  *Id.*  Courts have also been "reluctant at this early stage of the case to undertake a detailed analysis of the 'likelihood of success' or the merits of a party's claim or defense"—which is required by *Notaro*. *Id.*; *see also Murguly v. Locke*, No. CV-19-14471 (MAS) (ZNQ), 2020 WL 2401354, at *2

(D.N.J. May 11, 2020) (refusing to apply *Notaro*); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477 (SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (same).

Indeed, the question at hand is solely whether a single document should be produced before—rather than after—the parties' Rule 26(f) conference, which itself is supposed to occur "as soon as practicable." *See* Fed. R. Civ. Pro. 26(f)(1). There is no reason to subject a party to the equivalent of a preliminary injunction standard (the test under *Notaro*) for what is at core only an issue of timing.

If the *Notaro* standard has any viability, even Dr. Moline claims it only applies in the narrow circumstance where the discovery "seek[s] substantive relief." Opp. 1. There is no "substantive relief" at issue here. In *Gucci*, the only case from this district Dr. Moline provides applying this standard, the court was especially focused on the concern that Gucci knowingly brought a bogus trademark infringement claim. It appeared that Gucci knew the defendant (a discounter) was properly selling *authentic* Gucci bags yet invented a false claim to identify the defendant's distributor in order to "choke off the supply of authentic Gucci handbags to discounters." *Gucci*, 2000 WL 1720738, at *6 (D.N.J. Nov. 14, 2000). Those unique concerns do not apply here, where LTL's Complaint sets forth a detailed basis for its claims.

In an attempt to shoehorn these facts into those of *Gucci*, Dr. Moline posits that with the identifying information, LTL would "contact the cancer victims who were the subjects of the Article or their relatives." Opp. at 11. This conjecture is

6

nonsensical.  All these individuals are plaintiffs in litigation who were the subject of discovery in their underlying cases.  That is how *Dr. Moline* learned about them in the first place.  Ex. 1, *Zimmerman* Dep. 43:18-44:2, 46:17-19; *see also* Mot. Ex. 2, Moline Article at 2 ("Exposure data was obtained by sworn testimony of the mesothelioma patients in all cases.").

Finally, Dr. Moline tries to convert a reason disclosure *should* be ordered—that it will "facilitate the prompt resolution of this dispute"—into some sort of nefarious "admission."  *See* Opp. 11.  She hypothesizes that LTL's "end goal" is "determin[ing] whether the individuals Dr. Moline studied 'had alternative asbestos exposures.'"  *Id.*  This is an odd concern given that Dr. Moline continues to maintain that none had any alternative asbestos exposure.  Nevertheless, the spreadsheet will speed up resolution of this case because it will demonstrate that Dr. Moline's factual statements are false.  That so-called "end goal" is no detour—it proves LTL's claims.

The *Notaro* standard is thus not proper for evaluating this motion, nor is it the standard for evaluating a pre-Rule 26(f) conference discovery motion generally.

## II.    There is Good Cause to Grant Expedited Discovery.

"Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Strike 3 Holdings*, 2023 WL 2868584, at *2 (quoting *Malibu Media, LLC v. Doe*, No. 15-8940, 2016 WL 614414, at *1 (D.N.J. Feb. 16, 2016)).  There is no dispute

that when evaluating that question, courts consider "(1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens Defendant; and (5) whether Defendant can respond to the request in an expedited manner." *Id.*; *see also* Opp. 14-15. Every factor points in favor of discovery.

**A.    The timing factor favors discovery.**

Dr. Moline argues that the timing of the discovery is improper because her forthcoming motion to dismiss will be meritorious based on *Pacira BioSciences, Inc. v. Am. Soc. of Anesthesiologists, Inc.*, 63 F. 4th 240, 245 (3d. Cir. 2023). *Pacira* does not provide blanket protection for all libelous statements in scientific articles. That case concerned an *opinion* that a particular analgesic was "not superior" to local anesthesia and an "inferior" analgesic. *Id.* at 243. The Third Circuit stated the "not superior"/"inferior" statements were "loose or figurative language" which constituted "rhetorical hyperbole." *Id.* at 245 (internal quotation marks omitted). As the Court explained, "claims of relative superiority" are usually non-actionable. *Id.*

Here, by contrast, LTL's claims are not based on Dr. Moline's *opinions*, or *conclusions*, or *rhetorical hyperbole*. They are based on Dr. Moline's objectively false *factual* statements that none of the subjects of her study had alternative

exposures to asbestos.[3]   And Dr. Moline's questionable retelling of the *Bell* case ignores the other examples LTL identified with alternative exposures to asbestos. Compl. ¶¶ 125-189.

### B.    The narrow tailoring factor favors discovery.

The request for one specifically identified document that LTL knows exists could not be more narrowly tailored. Dr. Moline concedes that "the expedited discovery request is narrow."

Dr. Moline vaguely *suggests* that she *might* not legally "control" the requested document.  Opp. at 18-20.  But she does not actually *argue* that the document is *not* in her possession, custody, or control.  *See* Fed. R. Civ. P. 34.  Nor does she claim not to possess "the underlying information that was used to create that document." *See* Mot. 7.  In fact, at a deposition she was asked: "You have a key for the 33 cases that are included in your paper that associates those 33 cases with specific plaintiffs in talc litigation; is that right?"  She responded: "Yes. I mean, I don't know if I would call it a key, but yes."  Ex. 1, *Zimmerman* Dep. 43:2-17.  She further testified:  "I ***personally*** -- yes.  I have a way of identifying who is patient 1 or who is patient 33." *Id.* at 44:8-10 (emphasis added).  Her suggestion to the contrary is not credible.

---

[3] In any event, even *Pacria* states that "opinions based on undisclosed facts" are actionable if they "imply false underlying objective facts." *Id.* at 245.

In any event, "[c]ontrol" is "broadly construed" and includes the "practical ability to obtain the documents." *Love v. N.J. Dep't of Corr.*, No. 2:15-CV-4404-SDW-SCM, 2017 WL 3477864, at *6 (D.N.J. Aug. 11, 2017).  The suggestion that Dr. Moline may not have the ability to obtain the document from Northwell's database is also not credible.  *See* Opp. 19.  Even if true, it would simply be a basis for an order permitting LTL to subpoena Northwell in addition to Dr. Moline, not a reason to deny the motion outright.[4]

### C.    The purpose factor favors discovery.

The purpose of obtaining this discovery before the Rule 26(f) conference is to efficiently resolve this case and to be able to refute Dr. Moline's false accusations. Dr. Moline is wrong that *Chubb* categorically prohibits expedited discovery that goes to the "merits."  *See* Opp. 20.  And unlike here, that case involved a request for massive discovery of "fifteen individuals, a corporate entity and numerous telephone and email service providers" which implicated "dozens of nonparties." *Chubb Ina Holdings Inc. v. Chang*, 2016 WL 3470291, at *5 (D.N.J. June 24, 2016).

Similarly, Dr. Moline's focus on a lack of a preliminary injunction motion is a red herring.  *See* Opp. 20-22.  It is not clear what possible request for a preliminary

---

[4] Any internal confidentiality arrangement between Northwell and Dr. Moline is irrelevant.  "[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality."  *Sonnino v. Univ. of Kansas Hosp. Auth.*, No. CIV.A.02-2576-KHV-DJ, 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004).

injunction Dr. Moline thinks might have made sense.  Even without a preliminary injunction, the harm from her public false statements continues every day.

### D.      The burden factor favors discovery.

Dr. Moline is wrong that the "burden" factor includes "negative consequences" felt by "third parties."  Opp. 22.  None of the cases she cites involve whether discovery should be ordered before the Rule 26(f) conference.  And all involve discovery from *third parties*, not discovery from the defendant narrowly targeted to establish whether the defendant's own statements are false.  Regardless, even assuming "burden" should be construed broadly, this factor still favors LTL.

<u>First</u>, the entire premise of Dr. Moline's argument is that "[t]he identities of the participants in Dr. Moline's study were provided to her on the expectation of confidentiality."  Opp. 23-24.  This is simply false.  As discussed above, all their information was provided to her so she could offer an expert opinion in their lawsuits, where they expected their information to be public.  *See* Ex. 1, *Zimmerman* Dep. 43:18-44:2, 46:17-19.[5]  In fact, Dr. Moline was not required to get the subjects' informed consent before publishing (Ex. 2, IRB Approval at 2-3), and Dr. Moline testified she in fact "did not solicit consent" from them (Ex. 9, *Wiman* Dep. 50:20).

---

[5] The Article itself states that "[e]xposure data"—the key factual premise of her article—"was obtained by sworn testimony of the mesothelioma patients in all cases."  Mot. Ex. 2, Moline Article at 2.  In other words, Dr. Moline simply read their deposition transcripts in publicly-filed cases.

If Dr. Moline were asked about prior cases where she issued expert reports, she would obviously have no argument for "confidentiality." That same information does not magically become confidential just because she repackages it as an article. For example, there is nothing confidential about the facts, presented at a public trial, that a type of asbestos was found in Mr. Lanzo's tissue that is encountered in cases of industrial and occupational exposure but *not* alleged to be present in talc powder. Compl. ¶¶ 133-139  The only information Dr. Moline can therefore attempt to argue is confidential is the fact that Mr. Lanzo is Case # 6 in her Article (who Dr. Moline claims had no alternative exposures to asbestos). *Id.* at ¶¶ 127-150.  In other words, all that Dr. Moline is attempting to conceal is the falsity of her statements.

Second, Dr. Moline claims that providing the evidence that exposes her fraudulent claims would violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  But HIPAA only regulates "protected health information" held by specific "covered entities" such as insurers and certain health care providers. 45 C.F.R. § 160.103. To be clear, none of the individuals in her article were Dr. Moline's *patients*.  And "covered entities" of course does not include testifying experts in personal injury cases or medical-legal consultants.  As the court held in *Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520, 537 (M.D.N.C. 2022): "none of the information in [the requested document] is HIPAA protected."  Moreover, the "subjects" of Dr. Moline's article affirmatively placed their cancer diagnoses at issue

by filing suits claiming those cancers were caused by asbestos.  That is how *Dr. Moline* learned of their potential asbestos exposures in the first place.

Third**,** Dr. Moline also appears to assert that the Common Rule applies here. Not so.  The Common Rule applies only to "research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency." 45 C.F.R. 46(A) § 46.101(a).  Dr. Moline does not so much as suggest that her "study" was conducted by or on behalf of the federal government or otherwise explain how her article qualifies under this regulation.  The court in *Bell* rejected the attempted reliance on the Common Rule in part "because Dr. Moline's study was not conducted by or on behalf of the federal government these protections for human subjects do not inherently apply."  627 F. Supp. 3d at 535 n. 8.

Finally, Dr. Moline's offers a protracted discussion of the supposed harms to herself and Northwell for "breaching their confidentiality obligations."  Opp. 24-26. But this argument ignores that, as discussed above, the subjects of their study had no expectations of confidentiality and did not even appear to know they would be the subjects of the Article.  Even if there were any confidentiality expectations, Dr. Moline's arguments that, under LTL's reasoning, confidence in confidentiality would be undermined "whenever an expert relies upon her research in litigation" has the issue exactly backwards.  Opp. 25.  She did not take existing research and rely on it in litigation, she took existing litigation and transmuted it into "research."

13

Nor is it true that identifying these individuals "would cause needless anxiety to the cancer victims who remain alive, their families, and the families of those who have passed away." Opp. 26. All the subjects of her Article chose to file lawsuits. They all gave depositions about their conditions, which is largely how Dr. Moline learned of their exposure history to begin with. This information is not confidential.

### E.     The ability to respond factor favors discovery.

Dr. Moline can respond to LTL's discovery request in an expedited manner because it involves producing a single document or equivalent information. She testified she has the information herself. If Dr. Moline believes Northwell will cause undue delay, then she should inform them about the pending discovery request now. To the extent Northwell somehow raises *further* issues that have not already been raised by Dr. Moline, they can be addressed expeditiously.

* * *

Every factor weighs in favor of LTL, whose motion should be granted.

## III.   LTL would satisfy *Notaro* if it did apply

While *Notaro* does not apply, LTL would satisfy that standard in any event. As a threshold issue, LTL has not "waived" the argument that it can satisfy *Notaro*, as Dr. Moline briefly argues. *See* Opp. 12  A moving party need not address every conceivable inapplicable legal standard or risk waiver. It is "well settled" that responding to arguments raised for the first time in an opposition brief is precisely

14

what the reply is *for*.  *See, e.g.*, *McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012).  The Court should not indulge in Dr. Moline's game of "gotcha."

*Notaro* requires four showings, all of which are met here.  <u>First</u>, the moving party must show irreparable injury.  *Id.*  Dr. Moline's ongoing defamation and harm to LTL's reputation constitutes a classic irreparable injury.  *Groupe SEB USA, Inc.*, 774 F.3d at 205.  <u>Second</u>, the moving party must show some probability of success on the merits.  *Daffy's, Inc.*, 2000 WL 1720738 at *6.  As discussed above and laid out in LTL's Complaint, Dr. Moline published false statements of fact (not opinion).

<u>Third</u>, there must be some connection with the expedited discovery and the avoidance of irreparable injury.  *Id.*  Here, evidence proving Dr. Moline's fraudulent data will refute the false claims Dr. Moline made.  <u>Fourth</u>, *Notaro* requires "some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  *Id.* As discussed, Dr. Moline will suffer no injury from production of a single document.

For all these reasons, even if the Court concludes the *Notaro* standard applies in this case, LTL meets that test too.

## CONCLUSION

The Court should grant LTL's motion, which seeks only a single 5-page document (or the equivalent information that) Dr. Moline has testified she "personally" possesses.  This critical issue can and should be resolved now.

Dated:     June 30, 2023

Respectfully submitted,

PATTERSON BELKNAP WEBB &
TYLER LLP

By: _____ */s/ Peter C. Harvey* _____
       Peter C. Harvey
       Thomas P. Kurland (*pro hac* pending)
1133 Avenue of the Americas
New York, New York 10036
T:  212-336-2000
F:  212-336-2222
E:  pcharvey@pbwt.com
    tkurland@pbwt.com

Kristen Fournier (*pro hac* pending)
KING & SPALDING, LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
T:  212-556-2100
F:  212-556-2222
E:  kfournier@kslaw.com

Allison M. Brown
SKADEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, New York 10001
T:  212-735-3222
F:  212-777-3222
E:  allison.brown@skadden.com

16