# MARINO, TORTORELLA & BOYLE, P.C.
### ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
―――――
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
JENNIFER P. MONTAN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

888 SEVENTH AVENUE, 9TH FLOOR
NEW YORK, NEW YORK 10019
TELEPHONE (212) 307-3700
FAX (212) 262-0050
e-mail: kmarino@khmarino.com
*OF COUNSEL

August 10, 2023

**VIA ECF**

Honorable Georgette Castner, U.S.D.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:  *LTL Management LLC v. Dr. Jacqueline M. Moline*
           Case No. 3:23-cv-02990-GC-DEA

Dear Judge Castner:

      We write on behalf of Defendant, Dr. Jacqueline M. Moline ("Dr. Moline"), and in accordance with your Honor's Rules and Procedures, to request a pre-motion conference regarding Dr. Moline's anticipated motion to dismiss the complaint filed by LTL Management LLC ("LTL").

      ***Background.***  As explained in greater detail in Dr. Moline's opposition to LTL's motion for expedited discovery, Johnson & Johnson, Inc. ("J&J") created LTL to limit J&J's exposure to lawsuits brought by customers injured by asbestos in its talc-based products. (*See* ECF No. 12, at 3-6, 8-9.) Part of J&J's defense strategy is to discredit the experts supporting plaintiffs' claims. Dr. Moline is one such expert. In 2019, she published an article (the "Article") in the Journal of Occupational and Environmental Medicine, which concluded that exposure to talc-based consumer products can cause mesothelioma. (*See* Cplt., ECF No. 1, Ex. A.) Dr. Moline based this conclusion on her review of (i) deposition transcripts of thirty-three individuals who suffered from mesothelioma, augmented in some instances by in-person interviews with the subjects and testimony from family members; (ii) the subjects' medical records; and (iii) a tissue analysis of six of the individuals. (*See id.* at 11-12.) Dr. Moline also expressly disclosed the study's limitations and the conflict of interest she faced by serving as an expert witness for plaintiffs in asbestos litigation. (*See id.* at 11, 16.) Although maintaining the anonymity of the study participants was critical to the study and academic research at large, LTL and other consumer-talc defendants have waged a relentless campaign to unmask their identities and challenge the Article's methodological assumption that they had no known exposure to asbestos other than through consumer-talc products. (*See* ECF No. 12, at 11-12.)

      This lawsuit is a part of that campaign. Although LTL purports to assert claims against Dr. Moline based on the Article, the true purpose of the lawsuit—revealed through its motion for expedited discovery—is to obtain the confidential identities of the study's participants to help its

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Georgette Castner, U.S.D.J.
August 10, 2023—Page 2

defense in other lawsuits. (*See* ECF. No. 12, at 10-11.) LTL has thereby manufactured three claims—for injurious falsehood/product disparagement (also known as trade libel), fraud, and violation of the Lanham Act—all based on protected forms of speech that are critical to the development of medical research. To the extent LTL disagrees with Dr. Moline's methods or conclusions, it is free to raise its critiques in the consumer-talc cases it is defending or through the ordinary channels of academic discourse. Under no circumstances can it convert its criticisms into the three claims it asserts, all of which should be dismissed for the reasons described below.

***Trade Libel.*** As the Third Circuit held just two months before LTL filed its complaint, a claim for trade libel must be dismissed at the pleading stage when it is based on "disputes about the reliability of a scientific study's disclosed methodology." *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 247 (3d Cir. 2023). "To conclude otherwise would risk 'chilling' the natural development of scientific research and discourse." *Id.*[1] *Pacira*'s holding is squarely on point. Like the articles at issue in *Pacira*, the Article sets forth a pure opinion—*i.e.*, based on the evidence Dr. Moline reviewed, she concluded that exposure to asbestos-contaminated talc powders could cause mesothelioma—that was based on her fully disclosed methodology and its limitations. (*See* Article at 11-12, 15, 16.) That LTL disagrees with Dr. Moline's methods—it alleges that Dr. Moline should have considered and reconciled all evidence that may have impeached the subjects' sworn deposition testimonies—is a matter for scholarly debate, not a basis to bring a claim for trade libel. *See Pacira*, 63 F.4th at 247-48.

LTL cannot plead around *Pacira*'s holding by alleging that (i) the libel consisted of Dr. Moline's statements that the study participants had no known exposure to asbestos other than through talc-based consumer products, (*see, e.g.*, Cplt. ¶ 229); and (ii) Dr. Moline repeated the Article's conclusions in other media, in testimony before Congress, and in front of "judges and juries," (*see id.* ¶¶ 3, 40-84). Dr. Moline's conclusion that the participants she studied did not have alternative sources of asbestos exposure is a protected opinion because it is based on inferences drawn from the data she reviewed, just like her ultimate conclusion that exposure to talc products can cause mesothelioma. *See ONY*, 720 F.3d at 496 (explaining that it is the "essence of the scientific method" for scientists to make conclusions based on inferences drawn from the results of experimentation and observation). Moreover, a non-actionable opinion does not become actionable simply by being repeated, *see Pacira*, 63 F.4th at 249 n.19, and statements made before Congress and in court proceedings are privileged.[2]

Finally, even if the statements LTL challenged were actionable, its trade-libel claim would still have to be dismissed for failing to adequately plead "special damages," which it must do by

---

[1] The same is true under New York law. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013). Because LTL's claims fail under both the law of New Jersey (where LTL has its principal place of business) and New York (where Dr. Moline lives), the Court need not engage in any choice-of-law analysis. *See In re Hudson River Mid-Air Collision*, 2012 U.S. Dist. LEXIS 25149, at *16 (D.N.J. Feb. 28, 2012).

[2] *See* Restatement (Second) of Torts § 590A; *DeSantis v. Emplys. Passaic County Welfare Ass'n*, 237 N.J. Super. 550, 554 (App. Div. 1990); *Webster v. Sun Co.*, 790 F.2d 157, 161 (D.C. Cir. 1986); *Stepien v. Schaubert*, 2010 U.S. Dist. LEXIS 45893, at *26-27 (S.D.N.Y. Feb. 23, 2010); *Koch v. Pechota*, 744 F. App'x 105, 113 (3d Cir. 2018).

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Georgette Castner, U.S.D.J.
August 10, 2023—Page 3

either identifying the individuals who ceased being customers or pleading with specificity that it suffered a diminution in its business that was caused by the Article's publication. *See Sciore v. Phung*, No. 19-cv-13775, 2022 U.S. Dist. LEXIS 58163, at *31-32 (D.N.J. Mar. 30, 2022); *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641-643 (2d Cir. 2015). LTL's conclusory allegation that it "lost profits" as a result of the Article, (Cplt. ¶ 239), does not suffice. *See, e.g., Sciore*, 2022 U.S. Dist. LEXIS 58163, at *32-33; *Bilinski*, 632 F. App'x at 641-643.

**Fraud**. LTL's fraud claim fails for the same reason as its trade-libel claim: It challenges a non-actionable opinion. *See Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 766 (3d Cir. 2014) (holding that opinion regarding the scientific reliability of a breathalyzer was not actionable as common-law fraud). The claim further fails because LTL has failed to plausibly allege both that Dr. Moline intended for LTL to have relied on her Article and that LTL in fact reasonably relied on it. *See New Skies Satellites, B.V. v. Home2US Communs., Inc.*, 9 F. Supp. 3d 459, 471 (D.N.J. 2014) (dismissing fraud claim for failing to plausibly allege that plaintiff "intended for [defendant] to rely upon its alleged misrepresentations or that [defendant] did in fact reasonably rely upon those misrepresentations"). Indeed, the Complaint itself expressly refutes the preposterous notion that LTL relied on an article published by an expert opposing it in multiple asbestos litigations, by incorporating statements made by LTL representatives that disputed the Article shortly after its publication, (*see* Cplt. Ex. C), and by alleging that LTL hired professionals "to investigate, respond to, defend against, and otherwise counteract" its allegedly false statements, (*id.* ¶ 226). For LTL to now allege otherwise is simply not plausible. Finally, given that LTL has failed to plead reliance, it necessarily follows that it has failed to plead that it incurred any damages based on such (non-existent) reliance.

**Lanham Act**. LTL's Lanham Act claim fails for reasons similar to its first two claims. First, it challenges non-actionable opinions. *See ONY*, 720 F.3d at 498. Second, none of the challenged statements appeared in "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B), particularly given that the Article is not commercial speech. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 456-57 (D.N.J. 2009 ("[T]here is an abundance of case law to support the proposition that a scientific article is protected noncommercial speech."). And third, LTL has failed to sufficiently plead that it suffered losses proximately caused by the Article's publication. *See ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325, 325-26 (9th Cir. 2020); *Wall & Assocs. v. Better Bus. Bureau of Cent. Va., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017).

For these reasons, Dr. Moline respectfully requests permission to file a motion to dismiss the Complaint. Thank you for your consideration of this submission.

Respectfully submitted,

Kevin H. Marino

cc:     All counsel of record