

www.pbwt.com

August 17, 2023

**By ECF**

Peter C. Harvey
Partner
(212) 336-2810
pcharvey@pbwt.com

Honorable Georgette Castner, U.S.D.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:   *LTL Management LLC v. Dr. Jacqueline M. Moline*
             **Case No. 3:23-cv-2990 (GC) (DEA)**

Dear Judge Castner:

We write on behalf of Plaintiff LTL Management LLC ("LTL") in response to Defendant Dr. Jacqueline Moline's letter of August 10, 2023, requesting a pre-motion conference for her contemplated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 25.) As explained in detail below, Dr. Moline's dismissal motion is sure to fail since it requires a detailed exploration of the facts at the pleadings stage of this case. As such, while LTL has no objection to participating in a conference with the Court, we believe that the Court's time could be better spent discussing how to expeditiously conduct discovery to resolve this case on its ample merits.

This case arises from Dr. Moline's objectively false factual statements—not disagreements about legitimate scientific opinion. Dr. Moline is the lead author of an article entitled *Mesothelioma Associated with the Use of Cosmetic Talc* (the "Moline Article"). The Moline Article purports to be a "case series" of 33 individuals who brought lawsuits alleging that talcum powder caused their mesothelioma. In it, Dr. Moline expressly states that those 33 people have "no known asbestos exposure other than cosmetic talcum powder." That statement—repeated in numerous settings including to the media, in presentations, and before Congress—is not true. Dr. Moline knew that her statement was not true when she made it. Numerous subjects of her article were exposed to asbestos from other sources. (*See* Compl. ¶¶ 96-189.)

Dr. Moline's paean to scientific discourse is disingenuous, particularly when understood in the proper context. Dr. Moline had long attempted to testify at cosmetic talc trials regarding the approximately 33 cases in which she was retained as an expert witness where the plaintiff supposedly had no exposures to asbestos other than cosmetic talc. Courts across the country repeatedly barred Dr. Moline from offering testimony on her litigation case review of these various plaintiffs. (*See* Compl. ¶¶ 88-95.) To circumvent these adverse rulings, Dr. Moline published her article about these 33 cases, in an effort to add a veneer of credibility to her claims. The Moline Article does not represent legitimate science, but rather a ploy by a hired plaintiffs' expert. LTL's complaint states legally valid claims against Dr. Moline.

Hon. Georgette Castner, U.S.D.J.
August 17, 2023
Page 2

**Trade Libel**. As explained in its expedited discovery briefing (*see* ECF No. 18), LTL has adequately stated a claim for Injurious Falsehood/Product Disparagement, which Dr. Moline styles as Trade Libel.  The Third Circuit's decision in *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 247 (3d Cir. 2023) does not suggest otherwise, and it is by no means "squarely on point" as Dr. Moline argues.

That case concerned an *opinion* that a particular analgesic was "not superior" to local anesthesia and an "inferior" analgesic.  *Id.* at 243.  The Third Circuit stated the "not superior"/"inferior" statements were "loose or figurative language" which constituted "rhetorical hyperbole." *Id.* at 245 (internal quotation marks omitted).  As the Third Circuit explained, "claims of relative superiority" are usually non-actionable.  *Id.*  Here, by contrast, LTL's claims are not based on Dr. Moline's *opinions*, or *conclusions*, or *rhetorical hyperbole*.  Nor are they based on Dr. Moline's methodology as she contends.  Rather, they are based on Dr. Moline's objectively false factual statements that none of the subjects of her study had alternative exposures to asbestos.

Moreover, *Pacira* expressly acknowledged that even opinions based on undisclosed facts can be actionable as trade libel when they "imply false underlying objective facts." *Id.* at 245.  And the other case Dr. Moline relies on—*ONY*—concludes that claims may proceed where the "data presented were incorrect."  *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013); *see also id.* ("[I]t is relevant that plaintiff does not allege that the data presented in the article were fabricated or fraudulently created.").

LTL also has adequately pled special damages.  Dr. Moline cites to an unpublished district court decision and a non-precedential summary order from the Second Circuit to claim that LTL has failed to meet the applicable standard.  (Ltr. at 2-3.)  Both involved fundamentally different facts.  In both, the courts made clear that one avenue for pleading special damages is by alleging a general diminution of business as a result of the defendant's conduct.  In *Bilinski,* the plaintiffs failed to plead loss-of-market damages because they claimed they were unable to sell 111 Keith Haring paintings to certain museums, but only offered a broad estimate of the hypothetical value of some of those paintings and extrapolated it to the rest.  *See Bilinski v. Keith Haring Foundation, Inc.*, 632 F. App'x 637, 641-43 (2d Cir. 2015).  In *Sciore*, plaintiffs failed to plead special damages flowing from negative restaurant reviews because they only offered a conclusory and implausible assertion that a handful of reviews from disgruntled customers lost them prospective customers and vendors.  *See Sciore v. Phung*, 2022 U.S. Dist. LEXIS 58163, at *2-*6, *32-33 (D.N.J. 2022).

Here, by contrast, LTL has offered detailed facts demonstrating a general diminution of its business, which satisfies the pleading standard for special damages.  Specifically, LTL has pleaded that (1) shortly after Dr. Moline's Article became available online in October 2019, "the call center handling the Consumer business of Johnson & Johnson saw a significant decrease in contacts;" (2) "[t]he sales volume and profits from Johnson's Baby Powder declined in 2019 and again in 2020;" (3) "an ever-increasing percentage of Johnson's Baby Powder sales was the corn

Hon. Georgette Castner, U.S.D.J.
August 17, 2023
Page 3

starch-based version compared to the talc-based version;" (4) LTL discontinued its talc-based Baby Powder in the United States and Canada in May 2020 and announced that this was due to demand decreases caused in large part by misinformation around the safety of the product; and (5) "LTL spent millions of dollars in fees paid to attorneys, expert witnesses, and other professionals to investigate, respond to, defend against, and otherwise counteract Dr. Moline's false statements." (Compl. ¶¶ 223-26.)  Those detailed facts belie Dr. Moline's characterization of the Complaint.  (*Cf.* Ltr. at 3.)  And no more is required.  *See Intervet, Inc. v. Mileutis, Ltd.*, 2016 U.S. Dist. LEXIS 111193, at *14-15 (D.N.J. Aug. 17, 2016) (mag. op.) (holding that general diminution was adequately pled by alleging that the false statements "contributed to the deprivation of a valuable, and non-speculative economic benefit.").

**Fraud**.  Dr. Moline attempts to bootstrap her mistaken understanding of LTL's product-disparagement claim to a mistaken understanding of its fraud claim.  But as discussed above, LTL is not—at least through this suit—challenging Dr. Moline's *opinions*.  Rather, LTL's fraud claim is clearly premised on Dr. Moline's invention—and subsequent dissemination—of a *fact* that she obviously knew to be false:  that the talc plaintiffs who were the subject of her article had "no alternative sources of asbestos exposure."  (*See* Compl. ¶¶ 26, 36.)  That statement simply is not true.  Dr. Moline knew it was not true when she made it.  Moreover, LTL *does allege* that it reasonably relied on Dr. Moline's false statements in crafting its strategy in response to talc litigation, costing potentially billions of dollars.  (Compl. ¶246.)  In particular, LTL worked doggedly to challenge Dr. Moline *on the science* (as Dr. Moline suggests it should have done, *see* Ltr. at 1-2) until LTL discovered that Dr. Moline's purported "science" was really premised on a lie.  (*See* Compl. ¶¶ 226, 246.)  Dr. Moline's speculation now that such reliance was "preposterous" given LTL's attempts to reach the truth of the matter has no bearing at the pleading stage.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525-26 (D.N.J. 2008) (denying motion to dismiss fraud claim even though plaintiff only pled reliance "generally."). And her challenges to LTL's pleading of damages fails for the same reasons discussed above.

**Lanham Act**. Contrary to Dr. Moline's assertion, her knowingly false claims *were* used in commercial advertising—of her own services as an expert witness in talc litigation.  (*See* Compl. ¶253.)  That advertising has been extremely lucrative for Dr. Moline, who has received millions of dollars in fees for testifying at talc trials, along with numerous accolades and speaking opportunities.  (Compl. ¶4.)  Her contention that a putative scientific article can never violate the Lanham Act is contradicted by her very own citation:  A journal article *can* violate the Lanham Act when it is used for commercial purposes.  *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 456-57 (D.N.J. 2009).  Simply put, real science does not violate the Lanham Act.  In contrast, false statements intended to advertise one's own expert services and masquerading as science, do violate that statute.  And, as explained above, Plaintiff has pleaded that publication of the Article proximately caused damages both to its business and by having to respond in courts nationwide.  (Compl. ¶¶ 220-27, 255.)

For all these reasons, LTL's claims are sufficient to withstand a pleadings motion, a pre-motion conference is unnecessary, and discovery on the merits should proceed.

Hon. Georgette Castner, U.S.D.J.
August 17, 2023
Page 4

                                                   Respectfully submitted,

                                                   */s/ Peter C. Harvey*

                                                 Peter C. Harvey

cc:      All Counsel of Record (by ECF)