**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LTL MANAGEMENT LLC,

                Plaintiff,

      v.

DR. JACQUELINE MIRIAM MOLINE,

                Defendant.

Case 3:23-cv-02990-GC-DEA

Hon. Georgette Castner, U.S.D.J.

Return Date: October 2, 2023

*Document Electronically Filed*

<u>**ORAL ARGUMENT REQUESTED**</u>

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

---

Kevin H. Marino
John D. Tortorella
Erez J. Davy
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com
edavy@khmarino.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

    A.    J&J, Its Exposure to Claims For Harm Caused By Its Talc-Based Products, and Its Creation of LTL in an Attempt to Isolate Its Talc Liabilities. ...................... 2

    B.    J&J's Use of LTL to Chill the Scientific Opinions Issued by Dr. Moline and Other Experts Who Have Testified on Plaintiffs' Behalf. ............................ 4

LEGAL ARGUMENT ....................................................................................................... 8

I.    LTL'S CLAIM FOR TRADE LIBEL (COUNT I) SHOULD BE DISMISSED. .............. 9

    A.    The Trade-Libel Claim Fails Because It Targets Scientific Opinions that are Nonactionable as a Matter of Law. ...................................................... 9

        1.    The Conclusions Set Forth in the Articles are Nonactionable Scientific Opinions. ...................................................................................9

        2.    The Court Should Reject LTL's Attempt to Plead Around Pacira. ...................11

    B.    The Trade Libel Claim Should be Dismissed Because the Complaint Fails to Plead Special Damages with Particularity. ............................... 15

II.    LTL'S CLAIM FOR FRAUD (COUNT II) SHOULD BE DISMISSED. ...................... 18

    A.    The Fraud Claim Fails to Identify an Actionable Statement. .................................... 19

    B.    The Fraud Claim Fails Because LTL has Failed to Plausibly Allege that Dr. Moline Intended for LTL to Rely on the Alleged Misstatements. ............................ 19

    C.    The Fraud Claim Fails Because LTL has Failed to Plausibly Allege that LTL Actually or Reasonably Relied on the Alleged Misstatements. ............................... 20

    D.    LTL's Fraud Claim Should Be Dismissed Because It Fails to Allege Cognizable Damages. ........................................................................ 22

III.    LTL'S CLAIM FOR VIOLATION OF THE LANHAM ACT (COUNT III) SHOULD BE DISMISSED. ........................................................................ 24

    A.    LTL's Lanham Act Should Be Dismissed Because None of the Allegedly False Statements Are Actionable or Made in a "Commercial Advertisement or Promotion."............................................................................ 24

    B.    LTL Lacks Standing Because It Failed to Adequately Allege that It Suffered Losses Proximately Caused by Publication of the Allegedly False Statements. ................................................................................ 28

CONCLUSION................................................................................................................ 29

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abadi v. Target Corp.*,
   __ F. App'x __, 2023 U.S. App. LEXIS 15036 (3d Cir. June 16, 2023)...................................8

*Alban v. Kawasaki Kisen Kaisha, Ltd.*,
   __ F. App'x __, 2023 U.S. App. LEXIS 14101 (3d Cir. June 7, 2023)...................................8

*Bell v. Am. Int'l Indus.*,
   No. 17-cv-111, 2022 U.S. Dist. LEXIS 199180 (M.D.N.C. Sept. 13, 2022) .........................13

*Benak v. Alliance Capital Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006) ...............................................................................................3

*Betz v. Glob. Telesourcing, LLC*,
   2021 U.S. Dist. LEXIS 237132 (D.D.C. Dec. 10, 2021)........................................................24

*Beverly Hills Motoring, Inc. v. Morici*,
   No. 14-cv-756, 2015 U.S. Dist. LEXIS 6207 (D.N.J. Jan. 20, 2015).....................................23

*Bilinski v. Keith Haring Found., Inc.*,
   632 F. App'x 637 (2d Cir. 2015) ...............................................................................15, 17

*Bio/Basics International Corp. v. Ortho Pharmaceutical Corp.*,
   545 F. Supp. 1106 (S.D.N.Y. 1982) ...................................................................................15

*Bocobo v. Radiology Consultants of S. Jersey, P.A.*,
   No. 02-cv-1697, 2005 U.S. Dist. LEXIS 29321 (D.N.J. Nov. 21, 2005) .................................9

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) ..................................................................................26

*Brudnak v. A.A. Moving & Storage, Inc.*,
   No. 14-cv-6964, 2015 U.S. Dist. LEXIS 36359 (D.N.J. Mar. 24, 2015) ...............................23

*Caplan v. International Fidelity Ins. Co.*,
   885 F. Supp. 175 (N.D. Ill. 1995) .....................................................................................22

*Casper Sleep, Inc. v. Nectar Brand LLC*,
   No. 18-cv-4459, 2020 U.S. Dist. LEXIS 174740 (S.D.N.Y. Sept. 23, 2020) ........................29

*CF Global Trading, LLC v. Wassenaar*,
   No. 13-cv-766, 2013 U.S. Dist. LEXIS 145588 (S.D.N.Y. Oct. 8, 2013)...............................18

*Chung v. Pure Fishing, Inc.*,
   No. 20-cv-3983, 2022 U.S. Dist. LEXIS 52319 (E.D.N.Y. Mar. 23, 2022)............................19

*CHW Group, Inc. v. Better Bus. Bureau of New Jersey, Inc.*,
   No. 11-cv-3261, 2012 U.S. Dist. LEXIS 16336 (D.N.J. Feb. 8, 2012) ..................................27

*Cincinnati v. Discovery Network*,
   507 U.S. 410 (1993)........................................................................................................26

*City of Syracuse v. Loomis Armored US, LLC*,
   900 F. Supp. 2d 274 (N.D.N.Y. 2012)...............................................................................20

*Columbia Trading Corp. v. Green Elecs., LLC*,
   No. 17-cv-1309, 2018 U.S. Dist. LEXIS 129048 (D.N.J. July 27, 2018) ............................... 25

*Conopco, Inc. v. WBM, LLC*,
   No. 21-cv-14205, 2023 U.S. Dist. LEXIS 4627715 (D.N.J. Mar. 17, 2023) .......................... 28

*Covet v. Invisible Bead Extensions, LLC*,
   No. 21-cv-7740, 2023 U.S. Dist. LEXIS 49945 (S.D.N.Y. Mar. 23, 2023) ............................ 16

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018) .................................................................................. 29

*Democratic Party of N.J., Inc. v. Devine*,
   No. 22-cv-01268, 2022 U.S. Dist. LEXIS 181405 (D.N.J. Oct. 4, 2022) ................................ 9

*DeSantis v. Employees Passaic County Welfare Ass'n*,
   237 N.J. Super. 550 (App. Div. 1990) ................................................................................. 15

*Drobny v. JP Morgan Chase Bank*,
   929 F. Supp. 2d 839 (N.D. Ill. 2013) .................................................................................. 22

*Drone Racing League, Inc. v. DR1, LLC*,
   No. 18-cv-4093, 2018 U.S. Dist. LEXIS 199351 (S.D.N.Y. Nov. 26, 2018) ........................ 27

*Edelman v. Croonquist*,
   No. 09-cv-1938, 2010 U.S. Dist. LEXIS 43399 (D.N.J. Apr. 30, 2010) .................................. 3

*Estate of Joyce v. Fannie Mae*,
   No. 19-cv-12963, 2020 U.S. Dist. LEXIS 216733 (D.N.J. Nov. 19, 2020) ........................... 18

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) ............................................................................................. 25

*Gillon v. Bernstein*,
   218 F. Supp. 3d 285 (D.N.J. 2016) ................................................................................. 15, 16

*Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*,
   No. 08-cv-04208, 2019 U.S. Dist. LEXIS 21226 (S.D.N.Y. Feb. 8, 2019) ........................... 27

*Gmurzynska v. Hutton*,
   355 F.3d 206 (2d Cir. 2004) ............................................................................................... 25

*Hoch v. Hoch*,
   No. 16-03678-5, 2018 Bankr. LEXIS 181 (Bankr. E.D.N.C. Jan. 25, 2018) ........................ 24

*Howmedica Osteonics Corp. v. Howard*,
   No. 19-cv-19254, 2022 U.S. Dist. LEXIS 196746 (D.N.J. Oct. 28, 2022) ........................... 10

*Humana, Inc. v. Indivior, Inc.*,
   __ F. App'x __, 2022 U.S. App. LEXIS 34754 (3d Cir. Dec. 15, 2022) ................................. 9

*In re Horizon Healthcare Servs. Data Breach Litig.*,
   846 F.3d 625 (3d Cir. 2017) ................................................................................................. 9

*In re Hudson River Mid-Air Collision*,
   No. 09-cv-06142, 2012 U.S. Dist. LEXIS 25149 (D.N.J. Feb. 28, 2012) ............................. 10

*In re LTL Management LLC*,
   No. 23-12825-MBK, 2023 Bankr. LEXIS 1884 (Bankr. D.N.J. July 28, 2023) ....................... 4

*In re LTL Mgmt., LLC*,
   64 F.4th 84 (3d Cir. 2023) ...................................................................................... 3, 4

In re Merck Co.,
   No. 05-cv-1151, 2006 U.S. Dist. LEXIS 234519 (D.N.J. Jan. 20, 2006).................................. 3

*Intervet, Inc. v. Mileutis, Ltd.*,
   No. 15-cv-137, 2016 U.S. Dist. LEXIS 22165 (D.N.J. Feb. 24, 2016) ................................... 16

*Johnson v. Draeger Safety Diagnostics, Inc.*,
   594 F. App'x 760 (3d Cir. 2014) ............................................................................ 19

*Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*,
   624 F. Supp. 3d 281 (E.D.N.Y. 2022) ...................................................................... 25

*Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*,
   385 U.S. 589 (1967).............................................................................................. 26

*Kimca v. Sprout Foods, Inc.*,
   No. 21-cv-12977, 2022 U.S. Dist. LEXIS 74642 (D.N.J. Apr. 25, 2022)................................ 3

*Koch v. Pechota*,
   744 F. App'x 105 (3d Cir. 2018) .............................................................................. 15

*Kokinda v. Pa. Dep't of Corr.*,
   779 F. App'x 944 (3d Cir. 2019) ............................................................................... 9

*Konowicz v. Carr*,
   838 F. App'x 1 (3d Cir. 2020) ................................................................................. 25

*Kotlikoff v. Community News*,
   89 N.J. 62 (1982) ................................................................................................ 10

*Lee v. TMZ Prod., Inc.*,
   710 F. App'x 551 (3d Cir. 2017) ............................................................................... 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).............................................................................................. 28

*Lumbra v. Suja Life, LLC*,
   No. 22-cv-893, 2023 U.S. Dist. LEXIS 92309 (S.D.N.Y. May 26, 2023) .............................. 20

*McBrearty v. Fifth Generation, Inc.*,
   No. 14-cv- 7667, 2015 U.S. Dist. LEXIS 103062 (D.N.J. Aug. 6, 2015) .............................. 19

*Navatar Grp., Inc. v. Dealcloud, Inc.*,
   No. 21-cv-1255, 2023 U.S. Dist. LEXIS 20781 (S.D.N.Y. Feb. 7, 2023) .............................. 25

*New Skies Satellites, B.V. v. Home2US Communs., Inc.*,
   9 F. Supp. 3d 459 (D.N.J. 2014) ........................................................................ 20, 21

*NOVAGOLD Res., Inc. v. J Capital Research USA LLC*,
   No. 20-cv-2875, 2022 U.S. Dist. LEXIS 55734 (E.D.N.Y. Mar. 28, 2022)............................ 18

*Nunez v. Subaru of Am., Inc.*,
   No. 1:19-cv-18303, 2021 U.S. Dist. LEXIS 262633 (D.N.J. Feb. 23, 2021) .......................... 20

*NY Mach., Inc. v. Korean Cleaners Monthly*,
   No. 17-cv-12269, 2018 U.S. Dist. LEXIS 92031 (D.N.J. May 31, 2018) .............................. 16

*Olson v. Major League Baseball*,
   29 F.4th 59 (2d Cir. 2022) ................................................................................ 22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d Cir. 2013) .................................................................... passim

*Pacira Biosciences, Inc. v. American Society of Anesthesiologists, Inc.*,
   63 F.4th 240 (3d Cir. 2023) ................................................................... passim

*Rajan v. Crawford*,
   __ F. App'x __, 2022 U.S. App. LEXIS 30505 (3d Cir. Nov. 3, 2022) ................................... 9

*Refundo, LLC v. Drake Enters.*,
   No. 13-cv-643, 2013 U.S. Dist. LEXIS 57671 (D.N.J. Apr. 22, 2013) ................................... 24

*Roche v. Aetna, Inc.*,
   No. 1:22-cv-00607, 2023 U.S. Dist. LEXIS 77263 (D.N.J. Apr. 30, 2023) .............................. 3

*Roppo v. Travelers Commer. Ins. Co.*,
   869 F.3d 568 (7th Cir. 2017) ............................................................................ 22

*Saliba v. Attorney General of the United States*,
   828 F.3d 182 (3d Cir. 2016) ............................................................................... 9

*Sanborn Library LLC v. Eris Info. Inc.*,
   No. 19-cv-2049, 2021 U.S. Dist. LEXIS 165496 (S.D.N.Y. Aug. 30, 2021) .......................... 27

*Sciore v. Phung*,
   No. 19-cv-13775, 2022 U.S. Dist. LEXIS 58163 (D.N.J. Mar. 30, 2022) ......................... 15, 16

*Shanus v. Auctions*,
   No. 2:11-cv-2839, 2013 U.S. Dist. LEXIS 12692 (D.N.J. Jan. 29, 2013) ................................ 7

*Shelton v. Sethna*,
   No. 10-cv-4218, 2012 U.S. Dist. LEXIS 42194 (S.D.N.Y. Mar. 26, 2012) ........................... 22

*Stovall v. Grazioli*,
   __ F. App'x __, 2023 U.S. App. LEXIS 10278 (3d Cir. Apr. 27, 2023) ................................. 3

*Suarez v. Eastern Int'l Coll.*,
   428 N.J. Super. 10 (App. Div. 2012) .................................................................... 19

*ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*,
   831 F. App'x 325 (9th Cir. 2020) ....................................................................... 28

*Torsiello v. Strobeck*,
   955 F. Supp. 2d 300 (D.N.J. 2013) ...................................................................... 23

*United Capital Funding Grp., LLC v. Brick City Brewing, LLC*,
   No. 21-cv-3314, 2021 U.S. Dist. LEXIS 214457 (D.N.J. Nov. 4, 2021) ............................... 20

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
No. 21-cv-10638, 2023 U.S. Dist. LEXIS 104279 (S.D.N.Y. June 14, 2023) ........................ 28

*Verify Smart Corp. v. Bank of Am., N.A.*,
No. 17-cv-4248, 2021 U.S. Dist. LEXIS 116357 (D.N.J. June 17, 2021)................................ 20

*Wakefern Food Corp. v. Marchese*,
No. 20-cv-15949, 2021 U.S. Dist. LEXIS 161661 (D.N.J. Aug. 26, 2021) ..................... 25, 27

*Wall & Assocs. v. Better Bus. Bureau of Cent. Va., Inc.*,
685 F. App'x 277 (4th Cir. 2017)................................................................................... 29

*Walzer v. Muriel Siebert & Co.*,
No. 04-cv-5672, 2010 U.S. Dist. LEXIS 82593 (D.N.J. Aug. 10, 2010) ............................... 22

*Warren v. John Wiley & Sons, Inc.*,
952 F. Supp. 2d 610 (S.D.N.Y. 2013) .................................................................................. 23

*Webster v. Sun Co.*,
790 F.2d 157 (D.C. Cir. 1986) ............................................................................................. 15

*West Tsusho Co. v. Prescott Bush & Co.*,
No. 92-cv-3378, 1993 U.S. Dist. LEXIS 12077 (S.D.N.Y. Aug. 25, 1993)............................ 24

*Wilson v. Bank of Am., N.A.*,
No. 12-cv-1532, 2013 U.S. Dist. LEXIS 9814 (W.D. Wa. Jan. 23, 2013)............................. 22

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007) ............................................................................................... 3

*Yagudayev v. BMW of N. Am., LLC*,
No. 20-cv-897, 2020 U.S. Dist. LEXIS 212385 (D.N.J. Nov. 13, 2020) ............................... 10

*Zinn v. Seruga*,
No. 05-cv-3572, 2006 U.S. Dist. LEXIS 51773 (D.N.J. July 28, 2006) ................................ 16

## Statutes

15 U.S.C. § 1125(a)(1)(B) .................................................................................................. 24

## Rules

Fed. R. Civ. P. 8 ................................................................................................................. 9

Fed. R. Civ. P. 9 ................................................................................................................. 9

## Other Authorities

FDA News Release, Baby powder manufacturer voluntarily recalls products for asbestos
(Oct. 18, 2019) ............................................................................................................. 4, 17

Johnson & Johnson Consumer Health Announces Discontinuation of Talc-based Johnson's Baby
Powder in U.S. and Canada, *available at* https://www.jnj.com/our-company/johnson-johnson-
consumer-health-announces-discontinuation-of-talc-based-johnsons-baby-powder-in-u-s-and-
canada ............................................................................................................................... 17

Lisa Girion, *Special Report: J&J knew for decades that asbestos lurked in its Baby Powder*, REUTERS: HEALTHCARE & PHARMA (Dec. 14, 2018)................................................................... 3

NIH, National Library of Medicine,
    *Information bias in health research: definition, pitfalls, and adjustment methods*, *available* at
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4862344/ ..................................................... 11

Restatement (Second) of Torts § 590A .................................................................................. 15

Roni Rabin & Tiffany Hsu, *Johnson & Johnson Feared Baby Powder's Possible Asbestos Link for Years*, N.Y. TIMES (Dec. 14, 2018)..................................................................................... 3

Defendant, Dr. Jacqueline Miriam Moline ("Dr. Moline"), respectfully submits this memorandum of law in support of her motion to dismiss the complaint (the "Complaint") filed by LTL Management LLC ("LTL").

## PRELIMINARY STATEMENT

Over the past several years, Johnson & Johnson, Inc. ("J&J") has faced a wave of lawsuits by plaintiffs alleging that they were exposed to asbestos after using its talcum-based products.  J&J formed LTL, the plaintiff in this lawsuit, in an attempt to isolate its liabilities for these claims and discredit the experts and members of the plaintiffs' bar who have assisted these cancer victims. Dr. Moline is one such expert.  She has testified on behalf of plaintiffs in many consumer-talc cases and published peer-reviewed articles in a prestigious medical journal concluding that exposure to cosmetic-talc products can cause mesothelioma.  Not content to critique Dr. Moline's methods and conclusions through academic channels, LTL has manufactured three claims—for trade libel, fraud, and violation of the Lanham Act—all premised on the allegation that the opinions expressed in Dr. Moline's articles (the "Articles") and repeated thereafter are false.  None of these claims has any merit.

LTL's trade-libel claim fails, first and foremost, because it challenges scientific opinions that are protected under the First Amendment.  The Third Circuit made this clear in *Pacira Biosciences, Inc. v. American Society of Anesthesiologists, Inc.*, 63 F.4th 240, 248 (3d Cir. 2023), which held that critiques about an academic article's "data and methodology may be the basis of future scholarly debate, but they do not form the basis for trade libel under New Jersey law."  In so holding, the court stressed that any other conclusion "would risk 'chilling' the natural development of scientific research and discourse."  *Id.*  Like the articles at issue in *Pacira*, the articles Dr. Moline authored set forth conclusions she reached after reviewing data and applying methods she fully disclosed.  That LTL disagrees with Dr. Moline's conclusions and methods is a

1

matter for scholarly debate, not a basis to bring a claim for trade libel.  Even if LTL could overcome that deficiency, its trade-libel claim would still have to be dismissed because the Complaint fails to adequately plead "special damages," which it must do by either identifying the individuals who ceased being J&J customers or pleading with specificity that J&J suffered a diminution in its business that was caused by the publication of Dr. Moline's articles.  LTL cannot do either.

LTL's fraud claim, like its trade-libel claim, fails at its core because it challenges opinions. The claim further fails because LTL has not plausibly alleged that Dr. Moline intended LTL to rely on the Articles and that LTL actually and reasonably relied on them.  In fact, the Complaint itself makes clear that LTL did not rely on the Articles: it alleges that LTL took steps to "counteract" their alleged misstatements.  Finally, given that LTL failed to allege that it relied on Dr. Moline's statements, it necessarily follows that it failed to allege that it suffered reliance damages.

LTL's Lanham Act claim fails for similar reasons.  First, none of the statements it challenges are actionable, as they consist of opinions protected under the First Amendment that in all events did not appear in a commercial advertisement or promotion.  Second, LTL has not sufficiently pleaded that it suffered losses proximately caused by the Articles' publication, as opposed to the many other reasons why J&J lost revenues on its talc-based products.

For these reasons, amplified below, the Court should grant Dr. Moline's motion to dismiss the Complaint with prejudice.

## **BACKGROUND**[1]

### A.     **J&J, Its Exposure to Claims For Harm Caused By Its Talc-Based Products, and Its Creation of LTL in an Attempt to Isolate Its Talc Liabilities.**

J&J is a company that manufactured personal-hygiene products—known as Baby Powder

---

[1] The following background facts are drawn from the Complaint, the materials attached thereto or incorporated by reference, and matters that may be judicially noticed on a motion to dismiss.  *See*

and Shower-to-Shower—using talc. (*See id.* ¶¶ 2, 6, 12.) During the past decade, J&J has been the subject of adverse publicity generated by lawsuits, governmental actions, and news articles alleging that its talc-based products caused mesothelioma and other cancers. For example, starting in or about 2010, J&J has been regularly sued by plaintiffs who allegedly sustained injuries due to their exposure to the talc in these products. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 92 (3d Cir. 2023). (*See also* Cplt. ¶¶ 12, 14.) In 2018, Reuters and The New York Times published articles alleging that J&J knew for decades that its talc-based products may be contaminated with asbestos but hid that information from regulators and the public. *See* Lisa Girion, *Special Report: J&J knew for decades that asbestos lurked in its Baby Powder*, REUTERS: HEALTHCARE & PHARMA (Dec. 14, 2018)[2]; Roni Rabin & Tiffany Hsu, *Johnson & Johnson Feared Baby Powder's Possible Asbestos Link for Years*, N.Y. TIMES (Dec. 14, 2018).[3] And on October 18, 2019, the FDA published a press release alerting consumers that J&J initiated a recall of its Baby Powder product

---

*Pacira*, 63 F.4th at 243 nn.2-3 (reviewing facts drawn from the complaint and articles attached thereto); *Stovall v. Grazioli*, __ F. App'x __, 2023 U.S. App. LEXIS 10278, at *5 n.5 (3d Cir. Apr. 27, 2023) (noting that a court filing may be considered on a motion to dismiss as a matter of public record); *Lee v. TMZ Prod., Inc.*, 710 F. App'x 551, 558 n.8 (3d Cir. 2017) (taking notice of government-issued press release as a matter of public record and stating that "matters of public record may be considered on a motion to dismiss"); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (explaining that courts reviewing a motion to dismiss may consider, among other things, documents incorporated into the complaint by reference); *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (noting that the fact of an article's publication is properly noticed on a motion to dismiss); *Roche v. Aetna, Inc.*, No. 1:22-cv-00607, 2023 U.S. Dist. LEXIS 77263, at *8 (D.N.J. Apr. 30, 2023) (taking notice of state-court filings as matters of public record); *Kimca v. Sprout Foods, Inc.*, No. 21-cv-12977, 2022 U.S. Dist. LEXIS 74642, at *20 n.10 (D.N.J. Apr. 25, 2022) (taking notice of materials on the FDA's website); *Edelman v. Croonquist*, No. 09-cv-1938, 2010 U.S. Dist. LEXIS 43399, at *2 n.1 (D.N.J. Apr. 30, 2010) (taking judicial notice of a website discussed in the complaint). The Complaint's allegations are assumed to be true solely for purposes of this motion. *See, e.g.*, *Winer*, 503 F.3d at 327.

[2] *Available at* https://www.reuters.com/article/us-johnson-johnson-cancer-special-report/special-report-jj-knew-for-decades-that-asbestos-lurked-in-its-baby-powder-idUSKBN1OD1RQ.

[3] *Available at* https://www.nytimes.com/2018/12/14/business/baby-powder-asbestos-johnson-johnson.html.

after the FDA found that a sample that it tested contained asbestos.  *See* FDA News Release, Baby powder manufacturer voluntarily recalls products for asbestos (Oct. 18, 2019).[4]

In 2021, J&J created a new entity—LTL—so it could assign its talc liabilities to the new entity then cause LTL to declare bankruptcy to force a global settlement on talc-litigation plaintiffs.  *See In re LTL*, 64 F.4th at 93, 97.  On January 30, 2023, the United States Court of Appeals for the Third Circuit held that LTL's bankruptcy petition was not filed in good faith and directed the Bankruptcy Court to dismiss that petition.  *See id.* at 93.  Notwithstanding that ruling, LTL re-filed for bankruptcy on April 4, 2023.  The bankruptcy court dismissed that petition on July 28, 2023, as having been filed in bad faith.  *See In re LTL Management LLC*, No. 23-12825-MBK, 2023 Bankr. LEXIS 1884, at *3 (Bankr. D.N.J. July 28, 2023).

### B.   J&J's Use of LTL to Chill the Scientific Opinions Issued by Dr. Moline and Other Experts Who Have Testified on Plaintiffs' Behalf.

In addition to using LTL defensively to limit its talc liabilities, J&J also wielded LTL offensively to intimidate the experts who opined that its talc-based products could cause cancer.  Dr. Moline is one such expert.[5]  She is a doctor who specializes in and teaches occupational medicine.  (Cplt. ¶ 13.)  Dr. Moline also serves as an executive for various occupational-medicine health departments or programs.  (*See id.*)  Dr. Moline has served as an expert in over two-hundred cosmetic-talc cases against LTL, providing testimony in forty-six cases and trial testimony in sixteen.  (*Id.* ¶ 14.)  In all, Dr. Moline has testified on behalf of plaintiffs in asbestos litigation for more than twenty years.  (*Id.* ¶ 18.)

---

[4]    *Available    at*   https://www.fda.gov/news-events/press-announcements/baby-powder-manufacturer-voluntarily-recalls-products-asbestos.

[5] On July 7, 2023, LTL filed another complaint in the District of New Jersey alleging the same three causes of action against three other doctors who have served as experts for plaintiffs in consumer-talc litigations.  *See LTL Management LLC v. Emory*, No. 23-cv-03649-MAS-RLS (D.N.J.).

4

Dr. Moline and her co-authors published an article (the "2020 Article") titled *Mesothelioma Associated With the Use of Cosmetic Talc* that appeared in the January 2020 edition of the Journal of Occupational and Environmental Medicine ("JOEM"), (*see* Cplt. Ex. A), a leading peer-reviewed publication in the field of occupational and environmental medicine.[6]  The 2020 Article concluded that exposure to asbestos-contaminated talcum powders can cause mesothelioma and recommended that clinicians elicit a history of talcum-powder usage in all patients presenting with that disease.  (Cplt. Ex. A, 2020 Article, at 11.[7])  Dr. Moline based these conclusions on the "Materials and Methods" she disclosed in her article—namely, her study of the medical records and sworn deposition testimony of thirty-three patients who suffered from mesothelioma, augmented in some instances by sworn testimony of family members and in-person interviews; and tissue analysis performed by one of her co-authors of six of these thirty-three patients.  (*See id.* at 11-12.)

Beyond describing her methods, Dr. Moline also expressly noted its limitations, including the risk that the subjects' testimony was influenced by the bias inherent in self-reporting their exposures.  (*See* Cplt. Ex. A, 2020 Article, at 16.)  Similarly, Dr. Moline disclosed that the thirty-three case studies presented in the article were referred to her as part of tort litigation.  (*See id.* at 11.)  Dr. Moline further cautioned that the Article should be considered in light of the "Conflicts of Interest" that she and one of her colleagues faced in having "served as expert witnesses in asbestos litigation, including talc litigation for plaintiffs."  (*Id.* at 11 (footnote titled "Conflicts of Interest").)

---

[6] *See* American College of Occupational and Environmental Medicine, Publications, *available at* https://acoem.org/Publications/Journal-of-Occupational-and-Environmental-Medicine.

[7] All page references are to the paginations assigned in the JOEM.

In January 2023, Dr. Moline published a similar article in the JOEM titled *Exposure to cosmetic talc and mesothelioma* (the "2023 Article").  (*See* Cplt. ¶ 173; Marino Cert. Ex. 1.[8])  That article, like the 2020 Article, concluded that use of cosmetic talc could be a source of asbestos exposure and recommended that clinicians elicit a comprehensive history of asbestos exposure, including cosmetic-talc exposure, when evaluating patients presenting with mesothelioma. (Marino Cert. Ex. 1, 2023 Article, at 1.)  Like Dr. Moline's prior article, the 2023 Article fully disclosed its methods.  (*Id.* at 2.)  Specifically, the article explained that the study participants' exposure histories consisted of their sworn testimony and/or those of family members who had direct knowledge of the individuals' cosmetic-talc usage.  (*Id.*)  The article also considered other sources of asbestos exposure if they were present.  (*Id.*)  Using that method, Dr. Moline and her colleagues found that 122 of the 166 study participants were exposed to asbestos solely through the use of cosmetic talc, and that the remaining 44 participants were exposed to asbestos through use of cosmetic talc and other sources.  (*Id.* at 2-3.)

As she did with the 2020 Article, Dr. Moline also noted the study's limitations. Specifically, the 2023 Article cautioned that (i) the 166 participants may constitute a biased selection because they were involved in litigation; (ii) though questioning of individuals about alternative asbestos exposure as part of litigation is fairly comprehensive, there was a possibility that there were additional, unknown sources of asbestos exposure; and (iii) Dr. Moline had a "competing interest" by virtue of her serving as an expert witness in asbestos litigation, including talc litigation with plaintiffs.  (Marino Cert. Ex. 1, 2023 Article, at 11.)

Not content to challenge Dr. Moline's statements in court or through the channels of

---

[8] The Complaint mistakenly alleges that this article was attached to the Complaint as Exhibit L. (*See* Cplt. ¶ 173.)  It was not.  The article is included for the Court's reference as Exhibit 1 to the Marino Certification.

academic discourse, LTL filed an adversary proceeding against Dr. Moline in its bankruptcy case on December 16, 2022, alleging that statements in the 2020 Article and repeated thereafter in various media and Congressional testimony constituted trade libel,[9] fraud, and violated the Lanham Act. *See LTL Mgmt. LLC v. Moline*, 22-ap-01393 (ECF No. 1). That case was ordered to be closed on April 4, 2023, as a result of the Third Circuit's dismissal of LTL's bankruptcy petition. *See id.* (ECF No. 42).

LTL filed the instant action on May 31, 2023, alleging the same three causes of action— for trade libel, fraud, and violation of the Lanham Act—as LTL previously asserted in its adversary proceeding. The gravamen of the Complaint is that the conclusions the authors reached in the 2020 Article—in particular, that the majority of the participants in that study were exposed to asbestos solely through their use of talc-based consumer products—are false. (*See* Cplt. ¶ 229.) LTL alleges that Dr. Moline should not have limited herself to the files she reviewed, but rather should have examined additional sources, such as worker-compensation filings, that could have revealed alternative sources of asbestos exposure. (*See id.* ¶¶ 85-189.) LTL claims that it "lost profits" as a result of the statements in the Articles and their subsequent repetition in various media without particularizing those damages or explaining how they were caused by the allegedly false statements rather than the years of negative publicity brought about by lawsuits, media exposés, and J&J's own recall of its Baby Powder product after the FDA found asbestos in one of the samples it tested. (*See id.* ¶ 247.)

LTL recycles these same core allegations to allege that Dr. Moline is also liable to it for

---

[9] Although LTL labeled its claim as one for injurious falsehood/product disparagement, these terms are synonymous with trade libel. *See, e.g.*, *Pacira*, 63 F.4th at 244 n.7 (noting that "[t]rade libel has also been referred to as 'product disparagement'"); *Shanus v. Auctions*, No. 2:11-cv-2839, 2013 U.S. Dist. LEXIS 12692, at *9 (D.N.J. Jan. 29, 2013) (using the terms "injurious falsehood," "product disparagement," and "trade libel" interchangeably).

fraud and for violation of the Lanham Act, a statute that prohibits certain false statements in commercial advertising. With respect to its fraud claim, LTL alleges that it relied on Dr. Moline's allegedly false statements even though (i) it knew Dr. Moline was an expert in multiple cases against it; (ii) LTL took efforts to "counteract" Dr. Moline's alleged fraud; and (iii) LTL attaches as an exhibit an article in which its representatives attempt to refute the 2020 Article. (*See* Cplt. ¶¶ 14, 226, 239, 247, Ex. C.) As for its Lanham Act claim, LTL alleges that the Articles and subsequent statements repeating their conclusions constitute "commercial advertising," (*id.* ¶ 253), even though they were made for purposes of advancing medical research and clinical diagnoses, were not directed at J&J's customers, and Dr. Moline is not LTL's competitor. LTL further seeks to recover "loss of sales and customers" for the alleged Lanham Act violation without identifying those losses or pleading how they were caused by Dr. Moline's statements as opposed to the many other factors that may have impacted J&J's sale of consumer-based talc products. (*See id.* ¶ 255.)

On August 10, 2023, in accordance with the Court's individual rules and procedures, Dr. Moline submitted a pre-motion letter previewing her anticipated motion to dismiss. (*See* ECF No. 25.) LTL submitted its opposition to that letter on August 17, 2023. (*See* ECF No. 26.) On August 18, 2023, this Court granted Dr. Moline permission to file this motion. (*See* ECF No. 27.)

This motion follows.

## LEGAL ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See, e.g.*, *Abadi v. Target Corp.*, __ F. App'x __, 2023 U.S. App. LEXIS 15036, at *3 (3d Cir. June 16, 2023); *Alban v. Kawasaki Kisen Kaisha, Ltd.*, __ F. App'x __, 2023 U.S. App. LEXIS 14101, at *5-6 (3d Cir. June 7, 2023). A plaintiff cannot meet that standard by basing its claim on speculative allegations or theories of liability that are merely "conceivable." *See Saliba v. Attorney General of the United States*, 828

F.3d 182, 195 (3d Cir. 2016); *accord, e.g., Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948 (3d Cir. 2019).  Nor can it satisfy it by pleading threadbare recitals of the elements of a cause of action supported by conclusory statements.  *See In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017); *accord, e.g.*, *Rajan v. Crawford*, __ F. App'x __, 2022 U.S. App. LEXIS 30505, at *7 (3d Cir. Nov. 3, 2022).

In addition to pleading a plausible claim under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must plead certain matters in accordance with the heightened pleading requirements of Rule 9.  Of relevance here, that rule requires a plaintiff who pleads fraud to state with particularity the circumstances constituting fraud or mistake in order to ensure that the defendant has notice of the precise misconduct alleged and to prevent false or unsubstantiated claims.  *See* Fed. R. Civ. P. 9(b); *Humana, Inc. v. Indivior, Inc.*, __ F. App'x __, 2022 U.S. App. LEXIS 34754, at *8 (3d Cir. Dec. 15, 2022).  Moreover, when a plaintiff brings a claim, such as one for trade libel, that requires it to plead "special damages," Rule 9(g) requires the plaintiff to specifically state those damages to give a defendant proper notice of them.  *See Democratic Party of N.J., Inc. v. Devine*, No. 22-cv-01268, 2022 U.S. Dist. LEXIS 181405, at *29 (D.N.J. Oct. 4, 2022); *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, No. 02-cv-1697, 2005 U.S. Dist. LEXIS 29321, at *31 (D.N.J. Nov. 21, 2005).

LTL's claims should be dismissed under these standards.

## I.   LTL'S CLAIM FOR TRADE LIBEL (COUNT I) SHOULD BE DISMISSED.

### A.   The Trade-Libel Claim Fails Because It Targets Scientific Opinions that are Nonactionable as a Matter of Law.

#### 1.   The Conclusions Set Forth in the Articles are Nonactionable Scientific Opinions.

As the Third Circuit held shortly before LTL filed the Complaint, critiques about a scientific article's data and methodology cannot as a matter of law "form the basis for trade libel

under New Jersey law." *Pacira*, 63 F.4th at 248; *see also id.* at 247 (holding that "disputes about the reliability of a scientific study's disclosed methodology" were not actionable in trade libel). In so holding, the Third Circuit stressed that any other conclusion "would risk 'chilling' the natural development of scientific research and discourse." *Id.* at 248 (citing *Kotlikoff v. Community News*, 89 N.J. 62, 66 (1982) and *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013)). The same is true under New York law.[10] *See ONY*, 720 F.3d at 497-98 (holding that scientific conclusions based on an accurate description of the data and methodology used are not actionable as a matter of law).

*Pacira*'s holding is squarely on point. The crux of the Complaint is that the 2020 Article damaged LTL by contributing to "misinformation" about the safety of J&J's talc-based products. (Cplt. ¶¶ 6, 225.) That allegation takes aim at the 2020 Article's conclusion, *i.e.*, that "[e]xposure to asbestos-contaminated talcum powders can cause mesothelioma." (Cplt. Ex. A, 2020 Article at 11; *see also id.* at 16.) But just like the articles at issue in *Pacira* and *ONY*, the 2020 Article disclosed the data and methods used to reach that conclusion as well as their limitations. Specifically, the article disclosed that:

- Exposure data was obtained from the sworn testimony of thirty-three individuals involved in tort cases, which included extensive questioning regarding all sources of asbestos exposure.

- These exposure histories were reviewed alongside the participants' medical records.

---

[10] Because LTL's common-law claim for trade libel and fraud is based on diversity of citizenship, *see* Cplt. ¶ 16, New Jersey's conflict-of-laws rules dictate which state's law will govern these claims. *See Howmedica Osteonics Corp. v. Howard*, No. 19-cv-19254, 2022 U.S. Dist. LEXIS 196746, at *16 (D.N.J. Oct. 28, 2022). As there is no actual conflict between the law of New Jersey (where LTL has its principal place of business) and New York (where Dr. Moline lives)— LTL's claims are deficient and should be dismissed under both—the Court need not conduct a choice-of-law analysis at this juncture. *See Yagudayev v. BMW of N. Am., LLC*, No. 20-cv-897, 2020 U.S. Dist. LEXIS 212385, at *13 (D.N.J. Nov. 13, 2020); *In re Hudson River Mid-Air Collision*, No. 09-cv-06142, 2012 U.S. Dist. LEXIS 25149, at *16 (D.N.J. Feb. 28, 2012).

- In some instances, the exposure histories were further reviewed based on the testimony of family members with first-hand knowledge of the use of talcum powder and in-person interviews with the study participants.

- In six cases, tissue samples were analyzed by Dr. Ronald Gordon, one of Dr. Moline's co-authors, for the presence of asbestos fibers.

- Data obtained from deposition testimonies introduced the risk of "self-report" bias, *i.e.*, the risk that the participants might evaluate their histories inaccurately.[11]

- Dr. Moline and Dr. Gordon faced conflicts of interest by having "served as expert witnesses in asbestos litigation, including talc litigation for plaintiffs."

(Cplt. Ex. A, 2020 Article, at 11-12, 16.)

Importantly, these descriptions and limitations were made in an article that appeared in the JOEM, which is "a leading scientific, peer-reviewed monthly publication in the specialty of occupational and environmental medicine."[12]  Its audience consists of occupational and environmental-medicine physicians, family physicians with an interest in the health of workers and the environment, occupational-health nurses, and industrial hygienists.  *Id.*  These professionals possess the expertise to evaluate the reliability of the data and methodology used, "and thus are equipped to evaluate the opinions the authors reached."  *Pacira*, 63 F.4th at 249.

Thus, the statement at the crux of this case—*i.e.*, that exposure to talc-based products can cause mesothelioma—is plainly an opinion that is not actionable as a matter of law.

### 2. The Court Should Reject LTL's Attempt to Plead Around *Pacira*.

Given that *Pacira* prevents LTL from challenging the 2020 Article's core conclusion, LTL

---

[11] *See* NIH, National Library of Medicine, *Information bias in health research: definition, pitfalls, and adjustment methods*, *available* at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4862344/ (describing the risk of self-reporting bias and noting that self-reported data alone "are often argued to be unreliable and threatened by self-reporting bias").

[12] *See* American College of Occupational and Environmental Medicine, Publications, *available at* https://acoem.org/Publications/Journal-of-Occupational-and-Environmental-Medicine*.

tries to plead around it in two ways.  Its efforts should be rejected.

First, LTL alleges that it is challenging the "factual assertions" in the Articles as opposed to the opinions they set forth.  (Cplt. ¶ 229.)  But any statement in a scientific article could be characterized as an assertion of "fact" based on inferences drawn from the data reviewed.  *See ONY*, 720 F.3d at 497 ("[W]hile statements about contested and contestable scientific hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,' for purposes of the First Amendment and the laws relating to fair competition and defamation, they are more closely akin to matters of opinion, and are so understood by the relevant scientific communities.").  What matters for purposes of a trade-libel claim is whether a plaintiff is able to allege that the data themselves were "fabricated or fraudulently created," as opposed to merely alleging "that the inferences drawn from those data were the wrong ones, and that competent scientists would have included variables that were available to the defendant authors but that were not taken into account in their analysis." *Id.   See also Pacira*, 63 F.4th at 247 & n.14 (distinguishing allegations that consist of "disagreements about the reliability of the methodology and data underlying the [challenged] statements," which are not actionable, with allegations that the underlying data themselves "were falsified").

Here, LTL does not allege that Dr. Moline falsified the deposition transcripts she reviewed or the tissue analysis performed by Dr. Gordon.  Rather, it primarily challenges the statements in the 2020 Article that talcum powder was the only source of asbestos exposure for all thirty-three case studies.  (*See* Cplt. ¶ 229.)  With respect to the first statement, LTL alleges that Dr. Moline should not have limited her analysis to the data she reviewed but rather should have considered and reconciled ***all*** evidence that may have impeached the subjects' sworn deposition testimonies.  (*See id.* ¶ 85 (alleging that Dr. Moline "recklessly ignored available information" supposedly

demonstrating that the participants in the 2020 Article were exposed to asbestos through means other than talc powder); *accord id.* ¶¶ 87, 103.)  But that is the same thing as alleging that Dr. Moline and her colleagues failed to "include[] variables that were available to [them] but that were not taken into account in their analysis."  *ONY*, 720 F.3d at 497.

That LTL takes issue with Dr. Moline's method is proven by its gross mischaracterization of the court's decision in *Bell v. Am. Int'l Indus.*, No. 17-cv-111, 2022 U.S. Dist. LEXIS 199180, at *14-15 (M.D.N.C. Sept. 13, 2022).  (*See* Cplt. ¶¶ 96-123.)  The *Bell* court did not find, as LTL alleges, that Dr. Moline lied about the exposure history of one of the study participants.  Rather, the court noted that Ms. Bell filed a workers' compensation claim that appeared to contradict the statements in the deposition testimony that Dr. Moline reviewed.  *See* 2022 U.S. Dist. LEXIS 199180, at *3.  But that workers' compensation claim was beyond the scope of the "Materials and Methods" that Dr. Moline reviewed for her study.  (*See* Cplt. Ex. A, Article at 11.)  And Dr. Moline may well have been justified in discounting that claim as untrustworthy, a prospect the court in *Bell* expressly credited.  *See* 2022 U.S. Dist. LEXIS 199180, at *24 (acknowledging that "Dr. Moline and her colleagues may have a good answer as to why the workers' compensation claims do not undermine the article's credibility").  Whether that is so is a matter for scholarly debate,[13] not a basis to bring a trade-libel claim.

Similarly, LTL quibbles that the 2023 Article should not have listed the "Certainty of Alternative Exposure" of one of the study participants as "None," as opposed to "Possible" or

---

[13] Indeed, this debate has in fact played out in the academic literature, as the JOEM articles LTL attached to the Complaint show.  (*See* Cplt. Ex. L (letter to the editor published in the JOEM questioning Dr. Moline's methodology); *id.* Ex. J (Dr. Moline response published in JOEM explaining her methodology and standing by her conclusions while noting a single instance where a study participant should not have been included due to potential exposure to alternative sources of asbestos); *id.* Ex. K (erratum to Article published in JOEM).)

"Definite."  (Cplt. ¶ 180 (citing Marino Cert. Ex. 1, 2023 Article, at 5, row 3).)  LTL does not allege that this individual testified that he was exposed to asbestos other than through the use of talc products.  Rather, it alleges that (i) based on a study by a different researcher, living between 1,500 and 2,499 meters from a facility that purchased asbestos cement machine products increased the chance of developing mesothelioma by 2,000%; (ii) the study participant lived or went to school between 1,580 and 2,270 meters from the plant; and (iii) based on these facts, Dr. Moline should have found that the study participant had a "Possible" or "Definite" alternative exposure to asbestos.  (Cplt. ¶¶ 180-83.)  That is a quintessential dispute over what data should have been considered and what inferences should have been drawn from them, which is precisely the type of controversy that "courts are ill-equipped to undertake to referee."  *ONY*, 720 F.3d at 497.

Finally, LTL takes issue with the 2020 Article's statement that certain types of asbestos fibers were not found in any of the six research subjects whose tissue Dr. Gordon analyzed.  (Cplt. ¶ 229a.iv.)  But LTL does not allege that Dr. Gordon fabricated the results of his analysis, much less that Dr. Moline knew about any such fabrication.  Rather, LTL cites the analysis performed by different experts, including one hired by a consumer-talc defendant, to allege that a certain type of asbestos fiber was indeed found in the tissue of one of the study participants.  (*Id.* ¶¶ 137-38.)  This is yet another attempt to challenge the method and analysis Dr. Moline employed to reach her conclusions, which is not an appropriate basis for a trade-libel claim.

Unable to identify any actionable statement in the Articles themselves, LTL also attempts to evade *Pacira* by challenging Dr. Moline's discussion of the 2020 Article in testimony before Congress, and in front of "judges and juries."  (*See* Cplt. ¶¶ 3, 40-84, 239b.-h.)  But each of the statements that LTL identifies simply summarized or described the findings in the 2020 Article.  (*See id.* ¶ 239b.-h.)  *Pacira* makes clear that a nonactionable opinion does not become actionable

simply by being repeated.  *See*, 63 F.4th at 249 n.19 (rejecting argument that plaintiff stated a claim based on the repetition of a scientific article's conclusions in other media); *see also ONY*, 720 F.3d at 492 (concluding that the accurate "secondary distribution of excerpts" of a nonactionable article "cannot give rise to liability").  Moreover, LTL cannot challenge statements made in Congressional or court proceedings because they are protected by an absolute privilege.[14]  Thus, LTL's effort to challenge statements in the Articles through their republication in other forums should be rejected.

In short, LTL's trade-libel claim should be dismissed for the fundamental reason that it challenges scientific opinions that are not actionable as a matter of law.

## B.    The Trade Libel Claim Should be Dismissed Because the Complaint Fails to Plead Special Damages with Particularity.

Even if LTL had identified an actionable statement (and it has not), its trade-libel claim would still have to be dismissed for failing to adequately plead "special damages."  To meet this pleading requirement, LTL must either identify the individuals who ceased being customers or plead with specificity that it suffered a diminution in its business that was the natural and direct result of the false publication.  *See Sciore v. Phung*, No. 19-cv-13775, 2022 U.S. Dist. LEXIS 58163, at *31-32 (D.N.J. Mar. 30, 2022); *accord Gillon v. Bernstein*, 218 F. Supp. 3d 285, 298 (D.N.J. 2016); *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641-43 (2d Cir. 2015).

---

[14] *See* Restatement (Second) of Torts § 590A ("A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding."); *accord DeSantis v. Emplys. Passaic County Welfare Ass'n*, 237 N.J. Super. 550, 554 (App. Div. 1990); *Webster v. Sun Co.*, 790 F.2d 157, 161 (D.C. Cir. 1986); *Bio/Basics International Corp. v. Ortho Pharmaceutical Corp.*, 545 F. Supp. 1106, 1115-16 (S.D.N.Y. 1982); *see also Koch v. Pechota*, 744 F. App'x 105, 113 (3d Cir. 2018) ("New Jersey and New York's litigation privilege is absolute. . . . This privilege extends to defamatory statements as long as they have some relation to the proceedings.").

When basing a damages claim on a general diminution in business, a plaintiff must plead facts showing an established business, the amount of sales for a substantial period preceding publication, the amount of sales for a period subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing that the plaintiff could not allege the names of particular customers who withdrew or withheld their business. *See Sciore*, 2022 U.S. Dist. LEXIS 58163, at *32; *accord Gillon*, 218 F. Supp. 3d at 299; *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-cv-137, 2016 U.S. Dist. LEXIS 22165, at *18 (D.N.J. Feb. 24, 2016).  Courts considering trade-libel claims have applied the requirement to plead special damages "strictly," frequently granting motions to dismiss for failure to allege special damages with the requisite specificity.  *See Covet v. Invisible Bead Extensions, LLC*, No. 21-cv-7740, 2023 U.S. Dist. LEXIS 49945, at *42 (S.D.N.Y. Mar. 23, 2023).

LTL's trade-libel claim fails under these standards.  LTL's assertion that it "lost profits" as a "direct and proximate cause of Dr. Moline's false statements," (Cplt. ¶ 239), is impermissibly conclusory.  *See, e.g.*, *Intervet*, 2016 U.S. Dist. LEXIS 22165, at *19 (holding that plaintiff failed to plead special damages by alleging that it "'incurred and will continue to suffer damages'"); *accord NY Mach., Inc. v. Korean Cleaners Monthly*, No. 17-cv-12269, 2018 U.S. Dist. LEXIS 92031, at *17 (D.N.J. May 31, 2018); *Zinn v. Seruga*, No. 05-cv-3572, 2006 U.S. Dist. LEXIS 51773, at *34 (D.N.J. July 28, 2006).  LTL does not identify any customer by name.  It does not identify the volume of sales before and after the Articles' publication.  It does not set forth the sales following their publication.  It does not even identify the total sales it allegedly lost as a result of Dr. Moline's allegedly false statements.  That is fatal.  *See, e.g.*, *Covet*, 2023 U.S. Dist. LEXIS 49945, at *42 (holding that plaintiff failed to adequately allege special damages where, among other deficiencies, it failed to "provide a dollar amount" about the losses it sustained).

At its most specific, the Complaint alleges that in October 2019, when the 2020 Moline Article allegedly became available online, "the call center handling the Consumer business of Johnson & Johnson saw a significant increase in contacts" and that "[t]he sales volume and profits from Johnson's Baby Powder declined in 2019 and again in 2020."  (Cplt. ¶¶ 223-24.)  But the Complaint fails to plead how an article appearing in a scientific publication—as opposed to ***J&J's own recall*** of Baby Powder in October 2019,[15] years of negative publicity through litigation, and exposés in Reuters and the New York Times published in 2018—was somehow the "natural and direct" catalyst of these calls, *Sciore*, 2022 U.S. Dist. LEXIS 58163, at *31-32 (cleaned up), much less the overall losses in sales and profits in 2019 and 2020.  Making matters worse, the May 2020 press release that the Complaint incorporates by reference, (*see* Cplt. ¶ 225), acknowledges that demand for talc-based Baby Powder declined "due in large part to changes in consumer habits," "a constant barrage of litigation advertising," and supposed "misinformation around the safety of the product" that was not limited to the 2020 Article itself.[16]  Thus, in addition to failing to plead the amount of damages it lost, LTL has even failed to plead that the alleged misstatements—as opposed to the many other factors that J&J itself acknowledged impacted its sales of talc-based products—caused its losses.  *See Bilinski*, 632 F. App'x at 642 (affirming dismissal of trade-libel claim for failure to plead special damages where plaintiff failed to demonstrate that the alleged

---

[15] Notably, the FDA's October 2019 press release encouraged J&J consumers to stop using Baby Powder from a certain lot and "contact Johnson & Johnson for a refund."  FDA News Release, Baby powder manufacturer voluntarily recalls products for asbestos (Oct. 18, 2019), *available at* https://www.fda.gov/news-events/press-announcements/baby-powder-manufacturer-voluntarily-recalls-products-asbestos.

[16] *See* Johnson & Johnson Consumer Health Announces Discontinuation of Talc-based Johnson's Baby Powder in U.S. and Canada, *available at* https://www.jnj.com/our-company/johnson-johnson-consumer-health-announces-discontinuation-of-talc-based-johnsons-baby-powder-in-u-s-and-canada.

libel rather than other factors caused its losses); *NOVAGOLD Res., Inc. v. J Capital Research USA LLC*, No. 20-cv-2875, 2022 U.S. Dist. LEXIS 55734, at *33 (E.D.N.Y. Mar. 28, 2022) (dismissing trade-libel claim for failing to allege special damages where plaintiff had not "eliminated the possibility that other factors" caused its alleged loss).

Finally, LTL's assertion that it sustained damages in the form of "increased fees to defend" itself or "other expenses incurred to counteract and prevent Dr. Moline's false statements from causing further harm (including the costs of this litigation)," (Cplt. ¶ 239), are not cognizable forms of damages for a trade-libel claim. *See NY Mach.*, 2018 U.S. Dist. LEXIS 92031, at *16 (explaining that special damages are an essential element of a trade-libel claim and consist of either the loss of particular customers or a general diminution in business caused directly by the libel); *Angio-Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989) (holding that "legal fees and executive time, standing alone do not comprise special damages"); *accord Free Holdings Inc. v. McCoy*, No. 22-cv-881, 2023 U.S. Dist. LEXIS 45591, at *42 (S.D.N.Y. Mar. 17, 2023); *Biovail Corp. v. S.A.C. Capital Mgmt., LLC*, No. ESX-L-1583-06, 2009 N.J. Super. Unpub. LEXIS 3253, at *49 (Law Div. Aug. 20, 2009).  Indeed, the allegation is foreclosed by the American Rule, under which, absent an exception that does not exist here, each party must bear its own expenses in a litigation. *See Estate of Joyce v. Fannie Mae*, No. 19-cv-12963, 2020 U.S. Dist. LEXIS 216733, at *6 (D.N.J. Nov. 19, 2020) ("New Jersey and federal courts follow the 'American Rule,' which provides that the parties are generally responsible for their own attorneys' fees."); *accord CF Global Trading, LLC v. Wassenaar*, No. 13-cv-766, 2013 U.S. Dist. LEXIS 145588, at *16 (S.D.N.Y. Oct. 8, 2013).

Thus, LTL's trade-libel claim should be dismissed for this additional reason.

## II.    LTL'S CLAIM FOR FRAUD (COUNT II) SHOULD BE DISMISSED.

To plead a claim of fraud under either New Jersey or New York law, a plaintiff must allege

(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  *See McBrearty v. Fifth Generation, Inc.*, No. 14-cv- 7667, 2015 U.S. Dist. LEXIS 103062, at *9 (D.N.J. Aug. 6, 2015) (describing the elements under New Jersey law); *Chung v. Pure Fishing, Inc.*, No. 20-cv-3983, 2022 U.S. Dist. LEXIS 52319, at *10 (E.D.N.Y. Mar. 23, 2022) (same under New York law).  LTL's fraud claim should be dismissed for failing to identify an actionable statement, failing to plead that Dr. Moline intended to deceive it or that it was deceived by Dr. Moline's supposed fraud, and failing to plead cognizable damages.

### A.    The Fraud Claim Fails to Identify an Actionable Statement.

LTL's fraud claim should be dismissed for the same fundamental reason as its trade-libel claim: It fails to identify a statement that is actionable.  Here, as shown above, LTL challenges the reliability of the conclusions set forth in the Articles.  But a statement regarding the scientific reliability of a result is not an actionable opinion.  *See Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 766 (3d Cir. 2014) (holding that opinion regarding the "scientific reliability" of a breathalyzer and whether it needed ongoing maintenance was not actionable as common-law fraud) (citing *Suarez v. Eastern Int'l Coll.*, 428 N.J. Super. 10, 29 (App. Div. 2012)).  To conclude otherwise would eviscerate *Pacira*'s holding, allowing a plaintiff to evade it by simply labeling its claim as one for fraud rather than trade libel.  Moreover, as shown above, a nonactionable statement cannot be converted into an actionable one simply by being repeated; and statements made in judicial and legislative proceedings are absolutely privileged.

### B.    The Fraud Claim Fails Because LTL has Failed to Plausibly Allege that Dr. Moline Intended for LTL to Rely on the Alleged Misstatements.

LTL acknowledges that when the Articles were published, Dr. Moline had served as a

19

plaintiffs' expert in asbestos litigation brought against consumer-talc defendants that included LTL. (Cplt. ¶ 14.)  Moreover, the Articles expressly disclosed that Dr. Moline faced a conflict of interest by virtue of her role as an expert witness on plaintiffs' behalf in asbestos litigation.  (*See* Cplt. Ex. A, at 11 (footnote titled "Conflicts of Interest"); Marino Cert. Ex. 1, 2023 Article, at 11 (end note titled "Competing Interests").)

That Dr. Moline somehow intended for LTL—the adversary of the plaintiffs on whose behalf she testified—to rely on the statements in the Articles is not plausible, and the Complaint fails to include any allegations to show that it is.  The fraud claim should be dismissed for this additional reason.  *See Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-cv-4248, 2021 U.S. Dist. LEXIS 116357, at *43 (D.N.J. June 17, 2021) (rejecting as conclusory plaintiff's "unsupported claim" that a defendant intended for plaintiff to rely on an assertion made by its adversary in a patent proceeding), *aff'd*, __ F. App'x __, 2022 U.S. App. LEXIS 24534; *New Skies Satellites, B.V. v. Home2US Communs., Inc.*, 9 F. Supp. 3d 459, 471 (D.N.J. 2014) (dismissing fraud claim for, *inter alia*, failing to plausibly allege that plaintiff "intended for [defendant] to rely upon its alleged misrepresentations"); *accord United Capital Funding Grp., LLC v. Brick City Brewing, LLC*, No. 21-cv-3314, 2021 U.S. Dist. LEXIS 214457, at *15 (D.N.J. Nov. 4, 2021); *Nunez v. Subaru of Am., Inc.*, No. 1:19-cv-18303, 2021 U.S. Dist. LEXIS 262633, at *26 (D.N.J. Feb. 23, 2021); *Lumbra v. Suja Life, LLC*, No. 22-cv-893, 2023 U.S. Dist. LEXIS 92309, at *22 (S.D.N.Y. May 26, 2023); *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 301-02 (N.D.N.Y. 2012).

### C.     The Fraud Claim Fails Because LTL has Failed to Plausibly Allege that LTL Actually or Reasonably Relied on the Alleged Misstatements.

LTL's fraud claim fails for the additional reason that it has failed to plausibly allege that it relied on Dr. Moline's statements to its detriment.  As noted above, the Complaint affirmatively

alleges that Dr. Moline has been serving as an expert for plaintiffs in asbestos litigation for over 20 years and has been disclosed as a plaintiff's expert in over 200 cosmetic talc/mesothelioma cases against LTL.  And Dr. Moline disclosed her role as a plaintiff-side expert in the Articles themselves.

The notion that LTL somehow relied on statements made by an expert opposing it in litigation—much less reasonably relied on those statements—is beyond implausible; it is preposterous.  Indeed, LTL includes as an attachment to its Complaint an article in which its ***own representatives*** rejected the conclusions in the 2020 Article, stating that J&J's Baby Powder is "safe," "does not contain asbestos," does not cause cancer, and noting the 2020 Article was authored by a "paid witness in asbestos lawsuits" who "drew on cases referred to her by plaintiffs' attorneys."  (Cplt. Ex. C.)  LTL further alleges that, in a press release issued in May 2020, J&J stated that it discontinued its talc-based Baby Powder due in part to "'misinformation around the safety of the product,'" with the 2020 Article comprising "a central element" of this "misinformation."  (Cplt. ¶ 225.)  Finally, LTL alleges that it undertook efforts to "***counteract*** Dr. Moline's false statements," (*id.* ¶ 226 (emphasis added)), not that it was deceived by them.  Those efforts included trying no less than ten times to unmask the identities of the participants in Dr. Moline's study in order to "uncover the Article's [allegedly] false premise" that the study participants had no known exposures to asbestos beyond talc products.  (Cplt. ¶¶ 190-91; *see also id.* ¶ 195 (alleging that Dr. Moline was asked questions such as whether she saw documents that "alleged exposure to asbestos other than from talc").)

LTL's fraud claim should therefore be dismissed for failure to plausibly allege that it actually or reasonably relied on Dr. Moline's alleged misstatements.  *See, e.g.*, *New Skies*, 9 F. Supp. 3d at 471 (dismissing fraud claim for failing to plausibly allege that plaintiff "did in fact

reasonably rely upon [the alleged] misrepresentations"); *Olson v. Major League Baseball*, 29 F.4th 59, 66 (2d Cir. 2022) (affirming dismissal of fraud claims for failure to plausibly allege "actual or reasonable reliance").   In fact, LTL has pleaded itself out of court by including allegations and incorporating statements showing that it did not rely on Dr. Moline's alleged misstatements.   *See Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 591-92 (7th Cir. 2017) (holding that a plaintiff "pleaded herself out of court" by alleging that her attorney "'repeatedly expressed uncertainty'" about the alleged misrepresentation and emphasizing that "[a] plaintiff must believe the alleged misrepresentation to be true in order to state reliance"); *Walzer v. Muriel Siebert & Co.*, No. 04-cv-5672, 2010 U.S. Dist. LEXIS 82593, at *29 (D.N.J. Aug. 10, 2010) (denying leave to file amended complaint to allege securities fraud where plaintiff's "own allegations" demonstrated that "he did not rely on the Defendants' alleged misrepresentations").[17]   LTL's fraud claim should be dismissed for this additional reason.

### D.     LTL's Fraud Claim Should Be Dismissed Because It Fails to Allege Cognizable Damages.

To plead a valid fraud claim, a plaintiff must allege that it suffered damages resulting from its reliance on the alleged fraud.   *See Brudnak v. A.A. Moving & Storage, Inc.*, No. 14-cv-6964,

---

[17] *See also, e.g.*, *Wilson v. Bank of Am., N.A.*, No. 12-cv-1532, 2013 U.S. Dist. LEXIS 9814, at *3 (W.D. Wa. Jan. 23, 2013) (holding that plaintiffs "pleaded themselves out of a complaint for fraud by admitting that they did not rely on the allegedly fraudulent document"); *Shelton v. Sethna*, No. 10-cv-4218, 2012 U.S. Dist. LEXIS 42194, at *18 (S.D.N.Y. Mar. 26, 2012) (holding that plaintiff failed to plead that he relied on any false statements, particularly where the "complaint states with some specificity plaintiff's contemporaneous doubts about these statements and his consequent refusal to pursue any of the proposed transactions" based on them); *Drobny v. JP Morgan Chase Bank*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) ("Far from alleging that they relied on any statement made by Defendants, Plaintiffs admit that they moved to dismiss the foreclosure action, arguing that Chase had not received an assignment of their loan, contrary to the representation in its complaint.   Because they did not rely, there was no fraud."); *Caplan v. International Fidelity Ins. Co.*, 885 F. Supp. 175, 179 (N.D. Ill. 1995) (holding that plaintiff has "pleaded himself out of court" by alleging that he did not rely on the alleged misrepresentation).

2015 U.S. Dist. LEXIS 36359, at *8 (D.N.J. Mar. 24, 2015); *Beverly Hills Motoring, Inc. v. Morici*, No. 14-cv-756, 2015 U.S. Dist. LEXIS 6207, at *6-7 (D.N.J. Jan. 20, 2015); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 623 (S.D.N.Y. 2013).  As LTL has failed to allege that it relied on Dr. Moline's statements, it necessarily follows that it has also failed to plead that it suffered damages that resulted from its reliance on the alleged fraud.

Aside from its impermissibly conclusory allegation that it "suffered, and continues to suffer, actual and special damages,"[18] LTL alleges that it "lost profits on the sale of Johnson's Baby Powder and Shower to Shower" as a result of Dr. Moline's fraudulent statements.  (Cplt. ¶ 239.)  But that allegation depends on reliance by consumers, not LTL itself.  Even if LTL could overcome that hurdle, the Complaint makes no effort to establish how these lost profits were "independent of other causes." *Warren*, 952 F. Supp. 2d at 623 (cleaned up).  In fact, it pleads the opposite, admitting that J&J discontinued selling its talc-based Baby Powder for multiple reasons, including "'changes in consumer habits'" and "misinformation" that included but was not limited to the 2020 Moline Article.  (Cplt. ¶ 225.)  In fact, in the complaint it recently filed against other plaintiff-side experts in consumer-talc litigations, LTL alleges that a different publication by these experts was an "element of th[is] misinformation."  Cplt., *LTL Mgmt. LLC v. Emory*, No. 23-cv-03649 (D.N.J.), at ¶ 142.

LTL also alleges that it suffered damages in the form of "increased fees to defend" consumer-talc actions and unspecified "other expenses incurred to counteract and prevent Dr. Moline's false statements from causing further harm (including the costs of this litigation)."  (Cplt. ¶ 239.)  But as shown above, these are not damages caused by LTL's detrimental reliance

---

[18] *See, e.g.*, *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013) (dismissing fraud claim where plaintiff failed to "offer[] anything other than conclusory allegations as to reasonable reliance or damages.").

on the supposed fraud.  To the contrary, these expenses show that LTL was ***not*** deceived by the fraud and took measures to "counteract" it.  Even assuming LTL had not pleaded itself out of court by seeking these expenses (and it has), LTL still could not base a fraud claim on these litigation-related expenses because that request contravenes the bedrock rule that parties generally must bear the expenses they incur in litigation.  *See West Tsusho Co. v. Prescott Bush & Co.*, No. 92-cv-3378, 1993 U.S. Dist. LEXIS 12077, at *2 (S.D.N.Y. Aug. 25, 1993) ("[L]egal fees incurred in preparation for or in the maintenance of this action are not fraud damages under the general rule that litigating parties bear their own costs.").[19]

Thus, LTL's fraud claim should be dismissed for the additional reason that it has failed to plead cognizable damages.

## III.   LTL'S CLAIM FOR VIOLATION OF THE LANHAM ACT (COUNT III) SHOULD BE DISMISSED.

### A.   LTL's Lanham Act Should Be Dismissed Because None of the Allegedly False Statements Are Actionable or Made in a "Commercial Advertisement or Promotion."

The Lanham Act creates a cause of action to redress certain misstatements made "in commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B).  Thus, a "threshold question" in every Lanham Act case is whether a plaintiff has sufficiently alleged that the statement it challenges appeared in such a commercial communication.  *See Refundo, LLC v. Drake Enters.*, No. 13-cv-643, 2013 U.S. Dist. LEXIS 57671, at *7 (D.N.J. Apr. 22, 2013); *Columbia Trading*

---

[19] *See also Betz v. Glob. Telesourcing, LLC*, No. 21-cv-1320, 2021 U.S. Dist. LEXIS 237132, at *17-18 (D.D.C. Dec. 10, 2021) ("The only action that defendant asserts it took in reliance on plaintiff's allegedly fraudulent statements was to expend money on litigation. . . .  This Court, and other courts in the D.C. Circuit, has held, however, that the cost of legal services alone is not sufficient to state a valid claim for detrimental reliance."); *Hoch v. Hoch*, No. 16-03678-5, 2018 Bankr. LEXIS 181, at *62 (Bankr. E.D.N.C. Jan. 25, 2018) (holding that a fraud claim could not be based on the allegation that a party had "'to incur the cost and expense associated with bringing'" a lawsuit).

*Corp. v. Green Elecs., LLC*, No. 17-cv-1309, 2018 U.S. Dist. LEXIS 129048, at *8-9 (D.N.J. July 27, 2018); *Navatar Grp., Inc. v. Dealcloud, Inc.*, No. 21-cv-1255, 2023 U.S. Dist. LEXIS 20781, at *5 (S.D.N.Y. Feb. 7, 2023); *Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 289-290 (E.D.N.Y. 2022).

An article qualifies as a "commercial advertis[ement] or promotion" when it consists of (1) "commercial speech"; (2) made by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within the industry. *Columbia Trading*, 2018 U.S. Dist. LEXIS 129048, at *8-9; *accord Wakefern Food Corp. v. Marchese*, No. 20-cv-15949, 2021 U.S. Dist. LEXIS 161661, at *12 (D.N.J. Aug. 26, 2021). *See also Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (noting the Second Circuit's adoption of these factors with the exception of the defendant's status as a commercial competitor, which the court had not yet determined whether to adopt). This definition is designed to ensure that the Lanham Act is not overextended to intrude on First Amendment values. *See Gmurzynska*, 355 F.3d at 211; *ONY*, 720 F.3d at 496 ("Because the Act proscribes conduct that, but for its false or misleading character, would be protected by the First Amendment, free speech principles inform our interpretation of the Act."); *Konowicz v. Carr*, 838 F. App'x 1, 8 (3d Cir. 2020) ("'[W]e err on the side of fully protecting speech when confronted with works near the line dividing commercial and noncommercial speech'" (quoting *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008)).

As an initial matter, this Court need not engage in this multi-factored analysis because it is clear that the opinions set forth in the Articles are protected under the First Amendment. Indeed, *ONY* specifically affirmed dismissal of a Lanham Act claim that challenged the same types of

scientific opinions at issue here. *See* 720 F.3d at 496-98. In doing so, it noted that courts must be

"'especially careful when applying defamation and related causes of action to academic works,

because academic freedom is 'a special concern of the First Amendment.'" *ONY*, 720 F.3d at 496

(quoting *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603 (1967)).

*ONY* is hardly alone; there is an "abundance of case law to support the proposition that a scientific

article is protected noncommercial speech." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,

627 F. Supp. 2d 384, 456-57 (D.N.J. 2009) (collecting authority).

In case there was any doubt, the traditional factors used to define a "commercial

advertis[ement] or promotion" confirm that the statements LTL challenge did not appear in any

such media. As an initial matter, the Articles are not "commercial speech" because they are not

forms of "'expression related solely to the economic interests of the speaker and its audience.'"

*Bracco*, 627 F. Supp. 2d at 457 (quoting *Cincinnati v. Discovery Network*, 507 U.S. 410, 422

(1993)). Indeed, medical journals are published for "educational purposes and for the benefit of

the medical field," and thus "simply do[] not fit the definition of a representation that is solely

related to economic interests." *Bracco*, 627 F. Supp. 2d at 457. *See also Pacira*, 63 F.4th at 246

n.10 ("Commercial advertisements are directed at consumers, whereas peer-reviewed academic

journals are generally 'directed to the relevant scientific community.'"). And LTL fails to plead

any facts demonstrating that the other forums in which the Articles' conclusions were republished

related solely to Dr. Moline's economic interest, as opposed to the socially beneficial goals of

educating practitioners, the public, and Congress about the potential danger of exposure to talcum-

based powders.

The other commercial-advertisement factors also confirm that none of the challenged

statements were made in that type of communication. LTL does not—and cannot—allege that

Dr. Moline and LTL are in commercial competition with one another. *See CHW Group, Inc. v. Better Bus. Bureau of New Jersey, Inc.*, No. 11-cv-3261, 2012 U.S. Dist. LEXIS 16336, at *12 (D.N.J. Feb. 8, 2012) (holding that plaintiff failed to adequately plead a claim under the Lanham Act where, *inter alia*, the defendants were not in "commercial competition" with the plaintiff). Nor does LTL allege that the statements were published to influence J&J's customers, much less divert their business to a non-competitor such as Dr. Moline. *See id.* at *12, *14-15 (dismissing Lanham Act claim where, *inter alia*, defendants' statements were not "aimed at influencing [plaintiff's] customers" and explaining that a plaintiff cannot allege that a defendant sought to divert business from it when the parties are not in competition); *Drone Racing League, Inc. v. DR1, LLC*, No. 18-cv-4093, 2018 U.S. Dist. LEXIS 199351, at *13 (S.D.N.Y. Nov. 26, 2018) (holding that a presentation was not intended to influence individuals to buy defendant's products where it was not "meant to communicate with those individuals as consumers").

Finally, and for similar reasons, the Complaint fails to allege that the Articles or other media were disseminated sufficiently widely to the relevant purchasing public. *See Wakefern Food Corp. v. Marchese*, No. 20-cv-15949, 2021 U.S. Dist. LEXIS 161661, at *13 (D.N.J. Aug. 26, 2021) ("Plaintiff must allege that the false advertising actually reached consumers of the relevant products rather than some non-consuming party."). That allegation is particularly implausible with respect to the Articles, whose readership consisted of medical professionals. LTL cannot rely on conclusory assertions of widespread dissemination to overcome this deficiency. *See Sanborn Library LLC v. Eris Info. Inc.*, No. 19-cv-2049, 2021 U.S. Dist. LEXIS 165496, at *73 (S.D.N.Y. Aug. 30, 2021) ("[A] plaintiff cannot rely on conclusory allegations of widespread dissemination to unidentified customers"); *Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*, No. 08-cv-04208, 2019 U.S. Dist. LEXIS 21226, at *9 (S.D.N.Y. Feb. 8, 2019) ("[A]

27

Lanham Act violation for false commercial advertising or promotion cannot lie where the allegedly offending message is not sufficiently disseminated to the relevant purchasing public.").

LTL's Lanham Act claim should be dismissed for failure to identify an actionable statement that appeared in a commercial advertisement or promotion.

**B.      LTL Lacks Standing Because It Failed to Adequately Allege that It Suffered Losses Proximately Caused by Publication of the Allegedly False Statements.**

A Lanham Act plaintiff must also allege that it has standing to sue under the statute by demonstrating that it has rights that fall within the zone of interests protected by the Lanham Act and that its injuries were proximately caused by the statute's violation. *See Conopco, Inc. v. WBM, LLC*, No. 21-cv-14205, 2023 U.S. Dist. LEXIS 46277, at *15 (D.N.J. Mar. 17, 2023) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 132 (2014)); *accord Unlimited Cellular, Inc. v. Red Points Sols. SL*, No. 21-cv-10638, 2023 U.S. Dist. LEXIS 104279, at *16 (S.D.N.Y. June 14, 2023).

Even if LTL had established that the statements it challenges were made in commercial advertising, its Lanham Act claim would still fail because it has failed to plausibly allege that its losses were proximately caused by Dr. Moline's alleged misstatements. As shown above, LTL has not pleaded facts demonstrating that it lost sales as a direct result of Dr. Moline's statements, as opposed to the many other factors that may have impacted its sale of consumer-talc products, such as negative publicity through lawsuits filed against it, exposés by Reuters and the New York Times, and its own recall of Baby Powder after the FDA found asbestos in a bottle that it sampled. That is fatal for purposes of LTL's trade-libel claim and is likewise fatal for its claim under the Lanham Act. *See ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325, 325-26 (9th Cir. 2020) (affirming dismissal of Lanham Act claim where plaintiff offered "only conclusory allegations and fail[ed] to plausibly connect its 2016 drop in sales of component ingredients to

[defendant's] alleged advertising and sale of allegedly illegal products.").[20]

LTL's Lanham Act claim should be dismissed for this additional reason.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Chatham, New Jersey                             Respectfully submitted,
Dated:  September 8, 2023

MARINO, TORTORELLA & BOYLE, P.C.

By: _____

Kevin H. Marino
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant Dr. Moline*

---

[20] *See also, e.g.*, *Wall & Assocs. v. Better Bus. Bureau of Cent. Va., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017) (affirming dismissal for failure to adequately plead causation where plaintiff failed to "identify a single consumer who withheld or cancelled business with it or pointed to a particular quantum of diverted sales or loss of goodwill and reputation resulting directly from reliance on any false or misleading representations"); *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-cv-4459, 2020 U.S. Dist. LEXIS 174740, at *21 (S.D.N.Y. Sept. 23, 2020) (dismissing Lanham Act claim for failure to allege "non-conclusory facts that make it plausible that Plaintiff lost sales because of Defendants' misleading statements"); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018) (dismissing Lanham Act claim where plaintiff failed to "offer any facts showing that consumers rely on the allegedly misleading" statements or "facts connecting th[e] attributes of the defendant's website to reputational harm or lost business.").