UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LTL MANAGEMENT LLC, <br><br> Plaintiff, <br><br> v. <br><br> DR. JACQUELINE MIRIAM MOLINE, <br><br> Defendant. | Case 3:23-cv-02990-GC-DEA <br> Hon. Georgette Castner, U.S.D.J. <br><br> Return Date: October 2, 2023 <br> *Document Electronically Filed* <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

Kevin H. Marino
John D. Tortorella
Erez J. Davy
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com
edavy@khmarino.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................................... ii

LEGAL ARGUMENT .................................................................................................................... 2

I.     LTL'S CLAIM FOR TRADE LIBEL (COUNT I) SHOULD BE DISMISSED. .............. 2

        A.    The Trade-Libel Claim Fails Because It Targets Scientific Opinions that are Nonactionable as a Matter of Law. ............................................................................ 2

        B.    The Trade Libel Claim Should be Dismissed Because the Complaint Fails to Plead Special Damages with Particularity. ............................................................... 6

II.    LTL'S CLAIM FOR FRAUD (COUNT II) SHOULD BE DISMISSED. ......................... 8

III.   LTL'S CLAIM FOR VIOLATION OF THE LANHAM ACT (COUNT III) SHOULD BE DISMISSED. ................................................................................................ 9

CONCLUSION ............................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

*Angio-Medical Corp. v. Eli Lilly & Co.*,
  720 F. Supp. 269 (S.D.N.Y. 1982) ................................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 9

*Bilinski v. Keith Haring Found., Inc.*,
  632 F. App'x 637 (2d Cir. 2015) ............................................................................. 6, 7

*Blueprint Capital Advisors, LLC v. Murphy*,
  No. 20-cv-07663, 2022 U.S. Dist. LEXIS 231262 (D.N.J. Dec. 23, 2022) ............... 6

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (2009) ......................................................................................... 10

*Columbia Trading Corp. v. Green Elecs., LLC*,
  No. 17-cv-1309, 2018 U.S. Dist. LEXIS 129048 (D.N.J. July 27, 2018) ................ 10

*Covet v. Invisible Bead Extensions, LLC*,
  No. 21-cv-7740, 2023 U.S. Dist. LEXIS 49945 (S.D.N.Y. Mar. 23, 2023) .............. 6

*Democratic Party of N.J., Inc. v. Devine*,
  No. 22-cv-01268, 2022 U.S. Dist. LEXIS 181405 (D.N.J. Oct. 4, 2022) ................. 7

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) .............................................................................. 9

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ........................................................................................... 7

*Graco, Inc. v. PMC Global, Inc.*,
  No. 08-cv-1304, 2009 U.S. Dist. LEXIS 26845 (D.N.J. Mar. 31, 2009) .................. 6

*In re Niles Trust*,
  176 N.J. 282 (2003) ......................................................................................................... 8

*Internet Prods. LLC v. LLJ Enters., Inc.*,
  No. 18-cv-15421, 2019 U.S. Dist. LEXIS 190580 (D.N.J. Nov. 4, 2019) ................ 6

*Intervet, Inc. v. Mileutis, Ltd.*,
  No. 00-cv-5354, 2016 U.S. Dist. LEXIS 22165 (D.N.J. Feb. 24, 2016) ................... 6

*Jevremovic v. Courville*,
  No. 22-cv-4969, 2023 U.S. Dist. LEXIS 139440 (D.N.J. Aug. 10, 2023) ............... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ....................................................................................................... 10

*Lynch v. N.J. Educ. Ass'n*,
  161 N.J. 152 (1999) ......................................................................................................... 5

*McLaughlin v. Rosanio, Bailets & Talamo*,
  331 N.J. Super. 303 (App. Div. 2000) ........................................................................ 5

*Merriman v. Oswald*,
　　No. 3:20-cv-00617, 2021 U.S. Dist. LEXIS 50916 (M.D. Pa. Mar. 18, 2021) .......................... 7

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis United States LLC*,
　　No. 3:18-cv-2211, 2019 U.S. Dist. LEXIS 54086 (D.N.J. Mar. 29, 2019) ............................... 9

*NOVAGOLD Res., Inc. v. J Capital Research USA LLC*,
　　No. 20-cv-2875, 2022 U.S. Dist. LEXIS 55734 (E.D.N.Y. Mar. 28, 2022) .............................. 7

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
　　720 F.3d 490 (2d Cir. 2013) ............................................................................................ passim

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
　　63 F.4th 240 (3d Cir. 2023) ............................................................................................ 2, 3, 4, 5

*Pactiv Corp. v. Perk-Up, Inc.*,
　　No. 08-cv-05072, 2009 U.S. Dist. LEXIS 72796 (D.N.J. Aug. 18, 2009) ................................ 6

*Roberts v. Mintz*,
　　No. A-1563-14T4, 2016 WL 3981128 (App. Div. July 26, 2016) ............................................ 5

*Sciore v. Phung*,
　　No. 19-cv-13775, 2022 U.S. Dist. LEXIS 58163 (D.N.J. Mar. 30, 2022) ................................ 6

*Wakefern Food Corp. v. Marchese*,
　　No. 20-cv-15949, 2021 U.S. Dist. LEXIS 161661 (D.N.J. Aug. 26, 2021) ............................ 10

*Ward v. Zelikovsky*,
　　136 N.J. 516 (1994) .................................................................................................................. 5

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ................................................................................................... 9, 10

**Rules & Regulations**

Fed. R. Civ. P. 9(g) ............................................................................................................... 6, 7

**Journals & Treatises**

Emily Haney-Caron, *et al.*, *Safe from Subpoena? The Importance of Certificates of
　　Confidentiality to the Viability and Ethics of Research*, 48 AKRON L. REV. 349 (2019) ........... 6

Eric Robinson, *No Confidence: Confidentiality, Ethics and the Law of Academic Privilege*,
　　21 COMM. L. & POL'Y 323 (Summer 2016) ............................................................................ 6

**Other Authorities**

Restatement (Second) of Torts § 633 cmt. h ............................................................................. 7

**PRELIMINARY STATEMENT**

LTL's opposition confirms that its Complaint fails to state a claim because the alleged misrepresentation central to all counts—Dr. Moline's conclusion that the individuals studied in the 2020 Article had no known exposure to asbestos other than through their use of cosmetic-talc products—is a protected scientific opinion that is not actionable as a matter of law. Dr. Moline arrived at that opinion (and her ultimate opinion that the asbestos in cosmetic talc causes cancer, which is the real target of LTL's campaign to discredit and silence her) through the application of a disclosed scientific method. Specifically, Dr. Moline's opinion that the study participants were not exposed to asbestos other than in cosmetic talc was based on inferences from data, including the study participants' medical records, tissue analysis, deposition testimony, and epidemiological evidence of consumer-talc usage. By contrast, LTL's motion and the Complaint it seeks to salvage are premised on its own decidedly unscientific analysis of the facts animating Dr. Moline's opinion. As LTL makes clear, it would have done the study differently, would have considered additional information, and would have drawn different conclusions than those Dr. Moline reached based on her fully disclosed scientific method.

But the fact that LTL has a different opinion as to whether the participants in Dr. Moline's study were exposed to asbestos does not convert Dr. Moline's opinion to a statement of fact. A dispute over what data should have been considered and what inferences should have been drawn from that data is the stuff of scholarly debate among scientists, not litigation against them. LTL should have expressed its competing analysis of the facts in a peer-reviewed article written by a scientist, not a federal complaint drafted by lawyers.

Beyond confirming that Dr. Moline's expression of a scientific opinion is not actionable, LTL's opposition confirms that its claims must be dismissed for failure to sufficiently plead that

1

Dr. Moline's statements caused LTL's alleged losses. LTL has not quantified the revenue J&J claims it lost based on Dr. Moline's statements, as required to plead special damages under a general-diminution-in-business theory. Nor has LTL pleaded that Dr. Moline's statements caused its unspecified losses. These failures are fatal to all its claims. Finally, LTL's fraud claim should be dismissed because it does not plausibly allege that Dr. Moline intended LTL to rely on her alleged misstatements, or that LTL actually and reasonably did so.

## LEGAL ARGUMENT

I. **LTL'S CLAIM FOR TRADE LIBEL (COUNT I) SHOULD BE DISMISSED.**

   A. **The Trade-Libel Claim Fails Because It Targets Scientific Opinions that are Nonactionable as a Matter of Law.**

LTL's core contention—that the 2020 Article[1] is actionable because its conclusion that the study participants had no known exposure to asbestos other than through their use of consumer-talc products was a statement of fact, not opinion—is wrong as a matter of law under the Third Circuit's recent opinion in *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240 (3d Cir. 2023), which embraced and explained the Second Circuit's reasoning in *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013).

LTL's argument by turns ignores and grossly oversimplifies the data and methods Dr. Moline used to reach her conclusion about the participants' exposure histories. As the 2020

---

[1] LTL makes no distinct argument with respect to the 2023 Article, claiming in a footnote that it was false for that article to conclude that certain participants in that study had no known exposure to asbestos other than through consumer talc. (LTL Br. at 7 n.1.) The Court should therefore dismiss LTL's efforts to bring a trade-libel claim for the 2023 Article for the same reason it should dismiss the claim as to the 2020 Article. Indeed, as Dr. Moline has shown without contradiction, the 2023 Article expressly disclosed the data on which it was based, Dr. Moline's methods, and the study's limitations. (*See* Moline Br. at 6.) Like the 2020 Article, the 2023 Article was also published in a peer-reviewed journal aimed at clinicians and researchers. *See* Journal of Occupational Medicine and Toxicology, *available at* https://occup-med.biomedcentral.com.

2

Article makes clear, Dr. Moline reached her conclusion only after:

- having an occupational physician experienced in evaluating asbestos exposure review the participants' medical records, (Cplt. Ex. A, at 11);
- reviewing the participants' sworn deposition testimony, which included extensive questioning about all sources of asbestos exposure and family history of cancers, (*id.*);
- reviewing data related to potential genetic mutations, where present, (*id.*);
- reviewing the sworn deposition testimony of family members with first-hand knowledge of the participants' use of talcum powder, (*id.* at 12);
- reviewing evidence of the type of talcum powder used by the study participants, their age at first use, and the duration of usage to evaluate the latency period between exposure and subsequent development of mesothelioma, (*id.* at 12, 15);
- conducting in-person interviews with certain participants, (*id.* at 12);
- reviewing tissue analysis performed by Dr. Moline's co-author for the presence of asbestos fibers associated with consumer-talc products, (*id.* at 13-14); and
- comparing the study participants' exposure histories with the distribution of talcum powder usage in the United States, (*id.* at 14).

A fair reading of the 2020 Article demonstrates unequivocally that the conclusion LTL challenges is a protected scientific opinion based on inferences drawn from either experimentation or observation. *See Pacira*, 63 F.4th at 246 (citing *ONY*, 720 F.3d at 496).

First, Dr. Moline's statement about participants' exposure history makes clear that it was a "tentative scientific conclusion[]." *Pacira*, 63 F.4th at 246. In making that statement, Dr. Moline expressly disclosed the study's limitations, including the risk of bias in the participants' deposition testimony. (*See* Moline Br. at 5, 11.) *Compare Pacira*, at 246 (finding that a scientific article expressed "tentative scientific conclusions" by enumerating its "'notable limitations'"). Dr. Moline's conclusion was further accompanied by tentative language in which she wrote that the findings in the article "strongly ***suggest***" that asbestos exposure to cosmetic talc could cause mesothelioma, or that this disease "***may*** be attributable to asbestos-contaminated cosmetic talcum powder usage." (Cplt. Ex. A, at 15, 16 (emphasis added).) The statement was therefore inherently "'tentative and subject to revision.'" *Id.* (quoting *ONY*, 720 F.3d at 496).

3

Second, LTL's allegations undeniably go to the reliability rather than the verifiability of the challenged conclusion. *See Pacira*, 63 F.4th at 247-48. LTL admits that it does not allege that Dr. Moline fabricated the data she reviewed to reach this conclusion.[2] Instead, it takes issue with the conclusion Dr. Moline reached after reviewing the summarized data and applying the disclosed methods. That this conclusion could be theoretically disproven, as LTL observes, is not relevant. "Most conclusions contained in a scientific journal article are, in principle, capable of verification or refutation by means of objective proof.'" *Pacira*, 63 F.4th at 246 (quoting *ONY*, 720 F.3d at 496); *see also ONY*, 720 F.3d at 497 ("[W]hile statements about contested and contestable scientific hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,' for purposes of the First Amendment and the laws relating to fair competition and defamation, they are more closely akin to matters of opinion, and are so understood by the relevant scientific communities."). That does not make them actionable. Rather, both *Pacira* and *ONY* make clear that where, as here, a plaintiff contests inferences drawn from disclosed data and methods, the conclusions themselves are not actionable even if they could be disproven. *See Pacira*, 63 F.4th at 247; *ONY*, 720 F.3d at 497.

Third, the context in which the 2020 Article appeared—the JOEM—confirms that it is a nonactionable scientific opinion. This journal is a leading peer-reviewed publication in the field of occupational and environmental medicine whose audience consists of physicians, occupational-

---

[2] LTL identifies no allegation in which it alleged, for example, that Dr. Moline fabricated tissue analysis or altered deposition testimony. (*See* LTL Br. at 18-19.) None exists. Instead, LTL argues that Dr. Moline's statement that study participants "had no alternative asbestos exposures is no different than falsely reporting the results of empirical testing." (LTL Br. at 19.) LTL is wrong. The former is a protected conclusion based on inferences drawn from the data reviewed; the latter involves falsifying the underlying data themselves, which may subject a researcher to liability. This distinction thus makes all the difference. *See Pacira*, 63 F.4th at 247 n.14.

4

health nurses, and industrial hygienists.[3] (*See* Moline Br. at 11.) As the 2020 Article was "'directed to the relevant scientific community,'" its readers were best positioned to evaluate its conclusions based on the strength of their underlying data, methods, and limitations. *See Pacira*, 63 F.4th at 248-49 (quoting *ONY*, 720 F.3d at 496-97).

LTL ignores these aspects of the 2020 Article and the critical distinction between research published in peer-reviewed scientific journals and those that appear in other media. Thus, LTL relies on cases divorced from the academic setting with facts entirely distinct from those presented here.[4] LTL even invents a standard—that a scientific article is only entitled to protection if the author makes source materials available to all readers (*see* LTL Br. at 17, 21)—that finds no support in the law[5] and is entirely at odds with researchers' practices and confidentiality obligations. *See* Eric Robinson, *No Confidence: Confidentiality, Ethics and the Law of Academic*

---

[3] As LTL cannot dispute this, it argues that the real audience was the "public at large" because Dr. Moline repeated the conclusions reached in the 2020 Article in other media. (*See* LTL Br. at 21.) That argument is unavailing. As both *Pacira* and *ONY* make clear, statements made in a scientific article must be judged based on the medium in which they were published. That the article's conclusions may have been repeated or referred to in other media does not alter this analysis. *See Pacira*, 63 F.4th at 249 n.19; *see ONY*, 720 F.3d at 492.

[4] *See Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 160 (1999) (analyzing statement in campaign literature that called a rival a "partner or officer of 'mob-owned companies fined for illegal toxic dumping.'"); *Ward v. Zelikovsky*, 136 N.J. 516, 523-24 (1994) (analyzing disparaging statements made at a condominium board meeting); *McLaughlin v. Rosanio, Bailets & Talamo*, 331 N.J. Super. 303, 310-11 (App. Div. 2000) (analyzing statement in political radio commercial that a political rival leaked information to a crime family syndicate); *Roberts v. Mintz*, No. A-1563-14T4, 2016 WL 3981128 (App. Div. July 26, 2016) (analyzing posts on personal blog calling plaintiffs "dog grifters," "scammers," "nefarious," and "amoral and unethical scumbags"); *Jevremovic v. Courville*, No. 22-cv-4969, 2023 U.S. Dist. LEXIS 139440, at *17 (D.N.J. Aug. 10, 2023) (analyzing comments made by a social-media influencer on Instagram and YouTube while "wearing either panda ears or bunny ears").

[5] LTL assumes that the readers of the articles in *Pacira* were given access to the underlying studies and clinical trials. (LTL Br. at 21.) Not so. The authors of the articles in *Pacira* disclosed the studies, controlled trials, and articles on which they were based; the methods used by the authors to analyze this data; and the shortcomings of these methods. *See* 63 F.4th at 249. Dr. Moline disclosed the same kind of information here.

5

*Privilege*, 21 COMM. L. & POL'Y 323, 327-28 (Summer 2016); *see also* Emily Haney-Caron, *et al.*, *Safe from Subpoena? The Importance of Certificates of Confidentiality to the Viability and Ethics of Research*, 48 AKRON L. REV. 349, 351 (2019).  LTL's arguments should be rejected.

      **B.**      **The Trade Libel Claim Should be Dismissed Because the Complaint Fails to Plead Special Damages with Particularity.**

LTL argues that it has stated a valid claim for special damages under a general-loss-of-business theory although it did not quantify the sales it lost as a result of Dr. Moline's alleged misstatements.  That argument ignores the extensive authority Dr. Moline cited establishing the requirement that it do so.[6]  None of the cases LTL cites refutes that showing; those cases all focused on the plaintiff's ability to plead loss of particular customers or distributors, not the loss-of-business theory LTL pursues here.[7]  If a special-damages claimant were not required to quantify its lost sales, Rule 9(g)'s requirement that such damages be pleaded with particularity would serve no purpose, depriving defendants of notice of the specific damages they are accused of causing.

---

[6] LTL falsely claims that *Sciore v. Phung*, No. 19-cv-13775, 2022 U.S. Dist. LEXIS 58163 (D.N.J. Mar. 30, 2022), which cited a plaintiff's failure to quantify its losses, is irrelevant because it was decided on summary judgment.  (*See* LTL Br. at 27 n.6.)  Not so.  *Sciore* was decided on a motion to dismiss.  *See Sciore*, 2022 U.S. Dist. LEXIS 58163, at *1, 35.  It is also one among several cases cited by Dr. Moline—and ignored by LTL with respect to the pleading standard—demonstrating that a plaintiff should allege "the amount of sales for a substantial period preceding the publication" and "the amount of sales for a period subsequent to the publication" in order to plead special damages.  *Intervet, Inc. v. Mileutis, Ltd.*, No. 00-cv-5354, 2016 U.S. Dist. LEXIS 22165, at *18 (D.N.J. Feb. 24, 2016) (cleaned up); *see also Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642 (2d Cir. 2015); *Covet v. Invisible Bead Extensions, LLC*, No. 21-cv-7740, 2023 U.S. Dist. LEXIS 49945, at *42 (S.D.N.Y. Mar. 23, 2023).

[7] *See Graco, Inc. v. PMC Global, Inc.*, No. 08-cv-1304, 2009 U.S. Dist. LEXIS 26845, at *122 (D.N.J. Mar. 31, 2009) (alleging "lost sales to established customers" and that "existing distributors dropped [plaintiff's] product lines"); *Blueprint Capital Advisors, LLC v. Murphy*, No. 20-cv-07663, 2022 U.S. Dist. LEXIS 231262, at *136 (D.N.J. Dec. 23, 2022) (alleging that misstatements "were communicated to third parties in order to prevent others from doing business with Plaintiff"); *Internet Prods. LLC v. LLJ Enters., Inc.*, No. 18-cv-15421, 2019 U.S. Dist. LEXIS 190580, at *17 (D.N.J. Nov. 4, 2019) (alleging loss of business from a named third party); *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-cv-05072, 2009 U.S. Dist. LEXIS 72796, at *31 (D.N.J. Aug. 18, 2009) (alleging "lost sales and lost goodwill regarding established and prospective customers.").

*See Democratic Party of N.J., Inc. v. Devine*, No. 22-cv-01268, 2022 U.S. Dist. LEXIS 181405, at *29 (D.N.J. Oct. 4, 2022).

Nor does LTL allege that the unidentified losses it claims to have suffered were the natural and direct result of Dr. Moline's statements. That failure is particularly glaring given that LTL expressly attributed its losses to causes other than Dr. Moline's statements. (*See* Moline Br. at 17.) Making matters worse, LTL failed to plausibly allege how the losses it suffered could have been caused by the 2020 Article when that article's first alleged publication either was preceded by or coincided with media exposés reporting on the risk of asbestos in J&J's products and the company's own recall of 33,000 of bottles of Baby Powder due to this risk. (*See id.*) LTL is unable to distinguish the cases dismissing claims where, as here, a plaintiff has failed to plausibly exclude alternative causes for its alleged losses.[8]

As LTL has failed to properly allege a general diminution in business, it cannot salvage its claim by pointing to the alleged costs it incurred to counteract Dr. Moline's alleged misstatements. LTL admits that, absent such damages, it cannot base its claim on its alleged incursion of "'legal fees and executive time.'" (LTL Br. at 29 (quoting *Angio-Medical Corp. v. Eli Lilly & Co.*, 720

---

[8] LTL ignores *Bilinski*, in which the court affirmed dismissal of a complaint for failure to plead special damages where it attributed losses to alternative causes. *See* 632 F. App'x at 642. That court additionally noted the requirement to plead causation by "'eliminating other causes'" of the alleged losses. *Id.* (quoting Restatement (Second) of Torts § 633 cmt. h). LTL also fails to distinguish *NOVAGOLD Res., Inc. v. J Capital Research USA LLC*, No. 20-cv-2875, 2022 U.S. Dist. LEXIS 55734 (E.D.N.Y. Mar. 28, 2022), which specifically found that a plaintiff failed to plead special damages where it had not eliminated "the possibility that other factors caused" its loss. *Id.* at *33 (cleaned up). LTL's reliance on *Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022), and *Merriman v. Oswald*, No. 3:20-cv-00617, 2021 U.S. Dist. LEXIS 50916 (M.D. Pa. Mar. 18, 2021), is misplaced, (*see* LTL Br. at 27), as these cases did not analyze the special-damages element of a trade-libel claim or the heightened standard for pleading that element under Rule 9(g). *See Doe*, 30 F.4th at 344 (observing that the existence of alternative explanations is not fatal for pleading a claim for sex discrimination); *Merriman*, 2021 U.S. Dist. LEXIS 50916, at *10 (finding that the existence of alternative explanations for a defendant's conduct did not foreclose a claim for retaliation in violation of the First Amendment).

7

F. Supp. 269, 274 (S.D.N.Y. 1982).) Moreover, LTL has no reasoned response to Dr. Moline's argument that the American Rule forecloses its pursuit of legal fees. While LTL argues that it is not suing Dr. Moline for its fees in bringing this case, the Complaint alleges otherwise. (*See* Cplt. ¶ 239 (seeking costs for "this litigation," among others).) LTL further admits that it is seeking to recover its "litigation expenses . . . in other litigation[s]." (LTL Br. at 30 n.8.) There is no question that the American Rule would bar LTL from demanding that the plaintiffs in these consumer-talc cases pay its legal fees. LTL cannot end-run this result by suing plaintiffs' expert (Dr. Moline) in a separate litigation. Doing so would contravene one of the primary purposes served by the American Rule—that is, to prevent a party from penalizing its adversary for exercising its right to litigate its claims. *See In re Niles Trust*, 176 N.J. 282, 294 (2003). LTL's trade-libel claim should be dismissed for this additional reason.

## II.  LTL'S CLAIM FOR FRAUD (COUNT II) SHOULD BE DISMISSED.

LTL agrees that its fraud claim should be dismissed if it has failed to identify an actionable statement and adequately plead damages with respect to its trade-libel claim. (*See* LTL Br. at 35.) This claim should therefore be dismissed for the reasons set forth above.

LTL's fraud claim should also be dismissed for failure to plausibly allege that Dr. Moline intended LTL to rely on her alleged misstatements and for failure to plead actual or reasonable reliance. LTL does not dispute that the Complaint alleges that (i) Dr. Moline is an expert who opposed it in myriad consumer-talc litigations; (ii) Dr. Moline disclosed the conflict of interest in the Articles; and (iii) the Complaint and the material it incorporates by reference affirmatively allege that LTL disbelieved and took steps to counteract Dr. Moline's statements. (*See* Moline Br. at 19-22.) Nor does LTL dispute the authority Dr. Moline cites holding that a plaintiff such as LTL pleads itself out of court by including allegations that affirmatively disprove reliance. (*See id.* at 22 & n.17.) The two cases LTL cites fail to demonstrate how, in light of these allegations, it

8

plausibly pleaded either that Dr. Moline intended LTL to rely on her alleged misstatements or that LTL in fact relied on them.[9]

Finally, LTL cannot salvage the implausibility of its reliance allegations by observing that a court characterized the 2020 Article as "groundbreaking." (LTL Br. at 36.) Regardless of how others may have viewed the article, LTL affirmatively pleads that it was not deceived by it. (*See* Moline Br. at 20.) That is fatal to its reliance claim.

### III.   LTL'S CLAIM FOR VIOLATION OF THE LANHAM ACT (COUNT III) SHOULD BE DISMISSED.

LTL agrees with Dr. Moline that, if this Court finds that its trade-libel claim is based on nonactionable statements, its Lanham Act claim should be dismissed for the same reason. (*See* Moline Br. at 25-26; LTL Br. at 30.) Thus, the Court need not even undertake the multi-factored analysis traditionally employed to determine if a statement appeared in a commercial advertisement or promotion. 15 U.S.C. § 1125(a)(1)(B). (*See* Moline Br. at 25-26.)

If the Court did perform that analysis, it would confirm that the challenged statements are not commercial advertisements. Dr. Moline did not make the statements in an advertisement, in a

---

[9] LTL cites *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008), for its statement that "general allegations of reliance are sufficient in light of the fact that the specific facts as to the misrepresentations are within Defendants' control, not Plaintiff's." But *Dewey* predated the plausibility standard enunciated in *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), which requires courts to disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." LTL's attempt to plead reliance is facially implausible and foreclosed by the Complaint's affirmative allegations of non-reliance. Moreover, *Dewey*'s statement does not apply here, as LTL is aware of the alleged misrepresentations it challenges and the extent to which it relied on them. LTL's citation to *MSP Recovery Claims, Series, LLC v. Sanofi Aventis United States LLC*, No. 3:18-cv-2211, 2019 U.S. Dist. LEXIS 54086 (D.N.J. Mar. 29, 2019), is just as misplaced, as the plaintiffs in that case alleged that their assignors relied on defendant's misstatements when allegedly overpaying for insulin prescriptions for Medicare-eligible beneficiaries. *See id.* at *5, 55-56. The case does not stand for the proposition that a plaintiff can plead reliance by alleging a fraud at the "public" at large. Here, LTL must plead that it actually and reasonably relied on Dr. Moline's statements and that she intended for it to do so. (*See* Moline Br. at 20-22.) It has failed to plausibly allege either of these elements.

manner to compete with LTL,[10] or to influence J&J's customers to purchase Dr. Moline's goods or services. Nor did she disseminate them sufficiently widely to the relevant purchasing public. (*See* Moline Br. at 25-28.) Indeed, LTL raises no serious argument that the Articles are themselves commercial advertisements.[11]

Instead, it argues that it can nonetheless sue Dr. Moline under the Lanham Act because she repeated the Articles' conclusions in other media. But as an initial matter, LTL does not allege that Dr. Moline distorted the Articles' conclusions in these other forums. This matters because, as *ONY* explained, a plaintiff cannot bring a derivative claim for republication (in that case, under a tortious-interference theory) when it fails to allege that "promotional materials misstated the article's conclusions." 720 F.3d at 499. Moreover, even if LTL could overcome this problem,

---

[10] LTL falsely claims that the competition component of this definition is no longer good law in light of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). (*See* LTL Br. at 33-34.) *Lexmark* considered the distinct issue of **standing**, not whether the existence of competition is a relevant factor when defining what constitutes a "commercial advertisement or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B). *See* 572 U.S. at 123 n.1 ("Lexmark contends that Static Control's allegations failed to describe 'commercial advertising or promotion' within the meaning of 15 U.S.C. § 1125(a)(1)(B). That question is not before us, and we express no view on it."). Indeed, courts in this district have continued to define this statutory element by looking to the existence of "commercial competition" years after *Lexmark* was decided. *See, e.g.*, *Wakefern Food Corp. v. Marchese*, No. 20-cv-15949, 2021 U.S. Dist. LEXIS 161661, at *12 (D.N.J. Aug. 26, 2021); *Columbia Trading Corp. v. Green Elecs., LLC*, No. 17-cv-1309, 2018 U.S. Dist. LEXIS 129048, at *8-9 (D.N.J. July 27, 2018). This makes sense, as it is more likely for a statement to be "commercial" in nature when it emanates from a competitor.

[11] LTL argues that scientific articles can only be non-commercial in nature to the extent they posit "scientific theories," as opposed to making "factual" assertions. (LTL Br. at 31.) That argument misreads *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (2009), which characterized an article as non-commercial because it was published in a "a widely renowned medical journal published for educational purposes and for the benefit of the medical field." *Id.* at 457. *Bracco* further cited the general concern of inviting "judicial forays into the field of scientific research and publication," not simply statements that could be characterized as "theories." *Id.* Moreover, even if LTL's illusory distinction between fact and theory had any support in the caselaw, it has no place here because, as shown above, the supposed "factual" statement that LTL challenges is a protected opinion that is the product of the scientific method.

repeating the Articles' conclusions does not change the fact that they were scientific in nature; were intended at least in part to educate the public, lawmakers, and practitioners about the potential dangers of exposure to talc-based powders (and thus not solely for Dr. Moline's economic benefit); were not made to compete with J&J; and were not aimed specifically at J&J's customers.  (*See* Moline Br. at 26-27.)

Finally, even if LTL had identified a statement made in a commercial advertisement or promotion, the Lanham Act claim should be dismissed because it fails to plead proximate causation.  (*See* Moline Br. at 28-29.)  LTL agrees that the adequacy of its allegations on this element rises or falls based on the adequacy of its special-damages allegations.  (LTL Br. at 30.)  Because LTL failed to plead special damages for the reasons set forth above, it also failed to adequately plead causation with respect to its Lanham Act claim.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Chatham, New Jersey  
Dated:  September 29, 2023

Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.

By: _____  
Kevin H. Marino  
437 Southern Boulevard  
Chatham, New Jersey 07928-1488  
(973) 824-9300  
*Attorneys for Defendant Dr. Moline*

11