| | |
|---|---|
| Peter C. Harvey | Kristen Fournier (*pro hac vice*) |
| Thomas P. Kurland (*pro hac vice*) | Matthew Bush (*pro hac vice*) |
| PATTERSON BELKNAP | KIRKLAND & ELLIS LLP |
| WEBB & TYLER LLP | 601 Lexington Avenue |
| 1133 Avenue of the Americas | New York, NY 10022 |
| New York, NY 10036-6710 | T: (212) 446-4800 |
| T: 212-336-2000 | F: (212) 446-4800 |
| F: 212-336-2222 | kristen.fournier@kirkland.com |
| pcharvey@pbwt.com | matthew.bush@kirkland.com |
| tkurland@pbwt.com | |

*Attorneys for Plaintiff Pecos River Talc LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PECOS RIVER TALC LLC,<br><br>                Plaintiff,<br><br>v.<br><br>DR. JACQUELINE MIRIAM MOLINE,<br><br>                Defendant. | Civil Action No. 3:23-cv-02990-GC-DEA<br><br>Motion Day:<br>June 2, 2025 |

**REPLY IN SUPPORT OF PLAINTIFF PECOS RIVER TALC LLC'S
MOTION FOR RELIEF FROM JUDGMENT AND
FOR LEAVE TO FILE AN AMENDED COMPLAINT
PURSUANT TO RULE 60(b) AND RULE 15**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

I.      Pecos River Set Forth The Correct Legal Standard..........................................4

II.     The Facts Before This Court Are Vastly Different Now. ...............................5

        A.      The Article contains multiple subjects who Dr. Moline herself acknowledged had a "potential exposure." ..........................................6

        B.      The Article contains numerous additional egregious examples of falsity. ..................................................................................................8

        C.      This Court should not ignore allegations in the Proposed Amended Complaint. ...................................................................................12

III.    This Court Should Reach The Same Outcome As The *Emory* Decision. .....14

CONCLUSION..................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Compass Tech., Inc. v. Tseng Lab'ys, Inc.*,
   71 F.3d 1125 (3d Cir. 1995) ..............................................................................5

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010) ..............................................................................12

*Holland v. Holt*,
   409 Fed. Appx. 494 (3d Cir. 2010) ....................................................................14

*LLT Mgmt. LLC v. Emory*,
   2025 WL 438100 (E.D. Va. Feb. 7, 2025) ..............................................6, 14, 15

*Milkovich v. Lorain J. Co.*,
   497 U.S. 1 (1990) ................................................................................................7

*Nielsen v. Rabin*,
   746 F3d 58 (2d Cir. 2014) .................................................................................14

**Other Authorities**

Fed. R. Civ. P. 12 ......................................................................................................5

Fed. R. Civ. P. 15 ......................................................................................................4

Fed. R. Civ. P. 60 ..............................................................................................*passim*

Plaintiff Pecos River Talc LLC ("Pecos River")[1] submits this Reply in support of its Motion For Relief From Judgment And For Leave To File An Amended Complaint Pursuant To Rule 60(b) And Rule 15.

## INTRODUCTION

What this Court should focus on are Dr. Moline's own Article, Dr. Moline's own testimony, and Dr. Moline's own expert reports submitted on behalf of the subjects in her Article in their affirmative litigation to recover for asbestos exposure. Comparing what she said in her Article and under oath to what she said in her expert reports—which can now be done with the newly discovered evidence—shows that Dr. Moline made false statements and that Pecos River's trade libel claim should be reinstated. The subjects of her Article had exposures to asbestos that Dr. Moline herself acknowledged in their underlying cases when serving as their expert witness.

***Dr. Moline's Article.*** Dr. Moline stated in her Article that "other *potential exposures* to asbestos were considered, with *no identified source* apart from the talcum powder" and also that "[n]o *individual identified any asbestos exposure* apart from contaminated talcum powder." Opp. Ex. A, Article at 11, 14.

---

[1] In the Third Circuit, Pecos River was substituted as plaintiff for its predecessor, LTL Management, LLC. *Pecos River Talc LLC v. Moline*, No. 24-235 (3d Cir.), Dkt. No. 19. This Reply continues to use "Pecos River" to refer to both itself and its predecessors.

***Dr. Moline's Testimony.*** While the language in Dr. Moline's Article is plain, she also testified what she meant. She swore that individuals with a "potential exposure" (or where there was "any question" about an alternative exposure) were not in the Article. Ex. 22 at 50:7-12, 53:16-20. Dr. Moline's Opposition never addresses her own testimony.

***Dr. Moline's Reports***. Dr. Moline's own expert reports show her Article's premise is false. For example, Dr. Moline's report for Ms. Schoeniger stated that "joint compound that was applied and sanded in her home" represented a "potential exposure." Ex. 6 at 18. So her statements in her Article to the contrary are just false—not a question of differing scientific judgment. Dr. Moline points to the fact that in her report she also called the joint compound a "brief possible exposure" and that "no specific data" was available about it. *Id*. But that doesn't matter. It's still a potential exposure under Dr. Moline's own words. In fact, it was significant enough for Dr. Moline to call it a "competing explanation[]" for Ms. Schoeniger's mesothelioma. *Id*.

Dr. Moline's report for Mr. Garcia similarly stated his work at Eastern Molding represented a "potential exposure." Ex. 9 at 17. This is yet another example showing Dr. Moline's statements in her Article are just false. This time, Dr. Moline points to the fact that she also said in her report that "there is a question of whether he had bystander exposure" at his job. *Id*. Again, that does not take away from the

fact that Dr. Moline identified it as a potential exposure. The fact that her expert report for Mr. Garcia states there is a "question" about Mr. Garcia's non-talc exposure only further contradicts her testimony that individuals with "any question" about an alternative exposure were not in the Article.

These two examples alone—neither of which were before the Court in the original motion to dismiss—demonstrate that Pecos River's Proposed Amended Complaint plausibly states a trade libel claim that should be evaluated on a full factual record. But Pecos River has more than that, including numerous other examples where alternative exposures exist, most of which Dr. Moline never attempts to explain how they could possibly be legitimate subjects of her Article.

Instead, Dr. Moline wants this Court to ignore all the evidence, arguing that it has no effect on this Court's ruling—a ruling this Court made without the identities of the individuals that Dr. Moline was in possession of all along. But the new evidence fundamentally changes the landscape of facts before this Court. That new evidence shows that this case does not involve two parties who dispute the reliability of a scientific opinion. This case is about flat-out falsehoods. Dr. Moline included all these individuals in her Article without regard for the truth or falsity of her assertions. If Dr. Moline wants to dispute the falsity of her Article and her awareness of the falsity, the time to resolve that dispute is with a fully developed record.

Applying this Court's analysis to Pecos River's new allegations results in the conclusion that Pecos River plausibly stated a trade libel claim. Pecos River's motion should be granted.

## ARGUMENT

### I.     Pecos River Set Forth The Correct Legal Standard.

Pecos River is not trying to "elude" the Rule 60 legal standard as Dr. Moline suggests. *See* Opp. 22. Pecos River laid out the exact same legal standard Dr. Moline did: that to vacate a judgment under Rule 60(b)(2), the new evidence should "(1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome." *Compare* Mot. 14 (citing *Compass Tech., Inc. v. Tseng Lab'ys, Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995)) *with* Opp. 21 (setting forth the identical standard).

Pecos River filed a motion "conjoining"—as Dr. Moline puts it—a Rule 60 motion with a Rule 15 motion because both rules are applicable. Pecos River seeks to vacate the order dismissing the case under Rule 60 *in order to* amend its complaint under Rule 15. Dr. Moline never disputes that this is the appropriate procedure in this circumstance.

Of course, unlike a traditional Rule 15 motion where a complaint can be amended with information previously known to the plaintiff, Pecos River must meet the additional hurdle in the Rule 60(b) context of demonstrating that its new

4

allegations are based on evidence that "could not have been discovered before trial through the exercise of reasonable diligence." *Compass Tech*, 71 F.3d at 1130. But Dr. Moline makes no attempt to contest that this element is satisfied.

Nor is there any dispute that when analyzing whether the evidence is "cumulative" and "would probably have changed the outcome" in this circumstance, the "outcome" at issue is whether this Court would have dismissed Pecos River's Proposed Amended Complaint with the new allegations. That question is of course governed by the Rule 12(b) standard. The Court should therefore evaluate whether all the allegations in the Proposed Amended Complaint—accepted as true with all inferences drawn in favor of Pecos River—plausibly state a trade libel claim. If they do, then by definition the new evidence is "material," "not merely cumulative" and would "have changed the outcome," satisfying all the Rule 60(b) elements.

## II. The Facts Before This Court Are Vastly Different Now.

The allegations currently before this Court are far different than what the Court originally evaluated. In the original motion to dismiss, this Court grappled with the question: *Is it appropriate to categorize Dr. Moline's statements as "false"?* Oral argument was centered around that issue. Now, Pecos River has plausibly alleged an intentional falsity based on the extent of the alternative exposures, the egregiousness of the falsity, and the confirmation of the previously suspected individuals. Contrary to Dr. Moline's contention that no amount of new evidence

5

could ever change this Court's analysis, the new facts demonstrate that Pecos River plausibly stated a claim.

### A. The Article contains multiple subjects who Dr. Moline herself acknowledged had a "potential exposure."

This Court now has before it multiple examples where Dr. Moline's own expert report or testimony contradicts her Article. To try to dodge this fundamental problem, Dr. Moline attempts to point to everything but the critical statements demonstrating her statements are false:

1) Dr. Moline stated in her Article that "other ***potential exposures*** to asbestos were considered, with no identified source apart from the talcum powder." Article at 11 (ECF No 1-2).

2) Dr. Moline argues without explanation that Pecos River has taken that statement "out of context." Opp. 31. But this Court need look no further than Dr. Moline's own sworn testimony where she said under oath that individuals with a "***potential exposure***" or where there was "any question" about an alternative exposure were not in the Article. Ex. 22, Moline *Zimmerman* Dep. 50:7–12, 53:16–20 (emphasis added). Dr. Moline never addresses her own testimony on this subject.

3) Many of Dr. Moline's own reports and testimony identify a "***potential exposure.***" Ex. 6, Moline *Schoeniger* Rpt. at 17; Ex 9, Moline *Garcia* Rpt. at 17; Ex. 12, Moline *Hanson* Dep. 94:3–95:17.

This alone shows that it is at the bare minimum *plausible* that Pecos River has stated a valid claim. Dr. Moline's responses do not hold water.

***First***, Dr. Moline points to the fact the Article in certain instances refers to the absence of a "known" exposure." Opp. 30. Adding "known" does not immunize Dr. Moline from liability. *See LLT Mgmt. LLC v. Emory*, 2025 WL 438100 at *12 (E.D.

6

Va. Feb. 7, 2025) (addressing "known" in Dr. Emory's similar Article); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18-19 (1990) (beginning a statement with "in my opinion" does not defeat liability).

But more importantly, Dr. Moline many times did not even use that "known" qualifier in her Article. The Article states there was "*no identified source* apart from the talcum powder," that "[n]o individual identified *any asbestos exposure* apart from contaminated talcum powder from workplace or household exposures" and that talcum powder was "*the only asbestos exposure*." Article at 11, 14 (ECF No 1-2) (emphasis added). So some other instance where she used the word "known" is therefore irrelevant. The new evidence has shown that it is simply not true that "no individual identified any asbestos exposure." Many ***did*** identify an asbestos exposure.

**Second**, Dr. Moline attempts to point to other language in her reports or testimony supposedly discounting the exposures. Opp. 16-17. But nothing else she said can take away from the fact that she described them as "potential exposures" while at the same time testifying that "potential exposures" were not in the Article. For example, it does not matter that Dr. Moline stated that Ms. Schoengier's non-talc exposure was "possible" and that there was no "specific data" about the exposure. No matter what, it is not true that "potential exposures to asbestos were

7

considered, with no identified source apart from the talcum powder." Article at 11 (ECF 1-2). A source *was* identified, and it *was* a potential exposure.[2]

### B.     The Article contains numerous additional egregious examples of falsity.

Dr. Moline does not meaningfully explain how any of the many additional examples of individuals with non-talc asbestos exposures could possibly legitimately be a subject of her Article given her claims that none of those exposures existed.

Instead, Dr. Moline obliquely refers this Court to the letter she sent to the journal responding to Pecos River's retraction request. Opp. 32-33 (citing Opp. Ex. G). This roundabout approach allowed Dr. Moline to point this Court to arguments without actually presenting any evidence to be tested in federal court. The actual evidence demonstrates that Dr. Moline's letter is riddled with *even more* false statements.

Dr. Moline's letter to the journal responds to only three of the many examples of individuals with alternative exposures:

---

[2] That Ms. Hanson had an alterative exposure is not based on "unproven assumptions, flawed deductions, and/or lengthy inferential chains." *See* Opp. 16. Dr. Moline testified that Mr. Hanson "work[ing] around welders and pipefitters and other tradesmen" would represent a "potential exposure" to Ms. Hanson who did the laundry. Ex. 12 at 94:15-95:1. And Mr. Hanson indeed worked in the same area as those who handled "raw asbestos fibers" with their hands where the "raw asbestos floated in the air" on "a regular and frequent basis." Ex. 11 at 20:7-23. *See also* Reply Ex. 5 at 14:16-24, 77:10-13, 80:17-25.

8

*Verdolotti*. Pecos River pointed out that Ms. Verdolotti's father worked as a steamfitter, specifically with insulation. Mot. 12; *see also* Ex. 17, Verdolotti 11/17/2016 Dep. 28:22-31:18; Ex. 18, Verdolotti 02/15/2017 Dep. 63:1-20. Dr. Moline responded without attaching evidence that "Ms. Verdolotti's father in fact wore overalls at work and left them there." Opp. Ex. G, Moline JOEM Letter at 4. But that is just false. Ms. Verdolotti expressly testified that her father ***did not*** leave his overalls at work:

> Q. Did your father wear a uniform to work?
> A. Did my father work with...
> Q. Wear a uniform to work?
> A. No, no.
> Q. So he just wore his regular clothes?
> A. While he was there, he put overalls on.
> **Q. Did he ever bring these overalls home?**
> **A. Yes.**

Ex. 17, Verdolotti Dep. 32:4-14 (emphasis added).[3]

*Martinez.* Pecos River pointed out that Kayla Martinez's medical record states: "Her father worked at a company with known asbestos exposure and held her

---

[3] With respect to Ms. Verdolotti's exposure from her sister who worked at a shipyard in World War II, Dr. Moline bizarrely states that "Using a family member's occupation as 'proof' of exposure without information related to take-home exposure is not scientifically valid." Opp. Ex. G, Moline JOEM Letter at 4. But that contradicts Dr. Moline's sworn testimony that she considers an individual to have a "potential exposure" if their family member worked on a shipyard—even without precise information about where that family member worked or for how long. Ex. 7, Moline Chenet Dep. 14:19-15:5, 19:7-16, 103:2-11, 104:1-6.

in his work clothes as a child." Mot. 11; *see also* Ex. 15, Martinez Medical Record (emphasis added). Plainly, a potential asbestos exposure was identified here. Dr. Moline's only response is to say that Ms. Martinez's mother was "unaware of any asbestos exposure suffered by her husband." Opp. Ex. G, Moline JOEM Letter at 4. Of course, she did not have any personal knowledge of her husband's asbestos exposure at his job that was expressly noted in the medical records. She also did not "have any knowledge exactly with what he did at his job." Reply Declaration of Peter C. Harvey, Ex. 1, *Martinez* Davis Dep. 42:4-8.[4]

*Jackson*. Pecos River pointed out that Ms. Jackson's medical records note that she was exposed to "[c]eiling pipes with degrading insulation" during her more than 30-year career as a public-school teacher. Mot 4. Dr. Moline responded by claiming without attaching any report that "J&J's own expert stated Ms. Jackson did not have alternate exposure to asbestos." Opp. Ex. G, Moline JOEM Letter at 4. But that is also false. No Johnson & Johnson entity was even a defendant in that case. *See Jackson v. Colgate-Palmolive Co.*, No. 15-cv-01066-TFH (D.D.C.).

In order to defend herself from claims she made false statements, Dr. Moline made even further false statements. This demonstrates not only why Pecos River has plausibly stated a trade libel claim but also why further discovery is warranted.

---

[4] Dr. Moline also refers to Dr. Diette's report, but Dr. Diette expressly noted that he did not have the medical records at issue. Reply Ex. 6, *Martinez* Diette Rpt. at 25.

10

Indeed, Pecos River continues to learn of new examples of falsity. Danielle Polakow is also a subject of the Article, but a plaintiff's expert in her case identified that she was "exposed as a bystander ([in] about 1977) to repair work using asbestos-containing roofing cement." Reply Ex. 2, Dr. Maddox *Polakow* Path Report at 1.

Additionally, Ms. Kohr is the individual who Dr. Moline acknowledged in her letter to the editor should not have been included in the Article because she was exposed to asbestos-containing cigarettes. Reply Ex. 3, 2023 Letter to the Editor at 1. To justify why Ms. Kohr was improperly included in the Article, Dr. Moline stated that "not one of the five physicians who consulted on this single case for the talc manufacturers stated that this asbestos exposure was a contributing factor" to Ms. Kohr's mesothelioma. *Id.* That is also just false. Colgate's expert Dr. Gabor Mezei concluded that "Mrs. Kohr was exposed to crocidolite asbestos from smoking up to two to three packs of Kent cigarettes per day" and that this exposure to crocidolite asbestos "contributed to Mrs. Kohr's development of mesothelioma." Reply Ex. 4, Mezei Rpt. at 20-21.

Dr. Moline should not be permitted to defend her false statements with further false statements with no legal accountability whatsoever. This is just not a case about scientific judgment. It is about lies and academic fraud. This Court should get to the bottom of this Article and reevaluate the actionability of Dr. Moline's statements on summary judgment with a full factual record after discovery.

11

## C. This Court should not ignore allegations in the Proposed Amended Complaint.

Dr. Moline next asks this Court to simply ignore the allegations in Pecos River's Proposed Amended Complaint that she "fabricated the data presented in her Article" and that the "stated purpose of her Article is not true but rather a pretext." Opp. 26, 27; *see also* Ex. 1, Proposed Am. Compl. ¶¶101, 310. But those are allegations that must be taken as true.

Dr. Moline is wrong to argue that these allegations are "not entitled to an assumption of truth." Opp. 26. The standard at the motion to dismiss stage is well established: "[T]he factual matter in the complaint must be taken as true." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010). But the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to **legal conclusions**." *Id.* at 177 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). So even if an allegation is "unrealistic" or "nonsensical" or even "extravagantly fanciful" (which Pecos River's allegations are not), the allegation is still assumed to be true for purposes of the analysis. *Id.* (quoting *Iqbal*, 556 U.S. at 681).

The allegations are that Dr. Moline "fabricated the data presented in her Article" and that the "stated purpose for her Article is not true but rather a pretext" are not legal conclusions and therefore are entitled to be accepted as true. That is the case even if those allegations were considered in isolation. But those allegations are

12

also supported by extensive allegations in the Proposed Amended Complaint regarding the nature of the article and the true motivations behind them.

Dr. Moline argues that "Pecos River does not cite, for example, any instance of Dr. Moline falsifying deposition transcripts." Opp. 26. But she does not respond to the point that she did not need to forge the deposition transcripts in her files that she refused to make public in order to fabricate what those transcripts say. Indeed, she told the journal who published her Article that she knew from her review of the deposition transcripts that Ms. Verdolotti's father left his work overalls at work when the testimony was just the opposite. That is presenting falsified or fabricated data.

Imagine a study of a pain medication where subjects were asked to fill a questionnaire to report their pain after taking the medication on a scale of 1 (low) to 5 (high). If all the subjects filled in their questionnaires between 4 and 5 but the study authors reported in their article that all the subjects reported pain between 1 and 2, that is falsification and fabrication of the data even if the authors did not forge the questionnaires and kept them locked away in some filing cabinet. Dr. Moline misrepresenting the contents of the deposition transcripts is no different.

Finally, Dr. Moline's attempts to distort the allegations in the Proposed Amended Complaint by characterizing them as "absurd," "outlandish," "preposterous," or a "conspiracy theory." Opp. 27. She says it would be implausible that she would risk her reputation by falsifying her Article. Opp. 27. It would be

13

wonderful to live in a world where academic fraud for personal advancement does not occur. But that is just not the world we live in.[5] *See generally Nielsen v. Rabin*, 746 F3d 58, 64 (2d Cir. 2014) ("[W]e would love to live in a world where it is implausible for an employer to be so irrational as to refuse to hire a qualified applicant because of the applicant's skin color. Unfortunately, we do not.").

No matter what adjective Dr. Moline pulls out of the thesaurus to describe Pecos River's very serious allegations, they are still assumed to be true and cannot simply be ignored.

## III. This Court Should Reach The Same Outcome As The *Emory* Decision.

The *Emory* Court's decision shows that Pecos River plausibly stated a trade libel claim. Dr. Moline's reliance on *Holland v. Holt* to argue that the *Emory* decision is not an "extraordinary circumstance" is misplaced. Aside from the fact that *Holland* is a non-precedential opinion in a pro se habeas case, the Court there stated only that "intervening developments in the law *by themselves rarely* constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Holland v. Holt*, 409 Fed. Appx. 494, 497 (3d Cir. 2010) (emphasis added). But "rarely" does not mean never. And Pecos River is not claiming that the Emory decision *by itself*

---

[5] *See, e.g.*, https://www.drugdiscoverytrends.com/biomedical-research-integrity-scandals/

14

justifies Rule 60(b) relief. Rather, Pecos River asks this Court to evaluate the *Emory* decision *in conjunction* with the new evidence and new allegations.

Dr. Moline's claim that the *Emory* decision "cannot be squared with the Third Circuit's controlling decision in *Pacira*" is also meritless. *See* Opp 4. The *Emory* Court's decision does not contradict *Pacira*. Rather, the *Emory* Court expressly relied on *Pacira* and correctly concluded that the case *supported* its conclusion. *LLT Mgmt. LLC v. Emory*, 2025 WL 438100, *12 (E.D. Va. Feb. 7, 2025). Judge Walker's 34-page opinion was not "superficial" as Dr. Moline argues.

Nor did the *Emory* Court ignore the argument that the authors' analysis represents a "scientific opinion." Rather, the *Emory* Court correctly *rejected* the argument that the statements "are scientific opinions, not statements of fact" as "incorrect." *Id.* at *12. The *Emory* Court—unrebutted by Dr. Moline—explained that the authors' analysis just like Dr. Moline's "pre-existed the scientific process the article describes" as "they were discovered through litigation, not through any scientific method." *Id.* at *13.[6]

## CONCLUSION

This Court should grant Pecos River's motion, reinstating its trade libel claim.

---

[6] The Middle District of North Carolina also recently permitted a trade libel claim to go forward regarding a press release (connected to peer reviewed journal articles) claiming that substance known as S6A is present in Splenda. Reply Ex. 7, *TC Heartland LLC v. Schiffman*, No. 1:23-cv-00665 (M.D.N.C. May 5, 2025).

15

Dated: May 27, 2025                                     Respectfully submitted,

| **KIRKLAND & ELLIS LLP** | **PATTERSON BELKNAP WEBB & TYLER LLP** |
|---|---|
|  | By: */s/ Peter C. Harvey* |
| Kristen Fournier (*pro hac vice*) | Peter C. Harvey |
| Matthew Bush (*pro hac vice*) | Thomas P. Kurland (*pro hac vice*) |
| 601 Lexington Avenue | 1133 Avenue of the Americas |
| New York, NY 10022 | New York, NY 10036-6710 |
| T: (212) 446-4800 | T: 212-336-2000 |
| F: (212) 446-4800 | F: 212-336-2222 |
| kristen.fournier@kirkland.com | pcharvey@pbwt.com |
| matthew.bush@kirkland.com | tkurland@pbwt.com |

*Attorneys for Plaintiff Pecos River Talc LLC*