# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LTL MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>DR. JACQUELINE MIRIAM MOLINE,<br><br>Defendant. | Case 3:23-cv-02990-GC-DEA<br>Hon. Georgette Castner, U.S.D.J.<br><br>Return Date: December 4, 2025 |

---

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM A JUDGMENT

---

Kevin H. Marino
John D. Tortorella
Erez J. Davy
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com
edavy@khmarino.com
*Attorneys for Defendant*
*Dr. Jacqueline Miriam Moline*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT .................................................................1

SUPPLEMENTAL BACKGROUND: DEVELOPMENTS FOLLOWING
DR. MOLINE'S MAY 19, 2025 SUBMISSION .......................................3

    A.  The JOEM Rejected Pecos River's Demand To Retract The 2020
        Article. .................................................................................4

    B.  Dr. Moline's Deposition In The *Clark* Action. ........................4

    C.  Developments Relating To The *Emory* Action. ......................6

LEGAL ARGUMENT.............................................................................8

I.    PECOS RIVER'S SUPPLEMENTAL SUBMISSION PROVIDES
     NO BASIS TO REOPEN THIS COURT'S JUDGMENT. ...........................8

    A.  Pecos River Cites No Evidence That Dr. Moline's No-Known-
        Alternative-Exposure Statements Are Actionable...................8

    B.  Pecos River Cannot Reopen This Court's Judgment Based On
        Additional Criticisms Of Dr. Moline's Research Design Or
        Failure To Consider Alternative Variables............................13

    C.  Pecos River's Contention That It Discovered New Evidence Of
        Dr. Moline's Alleged Purpose In Publishing The 2020 Article Is
        Legally Irrelevant And Factually Unsupported. ....................17

CONCLUSION ....................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Advanced Multilevel Concepts, Inc. v. Bukstel*,
  C.A. No. 11-3718, 2014 U.S. Dist. LEXIS 169884 (E.D. Pa. Dec. 8, 2014) ......19

*Albion Eng'g Co v. Hartford Fire Ins. Co.*,
  779 F. App'x 85 (3d Cir. 2019)...........................................................................15

*Benecard Servs. v. Allied World Specialty Ins. Co.*,
  No. 15-cv-8593, 2020 U.S. Dist. LEXIS 94806 (D.N.J. May 31, 2020).............15

*Moline v. Pecos River Talc LLC*,
  No. 25-mc-391, 2025 U.S. Dist. LEXIS 201669 (S.D.N.Y. Oct. 10, 2025)..........7

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) .................................................... 11, 13, 14

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
  583 F. Supp. 3d 654 (D.N.J. 2022).............................................. 11, 14

*Pacira Biosciences, Inc. v. American Society of Anesthesiologists, Inc.*,
  63 F.4th 240 (3d Cir. 2023) .......................................................... passim

*Stridiron v. Stridiron*,
  698 F.2d 204 (3d Cir. 1983) ...............................................................19

## <u>Rules and Regulations</u>

Federal Rule of Civil Procedure 60 .........................................................................1

## <u>Other Authorities</u>

Amy Edel, *What the Court Documents Show About J&J's $966M Loss*,
  Asbestos.com.......................................................................................17

Craig Clough, Law360, *Ex-FDA Chief Accuses J&J Of Hiding Talc Risks For
  50 Years*, Nov. 18, 2025 ......................................................................17

Kailyn Rhone, *Johnson & Johnson Ordered to Pay $966 Million in Latest Talc
  Lawsuit*, N.Y. Times, Oct. 7, 2025.....................................................17

Defendant, Dr. Jacqueline Miriam Moline, respectfully submits this supplemental memorandum of law and the supporting Certification of Kevin H. Marino (the "Supp. Marino Cert.") in accordance with the Court's November 6, 2025 text order (ECF No. 51) and in further opposition to Pecos River's motion for relief from a final judgment pursuant to Federal Rule of Civil Procedure 60(b).

## **PRELIMINARY STATEMENT**

On June 28, 2024, this Court dismissed Pecos River's trade-libel claim, holding that it targeted nonactionable scientific opinions made by Dr. Moline in two journal articles. The Court reached that conclusion by analyzing the content, context, and verifiability of the statements made in those articles to hold that the journals' readers understood them to constitute Dr. Moline's opinions. In doing so, the Court expressly assumed the truth of all of Pecos River's allegations, which alleged that Dr. Moline knew her research subjects were exposed to asbestos through sources other than cosmetic talc. The Court thereby made clear that Pecos River could only plead a viable trade-libel claim by plausibly alleging that Dr. Moline fabricated her underlying data.

Pecos River's supplemental brief ("Supp. Br.") identifies no evidence that Dr. Moline fabricated her data. Instead, Pecos River claims that Dr. Moline's recent deposition testimony justifies reversal of this Court's ruling because, it contends: (i) Dr. Moline acknowledged that certain subjects in the 2020 Article had alternative

1

exposures; (ii) Dr. Moline testified to the limitations of her study; and (iii) Dr. Moline "lied" that her purpose in publishing the 2020 Article was to educate clinicians when her true goal was to publish research that could be cited in cosmetic-talc lawsuits.

Beyond being unsupported by Dr. Moline's deposition testimony, none of these arguments undermines the Court's sound opinion. Under *Pacira Biosciences, Inc. v. American Society of Anesthesiologists, Inc.*, 63 F.4th 240 (3d Cir. 2023), which Pecos River ignores, whether a statement in a journal article is actionable presents a question of law based on its content, its verifiability, and the overall context of the article. That Pecos River criticizes the inferences that Dr. Moline made and her failure to consider other variables only underscores that the statements it challenges were correctly understood by the JOEM's readers to represent her opinion. Indeed, in the testimony Pecos River ignores, Dr. Moline persuasively explained why she reached that conclusion notwithstanding the contrary inferences Pecos River urged.

Pecos River's additional criticisms about Dr. Moline's study design and what it maintains was her real purpose in publishing the article are likewise irrelevant and meritless. As this Court recognized in its Opinion, allegations that an author employed a "'flawed method'" cannot "create an actionable falsehood for trade libel." *Pacira*, 63 F.4th at 247. Similarly, allegations that an author had an allegedly

2

undisclosed motive or conflict have "no bearing on whether the [challenged] statements may be actionable as a threshold matter." *Id.* at 247 n.15. Dr. Moline explained persuasively why her study design was a reasoned exercise of her professional judgment and soundly refuted Pecos River's conspiracy theory that her research was orchestrated by a plaintiffs' firm to help it win cosmetic-talc cases.

For these reasons, amplified below, Pecos River's motion should be denied.

## SUPPLEMENTAL BACKGROUND: DEVELOPMENTS FOLLOWING DR. MOLINE'S MAY 19, 2025 SUBMISSION

Dr. Moline respectfully refers the Court to her May 19, 2025 submission for an accurate description of the underlying facts.[1] This section describes relevant developments since that submission.

---

[1] Pecos River makes a number of misstatements in its Background section. For example, it states that Dr. Moline made "express and unqualified factual assertions" in the 2020 Article. (Supp. Br. at 2; *see also id.* at 7 (contending that these assertions are "absolute, ***unconditional*** and unequivocal") (emphasis supplied).) Not so. The conclusions in the article contained numerous express qualifications concerning, among other things, the limitations of Dr. Moline's study design, the authors' conflicts of interest, the subjects' potential self-reporting biases, and the qualification that the research subjects had no known alternative asbestos exposures based on the data Dr. Moline and her colleagues reviewed. (*See* Moline 5/19/25 Br. at 5-6.)

Pecos River also states that Dr. Moline engaged in "non-compliance" with respect to the subpoena served on her in *Clark v. Johnson & Johnson*, No. MID-L-003809-18AS (the "*Clark* Action"). (Supp. Br. at 2.) To the contrary, a New York trial court granted her motion to quash that subpoena. When that order was reversed on appeal Dr. Moline complied with the subpoena by testifying about her articles in the *Clark* Action. She had no authority to produce the documents demanded by the subpoena, which is why J&J obtained them from Northwell after additional litigation

**A.    The JOEM Rejected Pecos River's Demand To Retract The 2020 Article.**

By letter dated May 5, 2025, Pecos River demanded that the JOEM retract the 2020 Article based on the same allegations that animate this motion and threatened to seek judicial relief unless the JOEM did so.  On May 15, 2025, Dr. Moline responded to Pecos River's letter by demonstrating that its criticisms were completely invalid.  On June 3, 2025, the JOEM flatly rejected Pecos River's retraction demand, stating that the publication "will stand" and will not be "altered or changed" in any way.  (Supp. Marino Cert. Ex. 1.)  That response, made in the face of threatened litigation, underscores the baselessness of Pecos River's claims.

**B.    Dr. Moline's Deposition In The *Clark* Action.**

On July 14, 2025, and October 14, 2025, Dr. Moline was deposed in the *Clark* Action regarding the Articles.  In that deposition, Dr. Moline explained the purpose and process for developing the 2020 Article.  Specifically, she explained that her objective was to alert clinicians to the importance of questioning mesothelioma patients about their use of cosmetic talc to obtain an accurate exposure history.  (11/04/25 Declaration of Matthew Bush [ECF 50-3] ("Bush Decl."), Ex. 1, Tr. at 55:4-7, 60:20-61:2, 61:24-62:8, 128:16-25).)  Dr. Moline stressed the importance of doing so because, prior to her publication, many physicians were unaware of the potential link between cosmetic talc and mesothelioma.  (*Id.* at 132:2-13.)  When asked about her research process, she explained that her method was set forth in the

2020 Article—in particular,[2] she reviewed the subjects' deposition testimony and in some cases also conducted in-person interviews.  (*Id.* at 92:5-9, 280:21-24, 320:12-321:4.)

During her deposition, Dr. Moline made clear that whether an individual had a known alternative exposure to asbestos was a matter of scientific judgment based on the strength of the inferences drawn from the underlying data.  (Bush Decl., Supp. Ex. 1, Moline Tr. at 181:24-185:15, 205:11-207:22; 320:24-321:8; 372:19-373:1.)  She also defended her study design by explaining that the sources she used to formulate her opinion were the best indicators of asbestos exposures and that other documents—legal filings and medical-intake forms, for example—were inadequate and/or unreliable for a variety of reasons.[3]  Ultimately, she explained that she "could have done a lot of things" beyond examining the data she disclosed, but made a principled decision to follow her disclosed methodology, which tracked her expertise in occupational medicine.  (*See id.* at 260:24-261:7, 280:11-281:1, 320:15-321:8.)

---

[2] Dr. Moline also relied on prior research linking cosmetic talc and mesothelioma and tissue analysis performed by her colleague.  (*See* Moline 5/19/25 Br. at 6 n.5.)

[3] *See id.* at 117:4-118:7, 367:5-368:4 (explaining that Dr. Moline's practice and qualifications were to review the underlying data, not "lawyers' opinion[s]" contained in legal filings); *id.* at 214:20-216:11, 219:18-220:24, 281:2-283:8 (explaining why medical forms often unreliably report asbestos exposures, including poor clinical training, misreporting patient information, and misunderstandings about sources of asbestos exposures).

### C.    Developments Relating To The *Emory* Action.

Shortly after Pecos River sued Dr. Moline, it sued three other doctors—Drs. Theresa Emory, Richard Kradin, and John Maddox (the "*Emory* Defendants")—in the Eastern District of Virginia (the "*Emory* Action") for publishing an article similar to hers entitled, *Malignant mesothelioma following repeated exposures to cosmetic talc: A case series of 75 patients* (the "Emory Article").  As part of discovery in that action, Pecos River questioned each of these defendants about the genesis of the Emory Article and whether they discussed it or the 2020 Article with Dr. Moline.  These defendants explained that they decided to write their article independent of Dr. Moline to alert physicians to the potential link between cosmetic talc and mesothelioma.  (*See* Supp. Marino Cert., Ex. 2, Kradin Tr. at 99:25-100:9, 103:14-19; *id.* Ex. 3, Maddox Dep. Tr. at 92:12-93:22.)  They further testified that they had no substantive discussions with Dr. Moline about her article.[4]  In fact, far from establishing a conspiracy to coordinate their publications, the documents produced in the *Emory* Action showed that Drs. Kradin and Maddox considered pulling their article once they learned of Dr. Moline's publication.  (*See*

---

[4] *See* Supp. Marino Cert., Ex. 4, Emory Tr. at 224:11-226:21 (testifying that Dr. Moline refused to discuss her subjects during a brief phone conversation); *id.* at 227:15-228:6 (testifying that Dr. Emory removed potentially overlapping subjects between the 2020 Article and the Emory Article on her own, without any assistance from Dr. Moline); *id.* Ex. 2, Kradin Tr. at 88:18-89:1 (testifying to not knowing "anything" about Dr. Moline's 2020 article in August 2019); *id.* at 106:22-111:24 (not recalling any conversations with Dr. Moline during the relevant time period).

*id.* Ex. 6.)

In *Clark*, Pecos River's lawyers also questioned Dr. Moline as to the genesis of the 2020 Article and whether she spoke with the *Emory* Defendants about her article or theirs.  Dr. Moline explained that she started thinking about her article in 2016 or 2017 but was disrupted by an injury to herself and her son and did not speak with any plaintiff's firm or the *Emory* Defendants about the 2020 Article before it was accepted for publication.  (Bush Decl., Ex. 1, Tr. at 40:2-19, 41:9-15, 235:12-236:12.)

Dissatisfied with that testimony, Pecos River subpoenaed Dr. Moline for another deposition, this one in the *Emory* Action, and conducted that deposition after her motion to quash was denied.[5]  Her testimony in the *Emory* Action was consistent with that she gave in *Clark*—that she did not recall speaking with the *Emory* Defendants about their articles and did not communicate with plaintiff's counsel about the 2020 Article before it was submitted.  (*See* Supp. Marino Cert., Ex. 5, Moline *Emory* Tr. at 38:3-15, 40:9-41:8, 45:12-46:5, 51:6-11.)

---

[5] Pecos River mischaracterizes the decision denying that motion to suggest that Judge Engelmayer found that Dr. Moline was not credible.  (Supp. Br. at 17.)  Judge Engelmayer made no such finding.  Indeed, he held no evidentiary hearing and had no opportunity to examine Dr. Moline's candor.  He simply found that Pecos River was entitled to test her prior testimony by confronting her with the documents the *Emory* Defendants produced.  *See Moline v. Pecos River Talc LLC*, No. 25-mc-391, 2025 U.S. Dist. LEXIS 201669, at *8 (S.D.N.Y. Oct. 10, 2025).  Dr. Moline explained why her testimony in *Clark* was consistent with those documents.

## <u>LEGAL ARGUMENT</u>

**I.    PECOS RIVER'S SUPPLEMENTAL SUBMISSION PROVIDES NO BASIS TO REOPEN THIS COURT'S JUDGMENT.**

### A.    Pecos River Cites No Evidence That Dr. Moline's No-Known-Alternative-Exposure Statements Are Actionable.

Pecos River argues that Dr. Moline's recent deposition testimony undermines this Court's Opinion that the 2020 Article constitutes non-actionable scientific opinion, claiming that a "reasonable person of ordinary intelligence" might disagree with the article's assertion that her research subjects had no known alternative exposures.  (Supp. Br. at 6-8 (cleaned up).)  According to Pecos River, Dr. Moline has now testified that, contrary to the "absolute, unconditional and unequivocal" statements in the 2020 Article that her research subjects had no known alternative exposures, she admitted that she knew some subjects did have such exposures.  (*Id.* at 7-13.)

That argument misreads the 2020 Article and Dr. Moline's testimony and ignores this Court's sound application of Third Circuit law.  As the Court cogently explained in dismissing Pecos River's Complaint, whether a statement in a medical journal is a protected opinion presents a "threshold question of law" viewed from the perspective of the "relevant scientific community"—here, the readers of the JOEM—who are "best positioned to identify opinions and choose to accept or reject

8

[them]." (Op.[6] at 13, 26 (quoting *Pacira*, 63 F.4th at 245, 248) (internal quotations omitted); *see also id.* at 16-17 (noting that journal readers are more capable of discerning an opinion in the context of a "scholarly debate").) It further explained that, absent allegations that the underlying data have been fabricated, a statement is not actionable when a journal's readers are able to determine, based on the ***content, verifiability, and context*** of the challenged statements, that they represent the author's ***opinion***. (*See id.* at 13; *see also id.* at 11, 15, 24.)

Applying that framework, this Court held that the no-known-alternative-exposure statement that Pecos River challenges is nonactionable as a matter of law because Dr. Moline qualified the challenged statements and enabled the JOEM's readers to evaluate them based on her methods, sources, and limitations, which she disclosed. (*See* Op. at 13-28.) The Court concluded that "[a]ll of these disclosures, together with the 'analytical tone and tenor' of the Article, notif[ied] readers that Dr. Moline's statements should be understood as scientific conclusions that are 'tentative and subject to revision.'" (*Id.* at 27 (quoting *Pacira*, 63 F.4th at 246); *see also id.* at 16-17 (concluding that "the content of Dr. Moline's statements," along with their context and verifiability, demonstrate that they are nonactionable).) This was so even assuming the truth of Pecos River's allegations that it had identified

---

[6] The Court's Opinion was previously included as Exhibit E to the May 19, 2025 Certification of Kevin H. Marino.

"other alleged sources of asbestos exposure." (*Id.* at 19-20.)

Nothing in Pecos River's submissions undermines the Court's finding, based on an analysis of the content, verifiability, and context of Dr. Moline's conclusion, that it was a non-actionable statement of scientific opinion. Pecos River points to no "fabricated or falsified data" underlying that conclusion, (Op. at 23), and none exists. It is instead the product of scientific inquiry and was a qualified opinion expressed in a learned journal targeting an audience well used to receiving and evaluating such opinions.

Pecos River's supplemental submission only underscores what this Court has already described as the hallmarks of a protected scientific opinion—disagreements about the conclusions Dr. Moline reached based on the "inferences or conclusions drawn from her review" of the data she disclosed. (Op. at 20-21.) That such inferences "may be subject to critique" does not render them false statements of fact. (*Id.* at 20.) As the court emphasized, Dr. Moline's ability to "conceivably explain" why alleged alternative exposures do not undermine her conclusion "shows that the statement is a scientific opinion, and not a matter of simple truth or falsity." (*Id.* at 22; *see also id.* at 24.) Pecos River only proves that point when it contends that certain subjects had known alternative exposures while ignoring Dr. Moline's contrary explanations. Indeed, the JOEM's careful consideration and rejection of Pecos River's allegation also underscores this Court's observation that the "'peer-

review process—not a courtroom—provides the best mechanism for resolving'" Pecos River's critiques.  (Op. at 23 (quoting *Pacira*, 583 F. Supp. 3d at 658).) *Accord ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013).  As analysis of Pecos River's precise factual allegations drives this point home forcefully.

**Ms. Polokow**.  Pecos River argues that Dr. Moline admitted that Ms. Polokow had an alternative exposure because "someone" indicated that Ms. Polokow had a non-talc exposure in a "work history."  (Supp. Br. at 8.)   But as Dr. Moline explained, a "work history" is a document typically included as part of a legal filing. (*See* Bush Decl., Ex. 1, Tr. at 162:1-15.)   Dr. Moline explained that she was not qualified to review legal filings and it was not her practice to do so, as she preferred to review the underlying data rather than "the lawyers' opinion[s]." (*See id.* at 117:4-118:7, 367:5-368:4.)  Not surprisingly, she never represented in the 2020 Article that she analyzed such legal paperwork to reach her conclusions.  Rather, based on the data she did review, Dr. Moline concluded that Ms. Polokow did not have a known alternative exposure and adhered to that conclusion for every research subject other than Ms. Kohr, who was the subject of her erratum.  (*See id.* at 162:24-163:20, 327:3-328:8, 372:19-373:1; Moline 5/19/25 Br. at 6.)

**Ms. Jackson**.  Pecos River asserts that Dr. Moline conceded that Ms. Jackson had an alternative exposure by acknowledging that an "individual" indicated such

11

an exposure on Ms. Jackson's medical-intake form.  (Supp. Br. at 9.)  Not so.  Dr. Moline explained that the information contained in such forms is "often incorrect" and unreliable for multiple reasons, including due to poor clinical training, inaccurate reporting of patient exposures, misinformation about such exposures, and changing understandings of the sources for asbestos exposures.  (Bush Decl., Ex. 1, Tr. at 214:20-216:11; *see also* 220:7-221:22, 281:2-283:8.)  Indeed, the intake form Pecos River cites provides no indication that it was prepared by an occupational physician.  (*See* Bush Decl., Ex. 4.)  The form is also from 2015, at a time when many physicians "had no idea" that cosmetic talc could have exposed their patients to asbestos.  (Bush Decl., Ex. 1, at 132:2-13.)  The intake form is thus entirely consistent with Dr. Moline's no-known-alternative-exposure opinion.

**Ms. Schoeniger and Mr. Garcia**.  Dr. Moline previously demonstrated that Pecos River's argument that Ms. Schoeniger and Mr. Garcia had known alternative exposures simply distorted the expert reports Dr. Moline submitted in those cases.  (*See* Moline 5/19/25 Br. at 16, 30.)  Pecos River cites nothing new from Dr. Moline's testimony to show otherwise.  Rather, it (i) cites her testimony acknowledging that she indeed wrote certain sentences in her expert reports; and (ii) repeats the same argument it made in its prior submission based on a deposition taken of Dr. Moline in February 2020 (hardly new evidence).  (*Compare* Supp. Br. at 10 *with* Pecos River 4/29/25 Br. at 22.)  Dr. Moline has already addressed those arguments by

demonstrating that (i) Pecos River takes statements from Dr. Moline's expert reports out of context; (ii) the 2020 Article referred to "known" rather than "potential" exposures; and (iii) even the existence of a "potential" exposure is a question that entails scientific judgment. (*See* Moline 5/19/25 Br. at 30-31.)

***Ms. Dalis***.    Pecos River observes that, in her deposition, Dr. Moline acknowledged that she did not investigate or rely on statements in Ms. Dalis's application for compensation from a Johns Manville settlement trust. (Supp. Br. at 11-12.) But Dr. Moline never represented that she did. Instead, she explained that she reviewed the subjects' deposition transcripts and that Ms. Dalis never identified an alternative asbestos exposure at her deposition. (*See* Bush Decl., Ex. 1, Tr. at 173:22-24; 320:12-14.) Pecos River criticizes Dr. Moline for failing to consider other "'variables that were available to [her],'" but that does not make her opinions actionable, as this Court has already held. (Op. at 22 (quoting *ONY*, 720 F.3d at 497).) Those variables include Ms. Dalis's claim for the Johns Manville trust. (*See id.* at 22.) Pecos River disagrees with how this Court applied the law. That is a matter for appellate review, not a motion to reopen. (*See* Moline 5/19/25 Br. at 22.)

### B.    Pecos River Cannot Reopen This Court's Judgment Based On Additional Criticisms Of Dr. Moline's Research Design Or Failure To Consider Alternative Variables.

Pecos River goes on to argue that it has new evidence from Dr. Moline's deposition that she acted "willfully," "recklessly," or with "malice" by disregarding

information beyond the disclosed data she reviewed.  (Supp. Br. at 11-13.)  It similarly argues that this new testimony demonstrates that Dr. Moline improperly "designed" her study to "ignore non-talc exposures."  (*Id.* at 13.)

This Court has already explained the irrelevance of such allegations; it dismissed the Complaint because the statements Pecos River challenged were ***not actionable***, not because Pecos River failed to plead scienter.  (*See* Op. at 13, 17, 19-22, 23.)  "For this reason," this Court explained, "these statements are nonactionable regardless of whether, as [Pecos River] alleges, Dr. Moline knew" information of alleged alternative exposures when she published the 2020 Article.  (*Id.* at 23.)  That holding was correct; allegations that a defendant acted with "'actual malice'" have "no bearing on whether the statements may be actionable as a threshold matter." *Pacira*, 63 F.4th at 247 n.15.

This Court similarly emphasized that a plaintiff cannot challenge a scientific opinion by alleging that researchers failed to "include 'variables that were available to [them]'" but "'that were not taken into account in their analysis.'"  (Op. at 22 (quoting *ONY*, 720 F.3d at 497).)  That is because a "'scientific conclusion need not account for every piece of data that was *not* relied on to receive protection.'"  (*Id.* (quoting *Pacira*, 583 F. Supp. 3d at 669; emphasis in original).)  Indeed, allegations that "'scientists would have included variables that were available to the defendant authors but . . . were not taken into account in their analysis' cannot create an

14

actionable falsehood because they do not bear on whether the statements are verifiable.'" (*Id.* at 22-23 (quoting *Pacira*, 63 F.4th at 247).)  That holding faithfully followed *Pacira*, which clearly held that disputes about a "'flawed method'" cannot "create an actionable falsehood for trade libel." *See Pacira*, 63 F.4th at 247.  This means that "no new factual allegations, including criticisms about the bases for these opinions, would disturb that conclusion." *Id.* at 249-50.

Pecos River gets no further by arguing that it is challenging the "necessary legal implication" in the 2020 Article that Dr. Moline conducted a "reasonable" or "factually supported" investigation.  (Supp. Br. at 3, 7 (emphases removed).)  That is just another way of saying it is challenging Dr. Moline's research design.  Beyond that fatal flaw, Pecos River must identify a false statement about its product; it cannot imply one that does not exist. *See Pacira*, 63 F.4th at 245 n.3 (stating that a trade-libel plaintiff must prove that a defendant made "'false allegations concerning plaintiff's property or product'" (cleaned up)); *Albion Eng'g Co v. Hartford Fire Ins. Co.*, 779 F. App'x 85, 90 (3d Cir. 2019) ("New Jersey . . . does not recognize a claim for implicit disparagement or defamation."); *accord Benecard Servs. v. Allied World Specialty Ins. Co.*, No. 15-cv-8593, 2020 U.S. Dist. LEXIS 94806, at *39 (D.N.J. May 31, 2020).

Moreover, even if Pecos River could state a trade-libel claim by attacking Dr. Moline's "process," (Supp. Br. at 13)—and it cannot—it simply misrepresents

what that process entailed. Dr. Moline did not testify, as Pecos River claims, that her evaluation "consisted exclusively of looking at her own expert reports." (*Id.* at 14 (emphasis removed).) Rather, she explained that her research method was "laid out" in her articles—in particular, she reviewed the subjects' deposition transcripts and in some cases also conducted in-person interviews. (*See* Bush Decl. Ex. 1, Tr. at 92:5-9, 280:21-24, 320:6-321:8.) The JOEM's editorial board consists of acclaimed physicians who select and evaluate peer-reviewed articles for publication.[7] If Pecos River's criticisms of Dr. Moline's research methods had merit, the JOEM would have retracted the 2020 Article. It did not.

Pecos River's argument also reveals the wisdom of *Pacira*'s holding, which this Court faithfully followed, that a plaintiff cannot state a trade-libel claim by criticizing an article's research design. By Pecos River's logic, in order for Dr. Moline to publish the 2020 Article, she would have had to (i) obtain a degree in mineralogy to examine asbestos-fiber structures; (ii) become proficient in North Carolina workers'-compensation filings; (iii) develop expertise in claims for bankruptcy trusts; and (iv) perform on-site investigations to examine potential exposures from decades ago. (*See* Bush Decl., Ex. 1, Tr. at 164:1-165:13, 170:9-172:5, 261:8-17, 336:18-337:4, 342:1-11, 345:2-19.) That is nonsense. If

---

[7] *See* JOEM, Publications, *available at* https://acoem.org/Publications/Journal-of-Occupational-and-Environmental-Medicine.

researchers had to exclude every alternative hypothesis, precious little research would ever be published.

Exposing Pecos River's flawed logic reveals its true motive—to ensure that *no* research critical of J&J is ever published. That result is consistent with J&J's longstanding strategy of attacking researchers and scientists who expose concerns about its product rather than taking accountability for its intentional failure to inform the public about the risk that its products contained asbestos.[8] This Court should not allow J&J to deploy that strategy here by continuing to harass Dr. Moline with a meritless trade-libel claim.

### C. Pecos River's Contention That It Discovered New Evidence Of Dr. Moline's Alleged Purpose In Publishing The 2020 Article Is Legally Irrelevant And Factually Unsupported.

Pecos River's motion descends into further irrelevance when it claims to have discovered that Dr. Moline's true "purpose" in publishing the 2020 Article was not

---

[8] Most recently, J&J was assessed nearly a billion dollars in punitive damages resulting from its intentional failure to inform the public about the risks that its cosmetic-talc products contained asbestos and its affirmative efforts to conceal those risks. *See* Amy Edel, *What the Court Documents Show About J&J's $966M Loss*, Asbestos.com, *available at* https://www.asbestos.com/news/2025/10/13/what-the-court-documents-show-about-jjs-966m-loss/; Kailyn Rhone, *Johnson & Johnson Ordered to Pay $966 Million in Latest Talc Lawsuit*, N.Y. Times, Oct. 7, 2025, *available at* https://www.nytimes.com/2025/10/07/business/johnson-johnson-talc-lawsuit.html?searchResultPosition=2. And recent testimony of a former FDA head in another cosmetic-talc litigation confirmed that, for the past 50 years, J&J has attacked any scientist who found asbestos fibers in its products and has actively concealed that data from the FDA. *See* Craig Clough, Law360, *Ex-FDA Chief Accuses J&J Of Hiding Talc Risks For 50 Years*, Nov. 18, 2025.

to advance clinical practices but rather to further a conspiracy by Simon Greenstone to "create papers that could be cited in litigation." (Supp. Br. at 15; *see also id.* at 5.) Pecos River then claims it has uncovered evidence that Dr. Moline "lied to conceal the coordination between her Article and the Emory Paper." (*Id.* at 16.)

None of these inflammatory allegations are remotely relevant or supported. As an initial matter, whether the 2020 Article's no-known-alternative-exposure statement is actionable turns on the contents of the article as viewed from the perspective of a JOEM reader. *See Pacira*, 63 F.4th at 248 & n.18. Whether Dr. Moline had a hidden "purpose" in writing that article by definition cannot impact how those readers interpreted the article's published statements. Indeed, *Pacira* held that allegations that a defendant had undisclosed motives or conflicts when publishing an article have "no bearing on whether the statements may be actionable as a threshold matter." *Id.* at 247 n.15. Pecos River's argument ignores this law.

Moreover, Pecos River's supposed "evidence" of a conspiracy is a figment of its imagination. As shown above, the *Emory* Defendants denied coordinating their article with Dr. Moline or Simon Greenstone. So did Dr. Moline. Those denials are corroborated by an e-mail in which Drs. Kradin and Maddox contemplated withdrawing their article once they learned of Dr. Moline's publication. (Supp. Marino Cert., Ex. 6.) Indeed, the timeline of Pecos River's conspiracy theory conflicts with Dr. Moline's testimony that she began working on her article in 2016

or 2017—years before the *Emory* Defendants started working on theirs—but was delayed due to an injury to herself and her son. (Bush Decl., Ex. 1, Tr. at 40:2-40:19.) Pecos River cannot overcome this uniform testimony from Dr. Moline and the *Emory* Defendants based on its self-serving interpretation of a handful of e-mails. (*See* Supp. Br. at 15-20.) If those e-mails supported the inferences Pecos River seeks to draw (and they do not), they would consist of "impeach[meant]" material that cannot justify reopening a judgment. *See Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983); *accord Advanced Multilevel Concepts, Inc. v. Bukstel*, C.A. No. 11-3718, 2014 U.S. Dist. LEXIS 169884, at *21-22 (E.D. Pa. Dec. 8, 2014).

Finally, Pecos River proves nothing other than its willingness to engage in *ad hominem* attacks when it contends that Dr. Moline "lied" at her deposition to "conceal" Pecos River's imagined conspiracy. (Supp. Br. at 1, 5, 15-19.) There was nothing to "conceal" because no conspiracy existed. Moreover, Pecos River ignores the testimony Dr. Moline provided in the *Emory* Action. There, Dr. Moline explained that (i) she did not recall her interactions with the Emory Defendants even when confronted with the e-mails Pecos River cites, (*see* Supp. Marino Cert., Ex. 5, Moline *Emory* Tr. at 38:3-15, 40:9-41:8, 45:12-46:5); and (ii) she did not find e-mails with the Emory Defendants from her Northwell account because she could not access e-mails beyond two years, (*see id.* at 17:20-20:20), not because she was hiding them. That Dr. Moline does not remember unmemorable interactions from

19

more than five years does not mean she "lied" about them; it means she did not remember them.  Pecos River's assertions to the contrary should be rejected.

## **CONCLUSION**

For the foregoing reasons, Pecos River's motion should be denied.

Chatham, New Jersey                    Respectfully submitted,
Dated:  November 20, 2025

MARINO, TORTORELLA & BOYLE, P.C.

By: _____
Kevin H. Marino
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant Dr. Moline*

20