![Patterson Belknap logo]

www.pbwt.com

May 1, 2026

Peter C. Harvey
(212) 336-2810
pcharvey@pbwt.com

**By ECF**

The Honorable Georgette Castner, U.S.D.J.
U.S. District Court, District of New Jersey
402 East State Street, Trenton, New Jersey 08608

>   **Re:**    ***Pecos River Talc LLC v. Moline*, No. 3:23-cv-02990-GC-JTQ (D.N.J.)**
>   **Request for Pre-Motion Conference on Anticipated Motion to Dismiss**

Dear Judge Castner:

We represent Plaintiff/Counterclaim-Defendant Pecos River Talc LLC ("Pecos River") and Third-Party Defendants Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson (together, the "J&J Entities") in this lawsuit.  Pursuant to Your Honor's Individual Rules, we write to request a pre-motion conference in anticipation of Pecos River's and the J&J Entities' contemplated motion to dismiss Defendant Dr. Jacqueline Moline's counterclaim/third-party claim, which is brought under New York's anti-SLAPP statute.  As discussed below, Dr. Moline's claim fails as a matter of law for multiple reasons and is ripe for dismissal.

##    I.    Background

On May 31, 2023, LTL Management LLC, Pecos River's predecessor, sued Dr. Moline for trade libel and related claims over her publication of two articles (the "Articles") purporting to identify and discuss individuals with mesothelioma whose *only known exposure* to asbestos was via cosmetic talcum powder, including Johnson's Baby Powder and Shower to Shower.  *See* ECF No. 1 ("Compl.") ¶¶ 85–95; ECF No. 64 ("Am. Compl.") ¶¶ 89–99.  Dr. Moline knew that these sole-exposure claims were false when she made them:  in prior tort litigation, she was an expert for these same individuals and had acknowledged that many of them claimed other, non-talc asbestos exposures.  *See, e.g.*, Am. Compl. ¶¶ 156–57, 188–90, 196–98.

Though Pecos River's suit was initially dismissed, on February 27, 2026, this Court granted Pecos River relief from judgment and leave to amend after Pecos River presented evidence demonstrating that Dr. Moline had falsified data in her Articles regarding these individuals' asbestos exposure histories, including a newly discovered "key" which allowed Pecos River to prove up their alternative exposures.  *See* ECF No. 60 at 13–17.  Based on that evidence, the Court granted Pecos River leave to amend, concluding that its now-operative complaint plausibly alleged a trade libel claim against Dr. Moline under well-settled New Jersey tort law.  *Id.* at 29–30.

Notwithstanding the Court's ruling that Pecos River has stated a plausible (and, *a fortiori*, non-frivolous) claim against her under New Jersey law, Dr. Moline has now asserted a counterclaim/third-party claim under New York's anti-SLAPP statute, which is meant to deter frivolous suits aimed at chilling public debate in New York.  *See generally* ECF No. 67 at 102–

Hon. Georgette Castner, U.S.D.J.
May 1, 2026
Page 2

135; N.Y. Civ. Rights Law § 70-a. Dr. Moline has also impleaded two new parties who had no role in the underlying trade-libel proceeding—the J&J Entities—as putative Third-Party Defendants. ECF No. 67 at 106.

## II.    Bases for Contemplated Motion to Dismiss

Dr. Moline's New York anti-SLAPP claim fails as a matter of law for at least three reasons: (1) New York's anti-SLAPP statute is inapplicable to this *federal* court proceeding in *New Jersey*; (2) even if it were applicable, Dr. Moline cannot plausibly allege that Pecos River violated it; and (3) the J&J Entities are not proper anti-SLAPP defendants because they did not bring the underlying lawsuit against Dr. Moline.

### A.    New York's Anti-SLAPP Statute Is Inapplicable Here

*First*, New York's anti-SLAPP statute is inapplicable to this dispute because New Jersey law applies. Under New Jersey's choice-of-law rules, which apply in New Jersey federal courts, claims seeking sanctions or compensation for improperly commenced litigation are governed by the law of "the state where the proceeding complained of occurred"—here, New Jersey, not New York. *See* Restatement (Second) of Conflict of Laws § 155 & cmt.b (1971). New Jersey lacked any anti-SLAPP remedies at the time Pecos River brought its underlying claims, and New Jersey's subsequently enacted anti-SLAPP statute is not retroactive.

*Second*, even if the choice-of-law analysis favored New York, federal law preempts the application of New York's anti-SLAPP statute in this federal proceeding. The New York anti-SLAPP statute's "substantial basis" standard conflicts with the dismissal and summary judgment standards of Federal Rules of Civil Procedure 12 and 56. *See Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430-32 (S.D.N.Y. 2021). In addition, the statute's mandatory sanctions provisions conflict with Rule 11's permissive sanctions regime. *See Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022). Finally, to the extent Dr. Moline's anti-SLAPP claim seeks fees or damages in connection with Pecos River's initial assertion of a claim under the federal Lanham Act, *see* Compl. ¶¶ 248-55, it also conflicts with, and is preempted by, that statute's plain text, which sets forth Congress's express intent regarding when fee-shifting should (and should not) be available to a prevailing Lanham Act defendant, *see* 15 U.S.C. § 1117(a); *cf. S.F. Culinary, Bartenders & Serv. Emps. Welfare Fund v. Lucin*, 76 F.3d 295, 297 (9th Cir. 1996) (holding that a federal statute with its own built-in attorney-fee standards preempts an award of fees under a state statute with different standards); *State v. Golden's Concrete Co.*, 962 P.2d 919, 926 (Colo. 1998), *as modified on denial of reh'g* (June 22, 1998) (same).

### B.    Dr. Moline's Allegations Fail to Support a New York Anti-SLAPP Claim

Dr. Moline also fails to state a claim for relief under New York's anti-SLAPP statute because she cannot plausibly allege that Pecos River's suit against her lacks a "substantial basis in fact and law." *See* N.Y. Civ. Rights Law § 70-a. Indeed, this Court has already held that Pecos River provided sufficient evidence in connection with its Rule 60(b) motion to sustain its trade libel claim, including expert reports and testimony in which Dr. Moline concedes the existence of

Hon. Georgette Castner, U.S.D.J.
May 1, 2026
Page 3

non-talc asbestos exposures amongst certain plaintiffs for whom she has testified, and the newly discovered "key" confirming that those plaintiffs are the subjects of her Articles. *See* ECF No. 60 at 21, 29–30; *see also* ECF Nos. 47-6, 47-9, 47-15. This evidence not only plausibly alleges that Dr. Moline falsified her study data—it proves it, which is certainly a "substantial basis in fact and law" for this suit. *See LoanStreet, Inc. v. Troia*, No. 21-CV-6166 (NRB), 2023 WL 5836237, at *7 (S.D.N.Y. Sept. 8, 2023) (because the "Court ha[d] already evaluated [the] complaint in detail and upheld the remaining defamation claims as sufficiently pled . . . the action has already stated a 'substantial basis in fact and law,'" thereby requiring dismissal of anti-SLAPP counterclaim); *cf. LLT Mgt. LLC v. Emory*, 766 F. Supp. 3d 576, 603 (denying motion to dismiss New Jersey trade libel claim). Accordingly, Dr. Moline cannot possibly state a claim for relief under § 70-a.

### C.     The J&J Entities Are Improper Anti-SLAPP Defendants

Finally, the J&J Entities which Dr. Moline has sought to implead were not parties to the underlying suit. As such, they are improper defendants to a New York anti-SLAPP claim, which may be asserted *only* against "[the] person who commenced or continued [the underlying] action" alleged to be frivolous. N.Y. Civ. Rights Law § 70-a. The only party that "commenced or continued" the underlying action is Pecos River—not its corporate affiliates. *See Hackensack Univ. Med. Ctr. v. Becerra*, No. 21-CV-12233 (MAH), 2021 WL 4473173, at *3 (D.N.J. Sept. 30, 2021) (actions of a corporate subsidiary cannot be imputed to the parent); *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 680 (D.N.J. 2009) (actions of an LLC cannot be attributed to its members).

Any attempt to pierce Pecos River's corporate veil to hold the J&J Entities responsible for Pecos River's litigation conduct fails, because Dr. Moline has not plausibly alleged either (let alone both) of the prerequisites for veil piercing. First, she has not plausibly alleged that Pecos River is so dominated by the J&J Entities "that it ha[s] no separate existence." *State Dep't of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 501 (1983). And second, she has not plausibly alleged that the J&J Entities are using corporate separateness as a tool to perpetrate fraud or illegal conduct. *See In re Paulsboro Derailment Cases*, No. 12-7468, 2015 WL 4914397, at *6 (D.N.J. Aug. 18, 2015). Indeed, this Court has already held that Pecos River's lawsuit states a plausible claim for relief, *see* ECF No. 60 at 29–30, so it can hardly be the case that Pecos River's mere filing of this suit is sufficiently lawless to justify disregarding its corporate existence.

For all the foregoing reasons, we respectfully request that the Court set a pre-motion conference at its earliest convenience and/or proceed directly to set a briefing schedule for Pecos River's and the J&J Entities' contemplated motion to dismiss. Finally, because in all events the pendency of Dr. Moline's claim has no bearing on the discovery needed for Pecos River's trade libel claim, we ask that the Court set a Rule 16 conference on or before June 9, 2026, which is 60 days from the date of Dr. Moline's answer. *See* ECF No. 67; *see also* Local Civ. R. 16.1.

Respectfully submitted,

*/s/ Peter C. Harvey*

cc:     All Counsel of Record (via ECF)