MARINO, TORTORELLA & BOYLE, P.C.

ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
EREZ J. DAVY
————
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 864-7200
e-mail: kmarino@khmarino.com

May 6, 2026

**VIA ECF**

Honorable Georgette Castner, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: *Pecos River Talc LLC v. Moline*, No. 3:23-cv-02990-GC-JTQ

Dear Judge Castner:

On behalf of Dr. Moline, we respectfully submit this letter in response to J&J's[1] May 1, 2026 request (ECF No. 72) for leave to file a motion to dismiss the Counterclaim Dr. Moline asserted under New York's anti-SLAPP laws[2] and to take discovery during the pendency of that motion. For the reasons set forth below, that request should be denied.

*Background*. These allegations are drawn from Dr. Moline's Counterclaim. For many years, J&J sold two products, Johnson's Baby Powder and Shower to Shower, made from talc, a mineral found naturally alongside asbestos. (Counterclaim (ECF No. 67) ¶¶ 3, 20-27, 62-63.) By 1958, J&J knew that its talc was contaminated with asbestos but concealed that fact by promoting studies that falsely claimed it was safe, misleading regulators, destroying and fabricating evidence, and attacking scientists who found asbestos in its products. (*Id.* ¶¶ 28-40.) J&J's misconduct first came to light more than a decade ago in litigation, media reports, and the FDA's October 2019 finding that Johnson's Baby Powder contained asbestos. (*Id.* ¶¶ 41-53.) That misconduct is being rectified to this day, including through The Lancet's recent retraction of a 49-year-old commentary that was secretly authored by a paid J&J consultant. (*Id.* ¶ 39.)

Rather than take responsibility for its misconduct, J&J has doubled down on its deception, suing doctors for publishing journal articles opining that exposure to cosmetic talc can cause mesothelioma and advising clinicians to ask their patients presenting with that disease about their use of cosmetic talc. (Counterclaims ¶¶ 98-106.) Dr. Moline is one such doctor. She is a highly respected New York physician and researcher who has been sued by J&J for publishing journal articles in 2020 and 2023 opining that exposure to cosmetic talc can cause mesothelioma. (*Id.* ¶¶ 65-73.) This Court dismissed J&J's original fraud and trade-libel claims against Dr. Moline, holding that they challenged her constitutionally protected opinions and privileged statements she

---

[1] Dr. Moline collectively refers to the Plaintiff and Counterclaim-Defendants Johnson & Johnson Holdco (NA) Inc. ("J&J Holdco") and Johnson & Johnson ("J&J Parent") as J&J to avoid confusion. The entity that filed this action (LTL Management LLC) and the one later substituted in that is now the Plaintiff (Pecos River Talc LLC) are entities J&J created for purposes of defending legacy talc litigation against it.

[2] The acronym "SLAPP" stands for Strategic Lawsuits Against Public Participation. New York's anti-SLAPP laws are designed to provide the "utmost" protection to its citizens for exercising their rights to free speech, petition, and association. *See Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 16 (N.Y. App. Div. 2024); *Evans v. Thehuffingtonpost.com, Inc.*, No. 22-cv-1180, 2023 U.S. Dist. LEXIS 143182, at *11-12 (D. Del. Aug. 16, 2023).

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Georgette Castner, U.S.D.J.
May 6, 2026 – Page 2

made to Congress.  (*Id.* ¶¶ 80-82.)   But after gaining access to the identities of the subjects of Dr. Moline's articles, J&J amended its trade-libel claim, reframing it as one alleging that Dr. Moline fabricated the data in her articles.  (*Id.* ¶¶ 84-87.)  Dr. Moline has now asserted a counterclaim under New York Civil Rights Law § 70-a(1) ("§ 70-a"), a component of New York's anti-SLAPP laws, to hold J&J accountable for filing and pursuing a classic SLAPP action designed to penalize her for exercising her free-speech and petition rights and to chill medically valuable research.

  ***J&J's Motion Is Baseless.***  J&J intends to move to dismiss the Counterclaim on four grounds.  All lack merit.  <u>*First*</u>, J&J argues that a § 70-a claim cannot be asserted in this diversity action because it conflicts with and is thus preempted by the Federal Rules of Civil Procedure.  Not so.  Under the *Erie* doctrine, federal courts exercising diversity jurisdiction must apply state substantive law.  *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 474 (3d Cir. 2001).  A claim authorized by a state statute is a quintessential aspect of a state's substantive law.  *See, e.g.*, *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994) (applying New Jersey's Law Against Discrimination as a "substantive" aspect of its law).  Federal courts thus routinely apply New York's anti-SLAPP statutes in diversity cases, rejecting as wrongly decided the two decisions on which J&J relies.  *See Heilbut v. Cassava Sci., Inc.*, 778 F. Supp. 3d 551, 567-69 (S.D.N.Y. 2025) (collecting authorities); *Grifols, S.A. v. Yu*, No. 24-cv-00576, 2026 U.S. Dist. LEXIS 64961, at *11-17 (S.D.N.Y. Mar. 26, 2026).  These authorities demonstrate that the Counterclaim is proper because it is based on a "substantive cause of action [created by § 70-a], and not on any procedural mechanisms available to state-court litigants."  *Heilbut*, 778 F. Supp. 3d at 567.

  <u>*Second*</u>, J&J argues that the Counterclaim is governed by New Jersey law and should be dismissed because New Jersey has no statute comparable to § 70-a that applies to this action.  Beyond being inaccurate given New Jersey's passage of the UPEPA before J&J filed its amended trade-libel claim, that argument misapplies the law.  New Jersey resolves conflicts by examining which State has the greater interest in applying its law to a claim, with the "most important factor [being] the competing interests of the states."  *Erny v. Estate of Merola*, 171 N.J. 86, 94-96, 100-03 (2002); *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007).  Here, the key underlying events occurred in New York:  Dr. Moline resides and works in New York; conducted her research in New York for Northwell, New York's largest healthcare institution; and therefore reasonably expected, as did Northwell, that her research would be protected by New York law.  (*See* Counterclaims ¶¶ 2, 66-68, 73.)  New York has expressed a "strong policy" to protect its citizens from anti-SLAPP lawsuits, *Evans*, 2023 U.S. Dist. LEXIS 143182, at *11, and no New Jersey policy would be "frustrated" by applying New York law, *Erny*, 171 N.J. at 100.  To the contrary, New Jersey's recent enactment of the UPEPA confirms that its policy would be furthered by applying New York law.  Thus, New York law applies.  *See, e.g.*, *Woods Servs. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 608 (E.D. Pa. 2018) (holding that New York had a greater interest in applying its anti-SLAPP laws); *Evans*, 2023 U.S. Dist. LEXIS 143182, at *10-12 (same).

  <u>*Third*</u>, J&J argues that the Counterclaim should be dismissed because J&J's amended trade-libel claim has a "substantial basis" under § 70-a.  J&J reasons that (a) claims that survive a motion to dismiss have a "substantial basis"; and (b) its amended trade-libel claim is outside the scope of § 70-a because this Court granted J&J leave to replead it.  But a claim has a "substantial basis"

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Georgette Castner, U.S.D.J.
May 6, 2026 – Page 3

only when it is supported by evidence "adequate to support a conclusion or ultimate fact." *Reeves*, 232 A.D.3d at 12 (cleaned up). Thus, claims lack a "substantial basis" when they are dismissed at the pleading stage *and* could not survive summary judgment. *See id.* at 21-25 (holding that a claim lacked a substantial basis where the plaintiff could not "state a claim or raise an issue of triable fact"). This standard defeats J&J's argument for two reasons. As a threshold matter, J&J's original common-law claims[3] *were* dismissed at the pleading stage, (*see* Counterclaims ¶¶ 75-82, 118), and thus lacked a "substantial basis" even under J&J's misreading of the law. Next, the Counterclaim alleges that J&J lacks evidence to establish multiple aspects of its amended trade-libel claim. Specifically, the Counterclaim alleges that J&J cannot prove that (i) Dr. Moline fabricated the data in her journal articles—an argument explicitly *rejected* by the journal that published her 2020 article when J&J demanded its retraction, (*id.* ¶¶ 7, 84-91); (ii) consumers stopped buying Baby Powder because of Dr. Moline's articles rather than *J&J's recall* of its Baby Powder in October 2019, adverse jury verdicts, and years of negative press, (*id.* ¶¶ 92, 94-95); (iii) Dr. Moline's 2020 and 2023 articles caused J&J to lose sales on Shower to Shower, which it sold *in 2012*, (*id.* ¶¶ 62, 96); (iv) Dr. Moline's 2023 journal article caused J&J to lose sales on talc-based Baby Powder, which it discontinued *before* publication of that article, (*id.* ¶¶ 59-60, 96); and (v) Dr. Moline's articles implied anything false about J&J's talc-based products when those products were indeed contaminated with asbestos, (*id.* ¶¶ 3, 8, 28-40, 93). J&J cannot evade New York's anti-SLAPP laws by making allegations the Court was required to accept at the pleading stage.

*Fourth*, J&J argues that J&J Holdco and J&J Parent should be dismissed because they played "no role" in this case. But Dr. Moline has adequately pleaded that J&J Holdco and J&J Parent are directing Pecos River's action. The Counterclaim alleges that J&J Holdco is Pecos River's sole member and funding source and identifies multiple statements by J&J Parent's Worldwide Vice President of Litigation evidencing that entity's control over this action. (*Id.* ¶¶ 12-15, 100a-d.) The Counterclaim further adequately pleads a veil-piercing theory by alleging that Pecos River is a shell entity designed to help J&J Holdco and J&J Parent evade tort liability, is funded entirely by J&J Holdco, is undercapitalized, has the same address as J&J Parent and J&J Holdco, and is used to perpetrate a fraud on Dr. Moline by being wielded as a judgment-proof vehicle to circumvent New York's anti-SLAPP laws. (*See id.* ¶¶ 4, 12-16, 109b-c.) These allegations are more than adequate at this stage. *See Watson v. Sunrise Senior Living Servs.*, No. 10-cv-230, 2013 U.S. Dist. LEXIS 2627, at *41-51 (D.N.J. Jan. 8, 2013).

Respectfully submitted,

Kevin H. Marino

cc:   All counsel of record (via ECF)

---

[3] J&J suggests that the Counterclaim challenges Pecos River's initial assertion of a claim under the Lanham Act, a federal statute. To the contrary, the Counterclaim is expressly limited to the "common-law claims originally brought by LTL" for fraud and trade libel. (*See* Counterclaim ¶ 5; *accord id.* ¶¶ 6, 75, 86, 118.) The Counterclaim thus does not implicate any preemption concern under the Lanham Act.