**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PECOS RIVER TALC LLC,<br><br>Plaintiff,<br><br>v.<br><br>DR. JACQUELINE MIRIAM MOLINE,<br><br>Defendant. | Case 3:23-cv-02990-GC-JTQ<br><br>Hon. Georgette Castner, U.S.D.J. |
| DR. JACQUELINE MIRIAM MOLINE,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>PECOS RIVER TALC LLC, JOHNSON & JOHNSON HOLDCO (NA) INC., and JOHNSON & JOHNSON,<br><br>Counterclaim-Defendants. | **JOINT PROPOSED DISCOVERY PLAN** |

1.     Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

*Plaintiff/Counterclaim-Defendant Pecos River Talc LLC and Counterclaim-Defendants Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson*

Peter Harvey
Thomas P. Kurland (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222

Kristen Fournier (*pro hac vice*)
Matthew Bush (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

*Defendant/Counterclaim-Plaintiff Dr. Jacqueline Miriam Moline*

Kevin H. Marino
John D. Tortorella
Erez J. Davy
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, NJ 07928–1488
Tel: (973) 824-9300
Fax: (973) 824-8425

16354925v.6

Tel: (212) 446-4800
Fax: (212) 446-4800

2.    Set forth a brief description of the case, including the causes of action and defenses asserted.

**Pecos River states:**

Pecos River—an indirect subsidiary of Johnson & Johnson—brings a trade libel claim against Dr. Jacqueline Moline for knowingly false statements she has published regarding Pecos River and its predecessors' products.

Dr. Moline is a long-time plaintiffs' expert who testifies on behalf of the mass tort asbestos bar.

Dr. Moline authored the two articles at the center of this case.  Each article purports to describe a series of anonymized individuals who: (1) have mesothelioma; (2) claim to have used talcum powder products such as Johnson's Baby Powder over their lifetimes; and (3) are or were litigation plaintiffs who hired Dr. Moline to serve as their expert witness.

Dr. Moline stated multiple times both in the articles themselves and in other public fora that these articles' subjects had no exposures to asbestos from non-talc sources.  For example, she stated in one of the articles that "[t]alcum powder usage was the only source of asbestos for all 33 cases."

Although Dr. Moline anonymized the subjects of her articles, Pecos River obtained the subjects' identities, demonstrating that Dr. Moline's statements regarding their respective asbestos exposure histories were simply false.  As just two examples, while Dr. Moline stated in her article that "[n]o individual identified any asbestos exposure apart from contaminated talcum powder," she was recently forced to admit that "there's someone here that is identifying an exposure to asbestos from a non-talc source." And while Dr. Moline previously testified that she "didn't include any cases where there was a potential alternative exposure" to asbestos, Dr. Moline's *own expert report* in multiple underlying cases describe a "potential exposure" to asbestos from non-talc sources.

Dr. Moline has asserted a counterclaim under New York's anti-SLAPP laws.  Pecos River will be filing a motion to dismiss on June 12, as outlined in its pre-motion letter. (ECF No. 72).

**Dr. Moline states:**

On April 10, 2026, Dr. Moline filed her Answer to the Amended Complaint.  (ECF No. 67.)  The Answer asserts that the amended trade-libel claim fails to state a claim and is barred because it targets protected or privileged statements, challenges statements that

2

16354925v.6

are true, is the product of an invalid assignment, and is brought by an entity (Pecos River) that lacks standing to pursue the alleged damages.

On April 10, 2026, Dr. Moline also filed a Counterclaim pursuant to New York's anti-SLAPP laws against Pecos River and Counterclaim-Defendants Johnson & Johnson Holdco (NA) Inc. ("J&J Holdco") and Johnson & Johnson ("J&J Parent" and together with Pecos River and J&J Holdco, "J&J"). The Counterclaim alleges that Dr. Moline is entitled to her legal fees, compensatory damages, and punitive damages because the initial and amended claims are baseless yet were asserted and continue to be pursued against her to harass or intimidate her for exercising her free-speech and petition rights.

Dr. Moline's defense to Pecos River's trade-libel claim, as well as her anti-SLAPP counterclaim against J&J, involve determining whether Dr. Moline made a false allegation concerning J&J's property or product—*viz.*, whether J&J's cosmetic-talc products were contaminated with asbestos.

For many years, J&J sold two products, Johnson's Baby Powder and Shower to Shower, made from talc, a mineral found naturally alongside asbestos. (Counterclaim (ECF No. 67) ¶¶ 3, 20-27, 62-63.) By 1958, J&J knew that its talc was contaminated with asbestos but concealed that fact by promoting studies that falsely claimed it was safe, misleading regulators, destroying and fabricating evidence, and attacking scientists who found asbestos in its products. (*Id.* ¶¶ 28-40.) J&J's misconduct first came to light more than a decade ago in litigation, media reports, and the FDA's October 2019 finding that Johnson's Baby Powder contained asbestos. (*Id.* ¶¶ 41-53.) That misconduct is being rectified to this day, including through *The Lancet*'s recent retraction of a 49-year-old commentary that was secretly authored by a paid J&J consultant. (*Id.* ¶ 39.)

Rather than take responsibility for its misconduct, J&J has doubled down on its deception, suing doctors for publishing journal articles opining that exposure to cosmetic talc can cause mesothelioma and advising clinicians to ask their patients presenting with that disease about their use of cosmetic talc. (Counterclaim ¶¶ 98-106.) Dr. Moline is one such doctor. She is a highly respected New York physician and researcher who has been sued by J&J for publishing journal articles in 2020 and 2023 opining that exposure to cosmetic talc can cause mesothelioma. (*Id.* ¶¶ 65-73.) Judge Castner dismissed J&J's original fraud and trade-libel claims against Dr. Moline, holding that they challenged her constitutionally protected opinions and privileged statements she made to Congress. (*Id.* ¶¶ 80-82.) But after gaining access to the identities of the subjects of Dr. Moline's articles, J&J amended its trade-libel claim, reframing it as one alleging that Dr. Moline fabricated the data in her articles. (*Id.* ¶¶ 84-87.)

That claim is baseless for multiple reasons. Among other deficiencies, J&J will be unable to prove that: (i) Dr. Moline fabricated the data in her journal articles—an argument explicitly rejected by the journal that published her 2020 article when J&J demanded its retraction, (Counterclaim ¶¶ 7, 84-91); (ii) consumers stopped buying Baby Powder because of Dr. Moline's articles rather than J&J's recall of its Baby Powder in October 2019, adverse jury verdicts, and years of negative press, (*id.* ¶¶ 92, 94-95); (iii) Dr. Moline's 2020 and 2023 articles caused J&J to lose sales on Shower to Shower, which it sold in

3

16354925v.6

2012, (*id.* ¶¶ 62, 96); (iv) Dr. Moline's 2023 journal article caused J&J to lose sales on talc-based Baby Powder, which it discontinued before publication of that article, (*id.* ¶¶ 59-60, 96); and (v) Dr. Moline's articles implied anything false about J&J's talc-based products when those products were indeed contaminated with asbestos, (*id.* ¶¶ 3, 8, 28-40, 93).

Dr. Moline will oppose J&J's forthcoming motion to dismiss the Counterclaim and is confident that she will prevail for the reasons set forth in her pre-motion letter. (ECF No. 73.)

3. Have settlement discussions taken place?  Yes ____ No _X_

    (a)    What was Plaintiff's last demand?

        (1)    Monetary demand:  N/A
        (2)    Non-monetary demand:  N/A

    (b)    What was Defendants' last offer?

        (1)    Monetary offer: N/A
        (2)    Non-monetary offer: N/A

4. The parties have _X_ have not ____ met pursuant to Fed. R. Civ. P. 26(f).

5. The parties have ____ have not _X_ exchanged the information required by Fed. R. Civ. P. 26(a)(1).  If not, state the reason therefor.

The parties held their Rule 26(f) conference on May 19, 2026, and agreed to exchange such information by June 2, 2026, *i.e.*, 14 days following the conference.

6. Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1).  None.

7. The parties have ____ have not _X_ filed disclosures of third-party litigation funding.  See Local Civil Rule 7.1.1.

8. The parties have ____ have not _X_ conducted discovery other than the above disclosures.

**Dr. Moline states:**

Although the parties have not conducted discovery in this action, J&J has deposed Dr. Moline on numerous occasions and has also responded to discovery requests in cosmetic-talc/mesothelioma cases that substantially overlap with the discovery Dr. Moline intends to pursue in this case.

Although J&J asserts that it "has received no documents from Dr. Moline regarding the subject matter of this litigation," it has not yet propounded any discovery

4

requests in this action.  In other actions, J&J subpoenaed Dr. Moline for documents disclosing the identities of her research subjects after she advised J&J that the data was possessed and controlled by her employer, Northwell Health, Inc ("Northwell"), and protected under federal law as well as Dr. Moline's ethical/professional obligations.  J&J obtained that data from Northwell after it successfully appealed an Order from the New York State Supreme Court granting Dr. Moline's motion to quash J&J's subpoena.

**Pecos River states:**

Despite years of effort, J&J has received no documents from Dr. Moline regarding the subject matter of this litigation.  To the contrary, she has steadfastly refused to cooperate with any and all discovery efforts.  To date, the single document that J&J has successfully obtained – a list of names representing the subjects of her articles that sheds light on the knowingly false statements perpetuated by Dr. Moline – was sourced from her employer (Northwell Health).

9.    Proposed joint discovery plan:

(a)    Discovery is needed on the following subjects:

**Pecos River intends to seek discovery on the following topics:**

- (i) the falsity of the statements in Dr. Moline's Articles; and (ii) Dr. Moline's knowledge of the falsity or reckless disregard for the falsity of the statements—including but not limited to:
  - o   The preparation of the articles.
  - o   The articles' subjects' non-talc exposures to asbestos
  - o   Dr. Moline's litigation case files regarding the subjects of the articles.
  - o   Drafts of the articles.
  - o   Communications regarding the articles, including with her co-authors, the authors of the Emory Article, plaintiffs' attorneys, and others.
  - o   The process Dr. Moline used to determine whether her subjects had non-talc exposures to asbestos.
  - o   The peer review process of the articles.
  - o   The publication of the articles.

**Dr. Moline intends to seek discovery on the following topics:**

- The extent to which Johnson's Baby Powder and Shower to Shower was contaminated with asbestos from at least the 1920s until J&J either discontinued or sold off its talc-based products, including but not limited to:
  - o   Historical tests performed by or on behalf of J&J to analyze its talc for asbestos;

- o J&J's internal correspondence regarding the risk of asbestos in its talc;
- o J&J's external correspondence with third parties, including the FDA and Cosmetic, Toiletry, and Fragrance Association ("CTFA"), regarding the risk of asbestos in its talc;
- o J&J's support or promotion of studies/journal articles claiming that cosmetic talc was safe;
- o J&J's correspondence with and regarding individuals or institutions who claimed that its talc-based products contained asbestos;
- o J&J's efforts to destroy relevant documents and create affidavits attesting to the safety of its talc;
- o The FDA's 2019 finding that a sample of Johnson's Baby Powder contained asbestos; and
- o The adequacy of the CTFA J4-1 or other methods used by J&J to test its talc for asbestos.
- J&J's sale of Shower to Shower in 2012.
- The cause of the decline in J&J's sales of Baby Powder and Shower to Shower, including but not limited to consumer reaction to J&J's 2019 recall of Johnson's Baby Powder.
- J&J's decision to discontinue making Baby Powder from talc.
- J&J's damages allegedly attributed to the 2020 and 2023 articles.
- J&J's corporate structure and the extent to which J&J Parent and J&J Holdco control Pecos River.
- The manner in which Pecos River was purportedly assigned the right to assert a trade-libel claim.
- The factual bases for J&J's original and amended claims against Dr. Moline.
- J&J's purpose in suing Dr. Moline.

(b)   Discovery should ____ should not __X__ be conducted in phases or be limited to particular issues.  Explain:  N/A

(c)   Proposed schedule:

   (1)   Fed. R. Civ. P. 26 Disclosures:  June 2, 2026

   (2)   E-Discovery conference pursuant to L. Civ. R. 26.1(d):  June 18, 2026

   (3)   Service of initial written discovery: June 2, 2026[1]

---

[1] The parties agree that they are prepared to proceed with discovery related to all claims, notwithstanding Pecos River's stated intent to move to dismiss Dr. Moline's Counterclaim, but reserve all rights to object to specific discovery requests including but not limited to Pecos River's objections to discovery into the alleged presence of asbestos in talc as stated in response to Question 13. For the avoidance of doubt: Pecos River, J&J Holdco, and J&J do not agree to any discovery related to the alleged presence of asbestos in their products and expressly object to such discovery proceeding.  The parties agree that (i) they have conferred in good faith regarding whether discovery on the alleged presence of asbestos in J&J's products is relevant to the parties' claims and defenses; (ii) they have reached an impasse on the issue; and (iii) it would be helpful for the Court to resolve that threshold issue at the outset of discovery.

6

(4)    Maximum of __35__ Interrogatories by each party to each other party.[2]

(5)    Maximum of __15__ depositions to be taken by each party.

(6)    Motions to amend or to add parties to be filed by <u>60 days prior to the end date for fact discovery</u>.

(7)    Factual discovery to be completed by <u>June 2, 2027</u>

(8)    Plaintiff's/Counterclaim-Plaintiff's expert reports due on <u>July 2, 2027</u>

(9)    Defendant/Counterclaim-Defendants' expert reports due on <u>August 3, 2027</u>

(10)    Expert depositions to be completed by <u>September 3, 2027</u>

(11)    Dispositive motions to be served by <u>January 14, 2028.</u>

(d)    Set forth any special discovery mechanism or procedure requested:  None.

(e)    A pretrial conference may take place on <u>a date to be set by the Court</u>.

(f)    Trial date: <u>a date to be set by the Court</u> (__X__ Jury Trial; ____ Non-Jury Trial).

10.    Do you anticipate any special discovery needs (i.e. videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)?  Yes __X__ No____ .  If so, please explain.

> **Pecos River states:** Dr. Moline has represented that she no longer has access to her emails from the relevant time period. Pecos River may therefore need to seek discovery from her employer, Northwell Health, who has stated that it maintains an archive of all of its employees' emails.  Pecos River anticipates difficulty obtaining these emails and other documents from Northwell Health, which has resisted discovery into Dr. Moline's articles. It took Pecos River approximately 2 years and multiple motions to compel to obtain a single document from Northwell Health: the list of subjects of Dr. Moline's articles. These discovery efforts are discussed in more detail in Pecos River's Rule 60(b) Motion. *See* ECF 47-1 at 27-30.

> **Dr. Moline states:**  Dr. Moline has direct access to her emails for the prior two years.  Northwell Health may maintain possession, custody, and control of certain responsive documents, including e-mails, for earlier periods.

---

[2] The parties agree to treat Pecos River, J&J Holdco, and J&J Parent as a single party for purposes of the proposed schedule.

16354925v.6

11.     Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?  Yes __X__ No ___.

If so, how will electronic discovery or data be disclosed or produced?  Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

> **Pecos River states:** See Question 10 above regarding issues obtaining discovery from Dr. Moline's employer, Northwell Health

> **Dr. Moline states:** As noted above, Dr. Moline intends to seek discovery of J&J records dating back to the 1920s.  There will therefore be significant issues relating to the manner in which J&J has preserved records dating back to that period.  The parties anticipate discussing this and other electronic-discovery issues during their L. Civ. R. 26.1(d) e-discovery conference.

12.     Do you anticipate entry of a Discovery Confidentiality Order?  See L.Civ.R. 5.3(b) and Appendix S.  Yes.

13.     Do you anticipate any discovery problem(s) not listed above?  Describe.
Yes _X_ No __.

> **Dr. Moline states:**  As Pecos River's statement below makes clear, J&J intends to impermissibly block Dr. Moline from taking discovery on whether its talc-based products were contaminated with asbestos.  This is a central issue in this case.  It is directly relevant to Pecos River's trade-libel claim because Pecos River will have to prove that Dr. Moline made "false allegations concerning plaintiff's property or product." *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 245 n.7 (3d Cir. 2023).  Pecos River thus cannot establish a trade-libel claim by proving any false statement; it must demonstrate that the statement implied something false about its product, as Judge Castner has already noted.  *See Pecos River Talc LLC v. Moline*, 3:23-cv-02990, 2026 U.S. Dist. LEXIS 40697, at *44 n.10 (D.N.J. Feb. 27, 2026) (noting that a false statement in isolation could not support a trade-libel claim because it must disparage plaintiff's property, product, or business).

> The presence of asbestos in J&J's talc-based products also goes to several other issues in the case.  Dr. Moline asserted truth as an affirmative defense as well as a defense under New York Civil Rights Law § 76-a(2), which requires a plaintiff who files a SLAPP action to prove that the falsity of a defendant's statement was "material to the cause of action at issue."  Dr. Moline has further alleged as part of her Counterclaim that J&J's original and amended claims are without a substantial basis in fact and law under New York Civil Rights Law § 70-a(1) because J&J brought this lawsuit despite knowing that its talc-based products were indeed contaminated with asbestos.

8

16354925v.6

Particularly given the centrality of J&J's asbestos contamination to multiple aspects of the claims and defenses in this action, this discovery is also proportional to the needs of this case. Pecos River decided to sue Dr. Moline by alleging that each of her nearly-200 research subjects were exposed to asbestos other than through exposure to cosmetic talc. Those subjects had used talc-based products for decades. Pecos River has therefore expressly placed J&J's historical records on the "safety" of its talc-based products throughout this lengthy time period directly at issue. (Am. Cplt. ¶ 338.) J&J also has undoubtedly collected these documents in other actions (to the extent they still exist), so it is unlikely it could substantiate any burden caused by re-producing these same materials.

**Pecos River states:** Dr. Moline's response to Question 9(a) above makes clear that she intends to seek extensive discovery into whether Pecos River's and/or its predecessors' cosmetic talc products have ever been contaminated with asbestos and those entities' knowledge thereof. Such topics are neither relevant nor proportional to the needs of this trade libel case about certain knowingly false statements Dr. Moline has made regarding the asbestos exposure histories of the subjects of her articles. Nor are they relevant to Dr. Moline's Counterclaim. Pecos River, J&J Holdco, and J&J therefore object to any discovery into whether their predecessors' cosmetic talc products have ever been contaminated with asbestos.

The question of whether Pecos River's or its predecessors' cosmetic talc products have ever contained asbestos (which is denied) has nothing to do with whether those products were the *only* source of asbestos exposure for the subjects of her articles, which is what Dr. Moline has falsely claimed.

Dr. Moline could have written an article stating talcum powder products were *among the sources of asbestos* the subjects were exposed to and so talcum powder manufacturers should pay their fair share. But instead she falsely wrote that *no other* sources of asbestos exposure existed, when in fact they did. So whether asbestos is present in Johnson's Baby Powder or Shower to Shower is simply irrelevant.

Dr. Moline may believe that talcum powder products are contaminated with asbestos. But *regardless of whether they are or not*, she does not have the right to *make up* facts she thinks could support that belief. Imagine an alibi witness in a criminal case who falsely testifies, "John could not have committed the murder because he was in my house with me all day"—when in fact the two were never together. That is perjury, and it is no defense to say that other, totally separate evidence may tend to show that John in fact was not guilty for completely different reasons. The situation here is analogous. The question at issue in this case is whether the factual premise of the Articles that no subject had an alternative exposure is false. Other outside evidence regarding the separate conclusion Dr. Moline may have drawn from that false statement is irrelevant.

9

16354925v.6

Allowing discovery into this issue, which itself has been the subject of nationwide mass tort proceedings for over a decade, will transform this narrow trade libel suit into a sprawling expert-heavy products liability case, and based on the aforementioned tort proceedings, may unnecessarily add three plus weeks to the ultimate trial of this matter. This is precisely why, in the related *Emory* litigation, involving a an identical trade libel claim over a similar article by other authors, the court precluded discovery into this precise topic. *See Pecos River Talc LLC v. Emory*, 2025 WL 1921507, at *1 (E.D. Va. July 11, 2025). However, Pecos River anticipates the parties are unlikely to agree on this issue and that it will need to be resolved through motion practice at the outset of discovery.

14.    State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

         This case is not appropriate for voluntary arbitration or mediation at this time.

15.    Is this case appropriate for bifurcation?  Yes _____  No _X_.

16.    An interim status/settlement conference (with clients in attendance) should be held in a date to be set by the Court.

17.    The parties do ___ do not _X_ consent to the trial being conducted by a Magistrate Judge.

18.    Identify any other issues to address at the Rule 16 Scheduling Conference.  None.


/s/Peter Harvey            June 2, 2026
Attorney(s) for Plaintiff(s) / Date


/s/Kevin H. Marino            June 2, 2026
Attorney(s) for Defendant(s) / Date

16354925v.6