**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PECOS RIVER TALC LLC,<br>Plaintiff,<br>v.<br>DR. JACQUELINE MIRIAM MOLINE,<br>Defendant. | Case 3:23-cv-02990-GC-JTQ<br>Hon. Georgette Castner, U.S.D.J. |
| DR. JACQUELINE MIRIAM MOLINE,<br>Counterclaim-Plaintiff,<br>v.<br>PECOS RIVER TALC LLC; JOHNSON & JOHNSON HOLDCO (NA) INC.; and JOHNSON & JOHNSON,<br>Counterclaim-Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF DR. MOLINE'S MOTION TO COMPEL DISCOVERY

**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
*Attorneys for Defendant/*
*Counterclaim-Plaintiff*

On the Brief:
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
Erez J. Davy, Esq.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

A. Factual Background Relevant To The Discovery Disputes At Issue. ........ 3

B. Relevant Procedural History Leading To The Discovery Disputes At Issue. ........ 8

C. Discovery-Related Developments And The Discovery Requests At Issue In This Motion. ........ 11

LEGAL ARGUMENT ........ 14

I. THE DISCOVERY REQUESTS AT ISSUE SEEK DISCOVERY THAT IS HIGHLY RELEVANT TO MULTIPLE ISSUES IN THIS CASE. ........ 14

A. Whether J&J's Talc Was Contaminated With Asbestos Is Relevant To Multiple Issues In This Case. ........ 14

1. J&J Must Prove That The Articles Falsely Stated Or Implied That Its Products Were Contaminated With Asbestos. ........ 14

2. Asbestos Contamination Is Relevant To Multiple Additional Aspects Of J&J's Claim, Dr. Moline's Affirmative Defenses, And Dr. Moline's Counterclaim. ........ 19

B. The FDA's 2019 Findings And J&J's Ensuing Recall Are Highly Relevant To Multiple Issues In This Case. ........ 21

II. J&J CANNOT SUBSTANTIATE THE OBJECTIONS IT RAISED TO BLOCK DR. MOLINE FROM PURSUING RELEVANT DISCOVERY. ........ 24

CONCLUSION ........ 33

# TABLE OF AUTHORITIES

## Cases

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
No. 20-cv-200, 2022 U.S. Dist. LEXIS 215313
(E.D. Pa. Nov. 30, 2022)....................27

*Beisler v. Gomsy Media, LLC*,
No. 24-cv-10105, 2026 U.S. Dist. LEXIS 98181
(D.N.J. May 4, 2026)....................19

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
No. 11-cv-6353, 2012 U.S. Dist. LEXIS 86628
(S.D.N.Y. June 20, 2012) .................... 16, 19

*Bilinski v. Keith Haring Found., Inc.*,
632 F. App'x 637 (2d Cir. 2015)....................16

*Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*,
No. 25-cv-05980, 2026 U.S. Dist. LEXIS 138146
(S.D.N.Y. June 22, 2026)....................20

*Charter Practices Int'l, LLC v. Robb*,
No. 12-cv-17, 2014 U.S. Dist. LEXIS 8166
(D. Conn. Jan. 23, 2014)....................32

*Colandrea v. Town of Orangetown*,
490 F. Supp. 2d 342 (S.D.N.Y. 2007)....................17

*Columbus Life Ins. Co. v. Wilmington Trust, N.A.*,
344 F.R.D. 207 (D.N.J. 2023)....................14

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025)....................18

*CT Espresso LLC v. Lavazza Premium Coffees Corp.*,
No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760
(S.D.N.Y. Nov. 22, 2022)....................16

*Deibler v. Sanmedica Int'l, LLC*,
No. 19-cv-20155, 2021 U.S. Dist. LEXIS 247974
(D.N.J. Dec. 30, 2021)....................25

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
531 F. Supp. 3d 593 (E.D.N.Y. 2021)....................16

*Flooring Sys., Inc. v. Beaulieu Grp., LLC*,
No. 15-cv-1792, 2016 U.S. Dist. LEXIS 206664
(E.D. Mo. Oct. 20, 2016) ....................31

*Franchini v. Inv'rs Bus. Daily, Inc.*,
981 F.3d 1 (1st Cir. 2020) ....................30

*G.D. v. Kenny*,
205 N.J. 275 (2011) ....................19

*Hobbs v. Petroplex Pipe & Constr., Inc.*,
No. 17-cv-00030, 2018 U.S. Dist. LEXIS 127608
(W.D. Tex. Jan. 29, 2018) ....................31

*Intervet, Inc. v. Mileutis, Ltd.*,
No. 15-cv-1371, 2016 U.S. Dist. LEXIS 22165
(D.N.J. Feb. 24, 2016) ....................18

*Jaffe v. Prudential Ins. Co. of Am.*,
No. 19-cv-18067, 2020 U.S. Dist. LEXIS 241543
(D.N.J. Dec. 23, 2020) ....................24

*Jamal v. Ally Fin., Inc.*,
No. 24-cv-00894, 2026 U.S. Dist. LEXIS 190987
(D.N.J. Aug. 25, 2026) ....................24

*Kash Advance, LLC v. C&C Residential Props. Inc.*,
No. 24-cv-6351, 2025 U.S. Dist. LEXIS 262263
(S.D.N.Y. Dec. 18, 2025) ....................33

*Keybank Nat'l Ass'n v. Tracey Heun Brennan & Co.*,
No. 05-cv-4734, 2005 U.S. Dist. LEXIS 31063 (D.N.J. Dec. 2, 2005) ....................25

*Kohri v. Wall Twp.*,
No. 22-cv-5954, 2026 U.S. Dist. LEXIS 170618
(D.N.J. July 31, 2026) ....................14

*Lifescan, Inc. v. Smith*,
No. 17-cv-5552, 2022 U.S. Dist. LEXIS 254682
(D.N.J. July 21, 2022) .................... 14, 26

*Lifescan, Inc. v. Smith.*,
No. 17-cv-5552, 2025 U.S. Dist. LEXIS 113750 (D.N.J. Mar. 4, 2025). ....................26

*Lincoln Adventures, LLC v. Certain Underwriters at Lloyd's London Members of Syndicates*,

No. 08-cv-235, 2020 U.S. Dist. LEXIS 262669
(D.N.J. Oct. 14, 2020) ... 30

*Lloyd v. Johnson & Johnson*,
JCCP No. 4872, 2017 Cal. Super. LEXIS 9096
(Cal. Super. Ct., Nov. 17, 2017) ... 3, 4

*Losurdo v. Asbestos Free, Inc.*,
1 N.Y.3d 258 (2003) ... 20

*LTL Mgmt. LLC v. Moline*,
No. 23-cv-02990, 2024 U.S. Dist. LEXIS 114243
(D.N.J. June 28, 2024) ... 16

*Matter of Belcher v. Dominican Vil. Inc.*,
246 A.D.3d 1251 (N.Y. App. Div. 2026) ... 20

*Matter of Conliffe v. Darden Rest.*,
187 A.D.3d 1398 (N.Y. App. Div. 2020) ... 20

*Microsoft Corp. v. Softicle.com*,
No. 16-cv-02762, 2017 U.S. Dist. LEXIS 163453
(D.N.J. Oct. 2, 2017) ... 24

*Navarra v. Marlborough Gallery, Inc.*,
820 F. Supp. 2d 477 (S.D.N.Y. 2011) ... 17

*Navarro v. IHOP Properties, Inc.*,
134 Cal. App. 4th 834 (Cal. Ct. App. 2005) ... 30

*Noah Bank v. Lee*,
481 N.J. Super. 412 (App. Div. 2025) ... 15, 19

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
63 F.4th 240 (3d Cir. 2023) ... 15, 18, 19

*Patel v. Soriano*,
369 N.J. Super. 192 (App. Div. 2004) ... 18

*Pecos River Talc LLC v. Moline*,
No. 23-cv-02990, 2026 U.S. Dist. LEXIS 40697
(D.N.J. Feb. 27, 2026) ... 17

*Peden v. Whitney*,
No. 26-cv-00013, 2026 U.S. Dist. LEXIS 251320
(N.D. Ca. Nov. 2, 2026) ... 31

*Progressive Health v. Indegene, Inc.*,
No. 20-cv-10106, 2023 U.S. Dist. LEXIS 243666
(D.N.J. Feb. 22, 2023) ....................29

*Reeves v. Associated Newspapers, Ltd.*,
232 A.D.3d 10 (N.Y. App. Div. 2024) ....................30

*Romaine v. Kallinger*,
109 N.J. 282 (1988) ....................15

*Ryan v. United Recovery & Remarketing, LLC*,
No. 21-cv-01324, 2022 U.S. Dist. LEXIS 112914
(E.D. Mo. June 27, 2022) ....................33

*Satanic Temple, Inc. v. Newsweek Digit. LLC*,
177 F.4th 202 (2d Cir. 2026) ....................20

*Schick v. Cintas Corp.*,
No. 17-cv-7441, 2020 U.S. Dist. LEXIS 66420
(D.N.J. Apr. 15, 2020)....................25

*Soobzokov v. Lichtblau*,
No. 15-cv-6831, 2016 U.S. Dist. LEXIS 18103
(D.N.J. Feb. 16, 2016) ....................15

*Taro Pharms. v. Lupin Ltd.*,
No. 18-cv-4225, 2019 U.S. Dist. LEXIS 41915
(D.N.J. Mar. 12, 2019)....................24

*Tradeinvest Asset Mgmt. Co. Bvi Ltd. v. Wrigley*,
No. 22-cv-80360, 2024 U.S. Dist. LEXIS 251328
(S.D. Fla. Oct. 17, 2024)....................31

*Verizon Directories Corp. v. Yellow Book United States, Inc.*,
309 F. Supp. 2d 401 (E.D.N.Y. 2004) .................... 18, 22

*Wolfe v. Gooding & Co.*,
No. 14-cv-4728, 2017 U.S. Dist. LEXIS 146147
(D.N.J. Sept. 11, 2017) .................... 18, 22

*Younes v. 7-Eleven, Inc.*,
312 F.R.D. 692 (D.N.J. 2015)....................26

**Statutes**

New York Civil Rights Law § 70-a .................... 10, 20, 23

New York Civil Rights Law § 76-a .................... 10, 20

**Other Authorities**

Emily Field,
*J&J, Bausch Reach Talc Litigation Deal*,
LAW360, Apr. 23, 2019 ........................................................................22

FDA,
*Johnson & Johnson Consumer Inc. to Voluntarily Recall a Single Lot of Johnson's Baby Powder in the United States*,
Oct. 18, 2019 ........................................................................................9

Gardiner Harris,
NO MORE TEARS: THE DARK SECRETS OF JOHNSON & JOHNSON
(Random House 2025) ..........................................................................6

Johnson & Johnson,
*Johnson & Johnson Consumer Health announces discontinuation of talc-based Johnson's Baby Powder in U.S. and Canada*
(May 19, 2020) .....................................................................................7

Lisa Girion,
*Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder*,
REUTERS, Dec. 14, 2018 ........................................................................4

Restatement (Second) of Torts § 634 ......................................................19

Yahoo Finance,
*Johnson & Johnson (JNJ) Tops $100 Billion In Annual Revenue For The First Time*, July 15, 2026 ..........31

**Rules**

Fed. R. Civ. P. 26 ........................................................................ 14, 29, 30

Dr. Jacqueline Moline respectfully submits this memorandum of law and the accompanying Certification of Kevin H. Marino (the "Marino Cert.") in support of her motion to compel discovery from Pecos River Talc LLC ("Pecos River") and Johnson & Johnson and Johnson & Johnson Holdco (NA) Inc. (together with Pecos River, "J&J").

**PRELIMINARY STATEMENT**

On this motion, J&J seeks to prevent Dr. Moline from taking discovery on the question at the heart of this case—whether its talc products were contaminated by asbestos. J&J says that discovery is irrelevant. To the contrary, it is essential. To prevail on its trade-libel claim, J&J must prove that Dr. Moline *falsely* disparaged its products. If, as Dr. Moline maintains (and numerous juries have found), J&J talc products contain cancer-causing asbestos, her articles did not falsely disparage J&J. She is thus undeniably entitled to discovery on that issue.

Whether J&J's talc products were carcinogenic also bears on several ancillary issues. First, for J&J to establish the special damages element of its trade-libel claim, it must prove that Dr. Moline made a false statement about its products *that caused it to lose sales or customers*. Absent such a false statement, J&J cannot tie its losses to anything Dr. Moline said. Second, under New York's anti-SLAPP laws, a plaintiff must prove that a defendant made a false statement that is *material* to its claim. Any false statement in the articles could only be material if they falsely

implied that J&J's products contained asbestos. Third, the Counterclaim alleges that J&J brought this lawsuit to intimidate and harass Dr. Moline rather than vindicate any legitimate concern about its products. If J&J knew that its products were contaminated with asbestos, it could only have brought this lawsuit for an *improper* purpose.

Dr. Moline's discovery requests regarding the FDA's 2019 asbestos finding and J&J's Baby Powder recall are also relevant to causation and damages. J&J has no basis to argue otherwise. In fact, J&J has expressly alleged that Dr. Moline's online publication of her first article in October 2019 caused consumers to stop buying its products and ultimately led J&J to stop making Baby Powder from talc. Yet that is the same month the FDA found asbestos in Johnson's Baby Powder and J&J issued a recall for that product. J&J has thereby made the FDA's 2019 finding and J&J's recall key issues in this case. Dr. Moline is plainly entitled to discovery regarding them.

Because the discovery requests at issue seek highly relevant documents, J&J should be compelled to produce them. None of its remaining objections counsel otherwise. These objections consist primarily of stock claims that the requests are unduly burdensome, overbroad, vague, and disproportionate to the issues at hand. But the requests are clear and properly tailored to the issues in this case. The requests for historical information about asbestos contamination are also limited to

documents that J&J has produced in prior litigation, meaning that J&J only has to run appropriate searches across past productions to collect them. Doing so will impose no meaningful burden. J&J plainly has the resources to comply with these modest discovery requests.

For these reasons, amplified below, this Court should compel J&J to produce documents responsive to the production requests at issue.

## BACKGROUND

### A. Factual Background Relevant To The Discovery Disputes At Issue.[1]

J&J began manufacturing and selling Johnson's Baby Powder in the 1890s. *See Lloyd v. Johnson & Johnson*, JCCP No. 4872, 2017 Cal. Super. LEXIS 9096, at *17 (Cal. Super. Ct., Nov. 17, 2017); *see also* Wikipedia, *Baby powder*.[2] It made this product from talc, a mineral found naturally alongside asbestos. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 21, 26.) Asbestos is a known carcinogen with a long latency period, meaning that a disease caused by asbestos can manifest decades after exposure. (*See id.* ¶ 24.) Once intermingled, talc and asbestos are impossible to completely separate. (*See id.* ¶ 27.)

By 1958, J&J knew that its talc was contaminated with asbestos but concealed

[1] This factual background is drawn in part from the Counterclaim, which cites in-depth investigative reporting and other sources to support its allegations.

[2] *Available at* https://en.wikipedia.org/wiki/Baby_powder.

that fact by promoting studies that falsely claimed it was safe, misleading regulators, destroying and fabricating evidence, and attacking scientists who found asbestos in its products. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 28-40.) In fact, J&J continued to expand its talc-based products, debuting Shower to Shower in the 1960s. *See Lloyd*, 2017 Cal. Super. LEXIS 9096, at *17.

J&J persisted in manufacturing Baby Powder and Shower to Shower from talc for the remainder of the 20th century until it divested itself of Shower to Shower in 2012 and decided to make Baby Powder from corn starch in 2020. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 21, 62.) Throughout this time, J&J received laboratory tests and other evidence indicating that its talc was contaminated with asbestos. For example, in October 1972, J&J received a laboratory report from Walter C. McCrone Associates, Inc. ("McCrone") reporting that up to approximately .5% of the J&J talc that it sampled contained tremolite, a type of asbestos.[3] (*See* Marino Cert. Ex. 5, at Ex. B, at JNJ 000260834-35.) Dissatisfied with that finding, a J&J employee reportedly wrote the words "DO NOT USE" on that report, (*id.* at JNJ 000260833), and asked McCrone to issue a new one. *See* Gardiner Harris, NO MORE TEARS: THE DARK SECRETS OF JOHNSON & JOHNSON (Random House 2025) 33. McCrone then

---

[3] *See* Lisa Girion, *Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder*, REUTERS, Dec. 14, 2018 (explaining that tremolite is "one of the six minerals that in their naturally occurring fibrous form are classified as asbestos."), https://www.reuters.com/investigates/special-report/johnsonandjohnson-cancer/.

"modified" its thinking to issue a revised report finding just a "few tremolite rods." (Marino Cert. Ex. 5, at Ex. C, at JOJO-MA2546-01488.)

Around the same time that it received the McCrone reports, J&J received a report from the University of Minnesota that also tested specimens of its "powdered talc." (Marino Cert. Ex. 5, at Ex. A, at JOJO-MA2546-01283.) The professor who conducted that analysis did not mince words. In a handwritten summary of his conclusions, he reported finding "incontrovertible asbestos." (*See id.* at Ex. A, JOJO-MA2546-00146.) *See also* Lisa Girion, *Johnson & Johnson*. Other tests conducted during that time and the decades that followed also reported finding asbestos in J&J's talc, sometimes at "rather high" levels. *See* Girion, *Johnson & Johnson.* Rather than address that problem by recalling its talc products, J&J hid these results from the FDA and the public. *See id.*

J&J's misconduct first came to light more than a decade ago through litigation and media reports. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 41-53.) Particularly notable was a July 2018 jury verdict awarding 22 women and their families $550 million in compensatory and $4.14 billion in punitive damages against J&J, finding that asbestos in J&J's products caused their ovarian cancers. (*Id.* ¶ 43.)

Another pivotal moment occurred in October 2019, when the FDA found asbestos in a sample of Baby Powder that it tested. Specifically, on October 18, 2019, the FDA advised consumers to stop using Baby Powder from the affected lot;

that same day, J&J issue a voluntary recall from that lot. (Marino Cert. Ex. 1, Counterclaim ¶¶ 52-53.) Internal notes produced by J&J in a different lawsuit and made publicly available[4] strongly indicate that these events caused consumers to stop buying Baby Powder and J&J to stop making Baby Powder from talc. In those notes, a J&J executive memorialized the consumer backlash to the FDA finding and recall, the significant impact of those events on J&J's revenues, and J&J's ultimate decision to stop selling talc-based Baby Powder, noting:

- "Lots of feedback from commercial org + customers."
- "[M]any customers may return all product. 'I'm Done.'"
- "Can we shut down the program . . . No[t] adequately monitored + controlled"
- "Press Release: JNJ stock halted on NYSE – was unexpected"
- "Decision Process Moving Forward . . . Stop selling in US or Everywhere."

(*See* Marino Cert. Ex. 4, at p.8, 10/19/19 notes; *id.* at p.27, 10/21/19 notes; *id.* at p.53, 10/29/19 notes; *id.* p.75, 12/17/19 minutes.) And indeed, on May 19, 2020—approximately six months after its recall—J&J announced that it would discontinue talc-based Baby Powder in the United States and Canada. *See* Johnson & Johnson,

---

[4] *See* https://no-more-tears.org/Montandon-2019.pdf. *See also* Gardiner Harris, NO MORE TEARS: THE DARK SECRETS OF JOHNSON & JOHNSON (Random House 2025) 371 n.82 (citing this source and reporting that it consists of the handwritten notes of J&J executive Carol Montandon).

*Johnson & Johnson Consumer Health announces discontinuation of talc-based Johnson's Baby Powder in U.S. and Canada* (May 19, 2020).[5]

Despite the FDA's finding and the extensive evidence that J&J's talc contained asbestos, J&J has refused to accept responsibility for its conduct. Rather, it has gone on the offensive, attacking the doctors and researchers who have published articles opining that prolonged exposure to cosmetic talc could cause mesothelioma. Dr. Moline is one such doctor. She is a highly respected New York physician and researcher employed by Northwell Health, Inc. ("Northwell"), New York's largest healthcare provider, who has been targeted by J&J for publishing two articles implying that J&J's talc-based products were contaminated with asbestos.

The first journal article at issue, titled *Mesothelioma Associated With the Use of Cosmetic Talc* ("JOEM Article"), appeared online in October 2019 and was published in the January 2020 edition of the Journal of Occupational and Environmental Medicine. (*See* Marino Cert. Ex. 2.) The second journal article, titled *Exposure to cosmetic talc and mesothelioma* ("JOMT Article" and together with the JOEM Article, the "Articles"), was published in the January 2023 edition of the Journal of Occupational Medicine and Toxicology. (*See id.* Ex. 3, JOMT

[5] *Available at* https://www.jnj.com/our-company/johnson-johnson-consumer-health-announces-discontinuation-of-talc-based-johnsons-baby-powder-in-u-s-and-canada.

Article.) Dr. Moline's central thesis in both articles was that exposure to cosmetic talc could cause mesothelioma. She supported that thesis by, among other things, analyzing the asbestos-exposure histories of nearly 200 plaintiffs in personal-injury lawsuits who had alleged that Johnson's Baby Powder and other cosmetic-talc products caused their mesothelioma. Consistent with her ethical and professional obligations, Dr. Moline anonymized her research subjects and refused to disclose their identities. (*See* Marino Cert. Ex. 1, Counterclaim ¶ 83.)

Dr. Moline found that many of her research subjects had prolonged exposures to cosmetic-talc products while having no other known exposures to asbestos. (*See* Marino Cert. Ex. 2, JOEM Article at Table 1; *id.* Ex. 3, JOMT Article at Table 2.) In some cases, Dr. Moline reported that her research subjects could have used cosmetic-talc products dating as far back as the 1920s. (*See, e.g.*, *id.* Ex. 2, JOEM Article, Table 1, case #30 (listing subject who was 88 years old upon diagnosis in 2016, meaning that the patient was born in or about 1928).) Based on these and other findings, the Articles made the salutary recommendation that clinicians ask patients presenting with mesothelioma about their use of cosmetic talc when examining their exposures to asbestos. (*See* Marino Cert. Ex. 1, Counterclaim ¶ 69.)

### B. Relevant Procedural History Leading To The Discovery Disputes At Issue.

J&J commenced this action in May 2023 by having Pecos River's predecessor-in-interest file a three-count complaint against Dr. Moline for trade

libel, fraud, and a violation of the Lanham Act. At that time, J&J's core contention was that Dr. Moline's conclusion—that her subjects had no known exposure to asbestos other than through their use of cosmetic talc—was false because those subjects were exposed to asbestos through alternative means. (*See* Cplt. (ECF No. 1) ¶¶ 3, 177.) J&J alleged that the Articles harmed it by disparaging the safety of its talc-based products, causing consumers to stop buying them and thus diminishing its sales and profits. (*See, e.g.*, *id.* ¶¶ 199, 220, 225, 232, 239.) J&J went so far as to imply that the October 2019 online publication of the JOEM Article caused its customers to express concerns over Johnson's Baby Powder (*see id.* ¶ 223), making no mention of the Baby Powder recall it initiated that same month. *See* FDA, *Johnson & Johnson Consumer Inc. to Voluntarily Recall a Single Lot of Johnson's Baby Powder in the United States*, Oct. 18, 2019.[6]

On June 28, 2024, the Court dismissed these claims at the pleading stage, holding that they challenged constitutionally protected opinions that were not actionable as a matter of law. (*See* Op. (ECF No. 40), at 30.)

But J&J persisted. In April 2025, after extensive litigation in the New York courts, it obtained from Northwell a list identifying the research subjects analyzed

---

[6] *Available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/johnson-johnson-consumer-inc-voluntarily-recall-single-lot-johnsons-baby-powder-united-states

in the Articles. (*See* Marino Cert. Ex. 1, Counterclaim ¶ 83.) It then moved to reopen this case and amend its trade-libel claim, reframing it as the freshly minted allegation that Dr. Moline "fabricated" the data supporting her analysis. (*See* Am. Cplt. (ECF No. 47-4) ¶ 101.)

On February 27, 2026, the Court granted J&J's motion to reopen, limiting J&J's trade-libel claim to one that Dr. Moline fabricated her underlying data. (*See* Op. (EC No. 60), at 29.)

On April 10, 2026, Dr. Moline filed her Answer to the Amended Complaint. (ECF No. 67.) The Answer denied J&J's allegations and included a number of affirmative defenses relevant to this motion. One invoked New York Civil Rights Law § 76-a(2), a component of New York's anti-SLAPP laws, which requires a SLAPP plaintiff to prove by clear and convincing evidence that a false statement was "material to the cause of action at issue." (*See id.* at 100 (Seventh Affirmative Defense).) Another asserted that the claim was meritless because the challenged statements were true or substantially true. (*See id.* (Sixth Affirmative Defense).)

Dr. Moline also asserted a counterclaim under New York Civil Rights Law § 70-a(1), another component of New York's anti-SLAPP laws. That provision entitles a defendant sued for expressing opinions on a matter of public interest to file a counterclaim against any person who "commenced or continued such action" without a "substantial basis in fact and law. *See id.* § 70-a(1)(a). The statute further

entitles such a defendant to compensatory and punitive damages if the covered action was commenced or continued for the purpose of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." *See id.* § 70-a(1)(b)-(c).

The Counterclaim alleged that Dr. Moline is entitled to legal fees and damages, both compensatory and punitive, because J&J filed and continued this baseless action to intimidate and punish her for exercising her free-speech rights on a matter of vital interest to the medical community and the public at large. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 1, 121-123.) The Counterclaim specifically alleges that J&J's claim is meritless for multiple reasons, including because (i) J&J's talc-based products were indeed contaminated with asbestos and (ii) J&J cannot prove that Dr. Moline's journal articles caused it to lose any sales on Baby Powder or Shower to Shower, which it sold to another company in 2012. (*See id.* ¶¶ 93-96.) It further alleges that J&J's action is designed to chill medically valuable research rather than vindicate any legitimate interest about the safety of its products. (*See id.* ¶¶ 3, 28-39, 98-100, 121-123.)

On June 12, 2026, J&J moved to dismiss the Counterclaim. That motion is pending.

### C. Discovery-Related Developments And The Discovery Requests At Issue In This Motion.

On June 2, 2026, the parties submitted their Joint Proposed Discovery Plan,

which they amended on September 30, 2026. (ECF Nos. 75 & 86.) In that plan, the parties represented that they were prepared to proceed with discovery notwithstanding J&J's motion to dismiss the Counterclaim. (ECF No. 86, § 9(c)(3) n.2.) They further confirmed their impasse on the main dispute presented here—*i.e.*, whether "discovery on the alleged presence of asbestos in J&J's products is relevant to the parties' claims and defenses"—and agreed that it would be helpful to resolve that threshold issue at the outset of discovery. (*Id.*)

Also on June 2, 2026, Dr. Moline served her First Set of Requests for Production ("RFPs") on J&J. (*See* Marino Cert. Ex. 5.) Five of the RFPs are directed solely to the issue of whether J&J's talc was contaminated with asbestos:

- RFP No. 1 asked J&J to produce the reports it produced in prior cosmetic-talc actions that examined its talc for asbestos;
- RFP No. 2 asked J&J to produce previously-produced internal communications regarding the presence of asbestos in its talc;
- RFP Nos. 3-4 asked J&J to produce previously-produced communications regarding the University of Minnesota and McCrone reports discussed above that found asbestos in J&J's cosmetic talc; and
- RFP No. 5 asked J&J to produce trial exhibits and trial transcripts in five ovarian-cancer/mesothelioma lawsuits regarding the presence of asbestos in its talc.

Two other RFPs relate to the issue of asbestos contamination as well as the causation and damages elements of J&J's trade-libel claim. More specifically, RFP No. 7 asks J&J to produce its communications with the FDA regarding its 2019

finding that Johnson's Baby Powder contained asbestos. (Marino Cert. Ex. 5.) RFP No. 8 asked J&J to produce its internal communications and documents relating to the FDA's asbestos finding and J&J's ensuing Baby Powder recall. (*See id.*)

On August 5, 2026, J&J served its responses and objections to Dr. Moline's RFPs. (Marino Cert. Ex. 6.) In its responses to RFP Nos. 1-5 and 7-8, J&J refused to produce any responsive documents on relevance grounds. (*See id.*) It also claimed that these requests were overbroad, vague, ambiguous, unduly burdensome, disproportionate to the needs of this case, and in some instances sought "cloned" discovery. (Marino Cert. Ex. 6, RFP Response Nos. 1-5, 7-8.)

On October 16, 2026, Dr. Moline served J&J with a deficiency letter confirming the parties' impasse over the relevance of asbestos contamination and explaining why none of J&J's other objections to RFP Nos. 1-5 and 7-8 had merit. (*See* Marino Cert. Ex. 8.) On October 30, 2026, J&J served a responding letter in which it adhered without explanation to each objection it lodged in response to those RFPs. (*See id.* Ex. 9.) Through follow-up correspondence, the parties resolved their remaining disagreements, thereby narrowing this motion to RFP Nos. 1-5 and 7-8. (*See id.* Exs. 10-11.)

By Order dated November 4, 2026, the Court entered the parties' proposed briefing schedule on this motion to compel. (*See* ECF No. 99.) This motion follows.

# LEGAL ARGUMENT

## I. THE DISCOVERY REQUESTS AT ISSUE SEEK DISCOVERY THAT IS HIGHLY RELEVANT TO MULTIPLE ISSUES IN THIS CASE.

The Federal Rules of Civil Procedure "allow broad and liberal discovery." *Lifescan, Inc. v. Smith*, No. 17-cv-5552, 2022 U.S. Dist. LEXIS 254682, at *36 (D.N.J. July 21, 2022); *see also Kohri v. Wall Twp.*, No. 22-cv-5954, 2026 U.S. Dist. LEXIS 170618, at *4 (D.N.J. July 31, 2026) ("Rule 26 is liberally construed to favor disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." (cleaned up)). "Importantly, Rule 26 is to be construed liberally in favor of disclosure since relevance is a broader inquiry at the discovery stage than at trial." *Lifescan*, 2022 U.S. Dist. LEXIS 254682, at *36; *see also Columbus Life Ins. Co. v. Wilmington Trust, N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) ("[C]ourts construe relevancy broader at the discovery stage and more liberally in favor of disclosure."). Thus, in "cases where the party seeking discovery demonstrates that the information sought is relevant to the subject matter and may lead to admissible evidence, discovery should be provided." *Lifescan*, 2022 U.S. Dist. LEXIS 254682, at *36. Dr. Moline easily satisfies that standard.

### A. Whether J&J's Talc Was Contaminated With Asbestos Is Relevant To Multiple Issues In This Case.

#### 1. J&J Must Prove That The Articles Falsely Stated Or Implied That Its Products Were Contaminated With Asbestos.

Whether J&J's cosmetic talc was contaminated with asbestos is the central

issue in this case. J&J alleges that the Articles "disparag[ed]" and "impugned the safety of" Johnson's Baby Powder and Shower to Shower by implying that they were contaminated with asbestos. (Am. Cplt. (ECF No. 47-4) ¶¶ 1, 28-29, 32, 301, 323, 335, 338-340.) J&J must prove that this allegedly defamatory implication is false in order to sustain its trade-libel claim.

It is black-letter law that a trade-libel plaintiff must prove that a defendant made a "***false*** allegation[] concerning plaintiff's property or product." *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 245 n.8 (3d Cir. 2023) (cleaned up; emphasis added). The New Jersey Appellate Division reiterated this fundamental principle more recently in *Noah Bank v. Lee*, 481 N.J. Super. 412, 434 (App. Div. 2025), when it stated that "[f]alsity is an element of trade libel." This same principle is well established in the analogous law of defamation, which requires a plaintiff to prove that a defendant made a defamatory statement that "is false and injurious to the reputation of another." *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988) (cleaned up); *accord, e.g.*, *Soobzokov v. Lichtblau*, No. 15-cv-6831, 2016 U.S. Dist. LEXIS 18103, at *6 (D.N.J. Feb. 16, 2016) (explaining that "a defamatory statement must be false" to be actionable); *see also Pacira*, 63 F.4th at 244 (explaining that defamation and trade libel are "similar causes of action [that] remedy different harms"); *Noah Bank*, 481 N.J. Super. at 434 (explaining that trade libel and defamation are "aligned" on the falsity requirement).

New York law is in accord.[7] That law similarly makes clear that "an action for trade libel imposes liability on ***false*** statements about the plaintiff's products o[r] services." *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760, at *3 (S.D.N.Y. Nov. 22, 2022) (emphasis added).[8] In fact, courts have found it "axiomatic that a claim for commercial disparagement—which New York recognizes as the tort of either trade libel or disparagement of goods—rises and falls on the truth or falsity of a statement that is actually made." *Bel Canto Design, Ltd. v. SSS HiFi, Inc.*, No. 11-cv-6353, 2012 U.S. Dist. LEXIS 86628, at *37 (S.D.N.Y. June 20, 2012) (cleaned up). Similarly "axiomatic" is the requirement that a defamation plaintiff prove that the challenged statement is both

[7] Dr. Moline is a New York resident protected by New York law. Whether J&J's trade-libel claim is governed by New York or New Jersey law is unclear, but the Court need not engage in a conflicts analysis where, as here, there is no conflict between the laws of those states. *See LTL Mgmt. LLC v. Moline*, No. 23-cv-02990, 2024 U.S. Dist. LEXIS 114243, at *11 n.10 (D.N.J. June 28, 2024) (applying New Jersey law in the absence of an identified conflict between New Jersey and New York law). Thus, New York law is relevant to confirm the contours of the tort under New Jersey law. To the extent a conflict exists, New York has a greater interest in applying its law for the reasons set forth by Dr. Moline in her opposition to J&J's motion to dismiss the Counterclaim.

[8] *See also, e.g.*, *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015) ("To recover for product disparagement under New York law, plaintiffs must show defendants' publication of a defamatory statement directed at the quality of their goods"); *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 608 (E.D.N.Y. 2021) ("Under New York law, trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property." (cleaned up)).

"false and defamatory." *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 351 (S.D.N.Y. 2007) (cleaned up); *accord Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 489 (S.D.N.Y. 2011).

J&J misunderstands this fundamental principle; it asserts that the falsity element in this case is limited to whether Dr. Moline made an actionable statement in the Articles. That is a necessary but not sufficient basis for J&J to prove its claim. Rather, it must also prove that the allegedly defamatory implication of these statements—that J&J's talc-based products were contaminated with asbestos—is also false. This Court recognized this fundamental precept when it expressed skepticism that J&J could prove a trade-libel claim by pointing to an actionable misstatement in the Articles "in isolation." *Pecos River Talc LLC v. Moline*, No. 23-cv-02990, 2026 U.S. Dist. LEXIS 40697, at *44 n.10 (D.N.J. Feb. 27, 2026). It cannot. Rather, it must go on to establish that the actionable misstatement falsely disparaged its products. *See id.* (citing authority requiring a plaintiff to show that a false statement disparaged a plaintiff's goods or business).

That a plaintiff must prove that a false statement said or implied something false about its product only makes sense. To prove a trade-libel claim, a plaintiff must also establish that a false statement caused it special damages, *i.e.*, pecuniary loss "'that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers.'" *Wolfe v. Gooding & Co.*, No. 14-cv-4728,

2017 U.S. Dist. LEXIS 146147, at *10 (D.N.J. Sept. 11, 2017) (quoting *Patel v. Soriano*, 369 N.J. Super. 192, 248-49 (App. Div. 2004)). These special damages must be "the natural and direct result of the false publication." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-cv-1371, 2016 U.S. Dist. LEXIS 22165, at *18 (D.N.J. Feb. 24, 2016) (cleaned up); *see also Verizon Directories Corp. v. Yellow Book U.S., Inc.*, 309 F. Supp. 2d 401, 406 (E.D.N.Y. 2004) ("Special damages are an integral part of a product disparagement claim. Special damages are pecuniary losses (including loss of sales) resulting from a defendant's allegedly wrongful conduct."). Similarly, for a plaintiff to have constitutional standing, the injury it complains of must be "fairly traceable to the challenged conduct of the defendant." *Cook v. GameStop, Inc.*, 148 F.4th 153, 157 (3d Cir. 2025) (cleaned up). None of these requirements could be satisfied unless a trade-libel plaintiff proved that a defendant made a false statement about its product.

J&J's position, by contrast, would mean that the tort would have no limiting principle. Under J&J's reasoning, it would be able to sue Dr. Moline for any false statement in her article—for example, if she misstated her credentials—regardless of whether that misstatement implied anything false about its products. That result would be particularly problematic in the context of scholarly articles, which enjoy broad First Amendment protections to ensure that authors "are not punished for exercising their First Amendment right to express their thoughts." *Pacira*, 63 F.4th

at 246 n.11 (cleaned up). J&J's misstatement of the law should be rejected and its relevance objection overruled.

### 2. Asbestos Contamination Is Relevant To Multiple Additional Aspects Of J&J's Claim, Dr. Moline's Affirmative Defenses, And Dr. Moline's Counterclaim.

Even if J&J were right about the falsity element, its relevance objection would fail because asbestos contamination is independently relevant to several other issues in this case. ***First***, "because the truth is absolutely protected under the First Amendment from defamation liability," it is always a defense to a defamation and trade-libel claim. *Noah Bank*, 481 N.J. Super. at 431-432 (cleaned up).[9] Dr. Moline has asserted truth as a defense. (*See* Answer (ECF No. 67) Sixth Affirmative Defense.) Thus, even if J&J did not have to prove that the Articles implied something false about its products, Dr. Moline would be entitled to prove that the challenged implication is true.

***Second***, a trade-libel plaintiff must prove that a defendant's "false allegations concerning plaintiff's property or product . . . caus[ed] special damages." *Pacira*,

[9] *See also G.D. v. Kenny*, 205 N.J. 275, 293 (2011) ("In a defamation action, truth is not only a common-law defense, but also absolutely protected under the First Amendment." (cleaned up)); *Beisler v. Gomsy Media, LLC*, No. 24-cv-10105, 2026 U.S. Dist. LEXIS 98181, at *9 (D.N.J. May 4, 2026) (same); *Bel Canto*, 2012 U.S. Dist. LEXIS 86628, at *37 (explaining that truth is a "complete defense to a commercial disparagement or defamation claim."); *see generally* Restatement (Second) of Torts § 634 ("The publisher of a statement injurious to another is not liable for injurious falsehood if the facts stated, or implied as justification for an opinion stated, are true.").

63 F.4th at 245 n.8 (cleaned up); *accord Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*, No. 25-cv-05980, 2026 U.S. Dist. LEXIS 138146, at *9 (S.D.N.Y. June 22, 2026). By showing that J&J's talc-based products were contaminated with asbestos, Dr. Moline will not only defeat the falsity element of J&J's claim but will also show that J&J cannot prove that any false statement caused its alleged losses.

***Third***, New York's anti-SLAPP laws require a plaintiff to prove by "clear and convincing evidence" that the falsity of a communication was "material to the cause of action at issue." N.Y. Civil Rights Law § 76-a(2); *Satanic Temple, Inc. v. Newsweek Digit. LLC*, 177 F.4th 202, 212-213 (2d Cir. 2026) (holding that the protections afforded by § 76-a apply in diversity actions). New York courts have generally interpreted a "material" fact to mean one that is "significant or essential to the issue or matter at hand." *Losurdo v. Asbestos Free, Inc.*, 1 N.Y.3d 258, 265 (2003) (cleaned up); *accord Matter of Belcher v. Dominican Vil. Inc.*, 246 A.D.3d 1251, 1252 (N.Y. App. Div. 2026); *Matter of Conliffe v. Darden Rest.*, 187 A.D.3d 1398, 1399 (N.Y. App. Div. 2020). Statements in Dr. Moline's journal articles could not be significant or essential to J&J's claim unless they implied that its talc-based products were unsafe. So the question of whether those products contained asbestos is a central inquiry under New York Civil Rights Law § 76-a(2).

***Fourth***, Dr. Moline alleges that she is entitled to compensatory and punitive damages under New York Civil Rights Law § 70-a(1) because J&J has commenced

and continued this action "for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting" Dr. Moline's exercise of her free-speech and petition rights. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 113-114.) The legislative history behind the 2020 amendments to New York's anti-SLAPP laws recognize that the "objective of a SLAPP suit is not to defend one's reputation" or "vindicate any particular right" but rather to harass a defendant. (*See* Marino Cert. Ex. 12, Bill Jacket, L. 2020, ch. 250, at 7, 9, 16.) The Counterclaim alleges that J&J brought this action to harass and intimidate Dr. Moline rather than to correct any misimpression about the safety of its talc-based products, which J&J knew contained asbestos. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 3, 28-40, 93, 98-100, 105, 121, 123.) Dr. Moline is entitled to discovery to prove these allegations as well.

In short, whether J&J's talc contained asbestos is relevant to multiple issues in this case. This Court should accordingly grant Dr. Moline's motion.

**B. The FDA's 2019 Findings And J&J's Ensuing Recall Are Highly Relevant To Multiple Issues In This Case.**

RFP No. 7 asks J&J to produce its communications with the FDA regarding its testing of Johnson's Baby Powder in 2019 and J&J's October 2019 recall. (Marino Cert. Ex. 5, RFP No. 7.) RFP No. 8 asks J&J to produce its internal communications and documents relating to its October 2019 recall. (*Id.* RFP No. 8.) These RFPs are relevant to the issue of asbestos contamination for the reasons set forth above. Indeed, the FDA advised the public "not to use" Johnson's Baby

Powder from a specific lot "after a sample tested positive for asbestos." FDA, *FDA Advises Consumers to Sop Using Certain Cosmetic Products*, Oct. 18, 2019.[10]

They are also independently relevant to the issues of causation, special damages, and Dr. Moline's counterclaim. A trade-libel plaintiff must prove that a false statement caused it special damages, *i.e.*, pecuniary loss "'that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers.'" *Wolfe*, 2017 U.S. Dist. LEXIS 146147, at *10 (cleaned up); *accord Verizon*, 309 F. Supp. 2d at 406. Indeed, J&J has alleged that the Articles caused it to lose sales on Baby Powder and Shower to Shower,[11] even implying that the JOEM's online publication in October 2019 was responsible for consumer calls that were obviously prompted by J&J's recall:

- "[The JOEM Article] became available online on October 10, 2019. In October 2019, the call center handling the Consumer business of Johnson & Johnson saw a significant increase in contacts." (Am. Cplt. (ECF No. 47-4) ¶ 326.)

- "The sales volume and profits from Johnson's Baby Powder declined in 2019 and again in 2020. And an ever-increasing percentage of Johnson's Baby Powder sales was the corn starch-based version compared to the talc-based version. Dr. Moline's statements and the resulting publicity were a

---

[10] *Available at* https://www.fda.gov/cosmetics/cosmetics-compliance-enforcement/fda-advises-consumers-stop-using-certain-cosmetic-products.

[11] J&J has never explained how the Articles could have caused it to lose sales on Shower to Shower when it sold that product in 2012, years before the Articles' publication. *See* Emily Field, *J&J, Bausch Reach Talc Litigation Deal*, LAW360, Apr. 23, 2019, *available at https://www.law360.com/articles/1152678/j-j-bausch-reach-talc-litigation-deal.*

substantial cause of this sales decline." (*Id.* ¶ 327.)

- "As a direct and proximate cause of Dr. Moline's false statements, Pecos River has suffered, and continues to suffer, actual and special damages, including, without limitation, lost profits on the sale of Johnson's Baby Powder and Shower to Shower caused by the widespread dissemination of the Article . . . ." (*Id.* ¶ 342.)

In fact, J&J alleges that Dr. Moline's allegedly disparaging statements were a "central element" of the "misinformation" that caused it to "stop selling talc-based Johnson's Baby Powder in North America." (*Id.* ¶ 6; *accord* ¶ 328.)

Dr. Moline is plainly entitled to discovery to refute these allegations. She will do so by showing that the FDA's 2019 findings and J&J's recall—and not the Articles—caused consumers to stop buying Baby Powder and caused J&J to discontinue selling talc-based Baby Powder. J&J confirmed as much when responding to Interrogatory No. 3, admitting that J&J cannot identify a single call made by a consumer in October 2019 that "referred to the JOEM Article or Dr. Jacqueline Moline." (*Id.* Ex. 7, Response to Interrogatory No. 3.) Dr. Moline is entitled to complete responses to RFP Nos. 7 and 8 to obtain highly relevant discovery relating to the FDA's 2019 findings and J&J's ensuing recall.

For similar reasons, this discovery is also relevant to the Counterclaim. Dr. Moline is entitled to her legal fees if the Court finds that J&J's claim lacks a "substantial basis in law and fact" and additional damages if J&J brought this lawsuit to harass and intimidate Dr. Moline. N.Y. Civil Rights Law § 70-a(1). The

Counterclaim alleges that J&J brought a meritless claim for an improper purpose because, among other things, J&J commenced and continued this action knowing it cannot prove special damages. (*See* Marino Cert. Ex. 1, Counterclaim ¶ 94.) Discovery responsive to RFP Nos. 7 and 8 will confirm this.

J&J's objection should be rejected for these additional reasons.

## II. J&J CANNOT SUBSTANTIATE THE OBJECTIONS IT RAISED TO BLOCK DR. MOLINE FROM PURSUING RELEVANT DISCOVERY.

Once the party that requests discovery establishes its relevance, the burden shifts to the party opposing discovery to "show why discovery should not be permitted." *Jaffe v. Prudential Ins. Co. of Am.*, No. 19-cv-18067, 2020 U.S. Dist. LEXIS 241543, at *4 (D.N.J. Dec. 23, 2020) (cleaned up); *see also Microsoft Corp. v. Softicle.com*, No. 16-cv-02762, 2017 U.S. Dist. LEXIS 163453, at *9 (D.N.J. Oct. 2, 2017) ("The burden is upon the party resisting discovery to clarify and explain its objections and to provide support therefor." (cleaned up)). This burden includes demonstrating that the requested discovery is unduly burdensome, disproportionate to the needs of the case, vague, or overbroad. *See Jamal v. Ally Fin., Inc.*, No. 24-cv-00894, 2026 U.S. Dist. LEXIS 190987, at *24 (D.N.J. Aug. 24, 2026) (explaining that the objecting party must substantiate a burdensomeness argument with affidavits or other supporting evidence); *Taro Pharms. v. Lupin Ltd.*, No. 18-cv-4225, 2019 U.S. Dist. LEXIS 41915, at *4 (D.N.J. Mar. 12, 2019) (explaining that it is the burden of the objecting party to "show that otherwise relevant discovery should not

be produced because of burden, expense, or proportionality concerns.”).[12]

Under this framework, Dr. Moline’s motion to compel should be granted because the RFPs at issue seek highly relevant information and J&J will be unable to substantiate its baseless stock objections.

***Vagueness/overbreadth***. J&J objects that each of the RFPs at issue are “vague and ambiguous”[13] and “overbroad.” (Marino Cert. Ex. 6, RFP Response Nos. 1-5,

---

[12] *See also Keybank Nat’l Ass’n v. Tracey Heun Brennan & Co.*, No. 05-cv-4734, 2005 U.S. Dist. LEXIS 31063, *4 (D.N.J. Dec. 2, 2005) (explaining that the objecting party must demonstrate “how the request is vague or overly broad”); *Schick v. Cintas Corp.*, No. 17-cv-7441, 2020 U.S. Dist. LEXIS 66420, at *4 (D.N.J. Apr. 15, 2020) (“A party resisting discovery on the grounds of burden or expense bears the burden of showing specifically how the request is burdensome.” (cleaned up)).

[13] These objections are improper on their face because, with the exception of RFP No. 8, they fail to even specify the portions of the RFPs that are “vague” or “ambiguous.” *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704 (D.N.J. 2015) (“Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.” (cleaned up)); *Deibler v. Sanmedica Int’l, LLC*, No. 19-cv-20155, 2021 U.S. Dist. LEXIS 247974, at *13 n.5 (D.N.J. Dec. 30, 2021) (“It is well settled that when objecting to a discovery request, an objecting party must state with specificity the grounds for the objection, and not the familiar litany that the interrogatory or document production request is overly broad, burdensome, oppressive, and irrelevant.”).

As for RFP No. 8, J&J claims the phrases “consumer reaction to [its] recall” and the “thorough investigation” performed in response to the FDA’s findings are vague and ambiguous. (Marino Cert. Ex. 6, RFP Response No. 8.) But the “through investigation” in this RFP is linked to J&J’s own press release, in which it advised affected users to call its Consumer Care Center. (*See id.* Ex. 5, RFP No. 8 (citing Company Announcement, dated October 18, 2019, entitled *Johnson & Johnson Consumer Inc. to Voluntarily Recall a Single Lot of Johnson’s Baby Powder in the*

7-8.) J&J similarly asserts that RFP Nos. 1-5 seek "wholesale or 'cloned' discovery." (*Id.*, RFP Response Nos. 1-5.) Not so. Each RFP is targeted and clear:

- RFP No. 1 requests production of tests or reports analyzing whether J&J's talc contained asbestos;
- RFP No. 2 asks for internal J&J communications regarding the presence of asbestos in J&J's talc;
- RFP Nos. 3 and 4 seek communication relating to three specific reports attached as exhibits to the RFPs;
- RFP No. 5 requests the trial exhibits and testimony in five cases relating to the presence or absence of asbestos in J&J's talc;
- RFP No. 7 seeks communications between J&J and the FDA regarding the FDA's 2019 testing of Johnson's Baby Powder and J&J's ensuing recall; and
- RFP No. 8 seeks J&J's internal communications and documents relating to the October 2019 recall, including the internal investigation J&J represents that it performed and consumer reaction to the recall.

It is incumbent on J&J to read these requests in a commonsense way, not in a "artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request." *Younes*, 312 F.R.D. at 709 (cleaned up); *accord Lifescan, Inc. v. Smith.*, No. 17-cv-5552, 2025 U.S. Dist. LEXIS 113750, at *31-32 (D.N.J. Mar. 4, 2025). To the extent J&J was legitimately confused by any of these RFPs, Dr. Moline clarified what she was seeking in her October 16, 2026

---

*United States*) J&J cannot credibly assert that it does not know the meaning of its own words.

deficiency letter. (Marino Cert. Ex. 8.) J&J nonetheless adhered to its objections without explanation. (*Id.* Ex. 9.)

All of these requests are also appropriately limited in time. RFP Nos. 3-4 are limited to communications surrounding three specific reports issued in or about 1972. RFP No. 5 is limited to trial testimony and exhibits in five actions. RFP Nos. 7 and 8 are limited to the FDA's 2019 asbestos findings and J&J's ensuing recall. And while RFP Nos. 1 and 2 seek documents that date back to the 1920s, that time period is appropriate because the Articles implicate the quality of J&J's talc-based products dating back that far. (*See* Marino Cert. Ex. 2, JOEM Article, Table 1, case #30 (listing subject born in the 1920s).) As explained below, to the extent responsive documents still exist dating back to the 1920s, J&J has already gathered and produced them; producing them again will impose no meaningful burden.

J&J contends that RFP Nos. 1-5 seek "cloned" or "wholesale" discovery from other actions. But the concept of "cloned" discovery is only topical when a party asks for "a *carte blanche* production of all documents from the previous cases." *Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer LP*, No. 20-cv-200, 2022 U.S. Dist. LEXIS 215313, at *9 (E.D. Pa. Nov. 30, 2022) (cleaned up). Dr. Moline has not done so. RFP Nos. 1-5 are targeted to the issues in this case and Dr. Moline limited these requests to documents produced in or readily available from other litigation to ease J&J's collection and production burdens. That these same

documents were also relevant to and produced in prior cases does not exempt them from discovery. In fact, even when so-called "cloned" discovery is sought, a party is still entitled to it when there is a "significant factual and legal overlap with a prior case and the request is not overbroad." *See id.* at *9 (cleaned up). Such is the case here.

***Burden***. J&J claims that RFP Nos. 1-5 and 7-8 are "unduly burdensome." J&J cannot substantiate that burden. RFP Nos. 1-4 are limited to documents that J&J has previously produced in other litigation. (*See* Marino Cert. Ex. 5.) J&J has previously represented to Dr. Moline that it has a central repository of documents produced in prior cosmetic-talc lawsuits. (*See id.* Ex. 8, 10/16/26 letter (memorializing J&J's representation during the parties' e-discovery conference that "J&J maintains a centralized database of documents previously produced in prior cosmetic-talc litigations.").) J&J could thus easily produce responsive documents after running appropriate, agreed search criteria.

RFP No. 5 is limited to the trial exhibits and testimony in five cosmetic-talc cases on the issue of asbestos contamination. J&J complains that the review is too burdensome because it would "require review of complete trial records in five actions without reasonable limitation." (Marino Cert. Ex. 6, RFP Response No. 5.) But the request embeds a "reasonable" limitation: It is limited to documents analyzing, discussing, or relating to "the presence or absence of Asbestos in the talc

used by J&J for Johnson's Baby Powder or Shower to Shower." (Marino Cert. Ex. 5, RFP No. 5.) That limitation is narrowly tailed to the issues in this case and designed to streamline discovery because it will pinpoint the key documents and testimony on the issue of asbestos contamination.

J&J's burdensomeness objections to RFP Nos. 7 and 8 are equally meritless. Those requests, as noted above, are limited to discrete events: the FDA's 2019 asbestos finding and J&J's ensuing recall. The parties have agreed upon an ESI Protocol that allows them to run appropriate search parameters to ease production and review burdens. To the extent RFP Nos. 7 and 8 capture voluminous data, J&J can run appropriate search terms. Its burdensomeness objection should be overruled.

***Proportionality***. J&J asserts that each of the RFPs seek discovery that is disproportionate to the needs of this case. This objection is also meritless. When assessing the proportionality of a request, Federal Rule of Civil Procedure 26(b)(1) directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*; *accord Progressive Health v. Indegene, Inc.*, No. 20-cv-10106, 2023 U.S. Dist. LEXIS 243666, at *4-5 (D.N.J. Feb. 22, 2023).

All of these factors confirm that the RFPs are proper. First, the RFPs relate to

an "important" issue within the meaning of Rule 26(b)(1). This factor measures importance "in philosophic, social, or institutional terms." *Lincoln Adventures, LLC v. Certain Underwriters at Lloyd's London Members of Syndicates*, No. 08-cv-235, 2020 U.S. Dist. LEXIS 262669, at *14 (D.N.J. Oct. 14, 2020) (cleaned up). Here, J&J has sued Dr. Moline for expressing her opinion on an important issue of public safety—whether cosmetic talc contains asbestos—which is why Dr. Moline has filed a counterclaim under New York's anti-SLAPP laws. Those laws implicate "important societal interests" about how to defend individuals against powerful interests who seek to weaponize lawsuits to curtail their free speech. *Franchini v. Inv'rs Bus. Daily, Inc.*, 981 F.3d 1, 7 (1st Cir. 2020).[14]

Second, while J&J's claim has no value because it cannot prove special damages, Dr. Moline seeks a significant recovery through the Counterclaim. Through that claim, Dr. Moline seeks to recover her legal fees dating back to this case's 2023 filing, along with compensatory and punitive damages. (*See* Marino Cert. Ex. 1, Counterclaim ¶¶ 74, 106, 112-114, 120, 122-123.) Those damages

---

[14] *See also, e.g.*, *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 16 (N.Y. App. Div. 2024) (explaining that New York's anti-SLAPP laws are designed to provide the "utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern" (cleaned up)); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 839 (Cal. Ct. App. 2005) (explaining that SLAPP statutes serve the "important public policy of open and free participation in the democratic process").

justify the requests at issue. *See, e.g.*, *Peden v. Whitney*, No. 26-cv-00013, 2026 U.S. Dist. LEXIS 251320, at *17 (N.D. Ca. Nov. 2, 2026) (citing plaintiff's pursuit of punitive damages as a factor that justified discovery); *Tradeinvest Asset Mgmt. Co. Bvi Ltd. v. Wrigley*, No. 22-cv-80360, 2024 U.S. Dist. LEXIS 251328, at *7 (S.D. Fla. Oct. 17, 2024) (finding requests proportional where "[p]unitive damages are an important issue in this case."); *Flooring Sys., Inc. v. Beaulieu Grp., LLC*, No. 15-cv-1792, 2016 U.S. Dist. LEXIS 206664, at *15 (E.D. Mo. Oct. 20, 2016) (finding that the amount in controversy justified discovery where a party sought "in excess of $700,000 in damages, plus legal fees and costs").

As to the remaining factors, there can be no dispute that J&J "has access to the information" that Dr. Moline seeks and "has greater resources than" Dr. Moline. *Hobbs v. Petroplex Pipe & Constr., Inc.*, No. 17-cv-00030, 2018 U.S. Dist. LEXIS 127608, at *6 (W.D. Tex. Jan. 29, 2018); *Flooring Sys.*, 2016 U.S. Dist. LEXIS 206664, at *15 (noting the obvious fact that the responding party "has sole control over its internal records"). Indeed, J&J is one of the largest and most successful companies in the world, recognizing more than $100 billion in annual revenue. *See* Yahoo Finance, *Johnson & Johnson (JNJ) Tops $100 Billion In Annual Revenue For The First Time*, July 15, 2026.[15] It has hired three prominent law firms—Kirkland

[15] *Available at* https://finance.yahoo.com/healthcare/articles/johnson-johnson-jnj-tops-100-151217818.html.

& Ellis LLP, Patterson Belknap Webb & Tyler LLP, and McCarter & English LLP—to represent it in this case. It plainly has the resources to respond to Dr. Moline's discovery requests.

Finally, the benefits of the requested discovery far outweigh the minimal burden imposed on J&J in producing it. J&J's proportionality objection should be overruled.

***Miscellaneous additional objections*.** J&J lodges two additional objections that are readily dispatched. In response to RFP Nos. 3-4, J&J claims that the reports attached as Exhibits A-C to the RFPs are "already in Dr. Moline's possession." (Marino Cert. Ex. 6.) That objection misses the mark because the RFPs seek communications about those reports. Dr. Moline is also entitled to have J&J produce them to determine who possessed them and to establish their authenticity and admissibility.

Finally, with respect to RFP No. 5, J&J claims that trial testimony and trial exhibits from five cases should not be produced because they are part of "public proceedings" and are thus "equally accessible" to Dr. Moline. (Marino Cert. Ex. 5, RFP Response No. 5.) That is not a valid objection. *See Charter Practices Int'l, LLC v. Robb*, No. 12-cv-1768, 2014 U.S. Dist. LEXIS 8166, at *6 (D. Conn. Jan. 23, 2014) (collecting authority holding that an objection that documents are "available online" or "equally available" to the requesting party is "insufficient to resist a

discovery request"); *accord Kash Advance, LLC v. C&C Residential Props. Inc.*, No. 24-cv-6351, 2025 U.S. Dist. LEXIS 262263, at *2 (S.D.N.Y. Dec. 18, 2025); *Ryan v. United Recovery & Remarketing, LLC*, No. 21-cv-01324, 2022 U.S. Dist. LEXIS 112914, at *2 (E.D. Mo. June 27, 2022). Even if it were, J&J would have to substantiate its objection by demonstrating that the documents requested in RFP No. 5 are all public and thus "equally accessible" to Dr. Moline. It has not done so.

In short, J&J's numerous stock objections for refusing to produce highly relevant information should be rejected.

## **CONCLUSION**

For the foregoing reasons, Dr. Moline's motion to compel should be granted.

Chatham, New Jersey
Dated: November 13, 2026

Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.

By: ______________________

Kevin H. Marino
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant/Counterclaim-Plaintiff Dr. Jacqueline Moline*